2016 WL 3045349
Only the Westlaw citation is currently available.
United States District Court,
W.D. Virginia,
Roanoke Division.

Tiffany S. Brown, Plaintiff,
v.
Mountainview Cutters, LLC, d/b/a Great Clips,
Defendant.

Civil Action No. 7:15-CV-00204
|
Signed 05/27/2016

## MEMORANDUM OPINION

Glen E. Conrad Chief, United States District Judge

**\*1** Plaintiff Tiffany S. Brown brings this employment discrimination action against her former employer, Mountainview Cutters, LLC d/b/a Great Clips ("Great Clips"). The case is presently before the court on Brown's motion to quash the subpoenas duces tecum issued by Great Clips to several third parties. For the following reasons, the motion will be granted in part and denied in part.

## Factual Background

Tiffany S. Brown is an African-American woman. At the time of her employment, she was the only African-American employee at Great Clips. Brown believes that she was subjected to unequal terms and conditions of employment because of her race. Specifically, she claims that she was treated less favorably than her Caucasian coworkers with respect to "scheduling, time off, and being allowed to work enough hours to earn paid vacation." Compl. ¶ 7.

On one occasion, Brown's manager, Tim Phillips, gave a client a coupon for discount services at the salon. However, when Brown gave a coupon to another client, a note was posted on the register stating, "Great Clips is here to make money and you are making us less

money[.]" Id. ¶ 9.

In August of 2012, a Caucasian coworker called Brown an "angry black woman." Id. ¶ 10. Brown complained to her manager about the incident. On another occasion, Phillips scheduled a dinner for all of the employees. Although Brown was invited to the dinner, she was not told that the employees would be meeting at the salon beforehand. After Brown waited at the restaurant for more than 45 minutes, Phillips and the other employees arrived and laughed at her.

On or about December 2, 2012, after two employees made transactions under her name, Brown called the general manager, told her about "some of the irregularities at the salon," and said that she was being discriminated against. Id. ¶ 13. In a document dated December 2, 2012, Phillips stated that Brown had threatened him with discrimination. Thereafter, a posting at the salon indicated that certain matters would be discussed at a meeting between the employees and the owner of Great Clips. Brown then added "EEOC" to the list of topics to be discussed at this meeting. On December 4, 2012, Phillips informed Brown that he would be terminating her employment. Phillips indicated that he felt "backed into a corner" because Brown called Phillips' boss without notifying him first. Id. ¶ 15.

Brown filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 5, 2013. Upon receiving a right-to-sue letter from the EEOC on January 29, 2015, Brown filed suit in this court under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that Great Clips discriminated against her on the basis of her race, and that she was terminated in retaliation for her discrimination complaints. On March 28, 2016, Great Clips issued subpoenas duces tecum to Brown's previous employers, subsequent employer, and the Virginia Employment Commission ("VEC"). On April 4, 2016, Brown moved to quash these subpoenas. The court held a hearing on the motion via conference call on May 3, 2016. The motion has been fully briefed and is ripe for disposition.

## Discussion

### I. Standing

**\*2** Before addressing the merits of Brown's motion, the court must first determine whether she has standing to attempt to quash the subpoenas duces tecum issued by

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT
2 inglobo

Great Clips to third parties. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 Fed.Appx. 740, 744 (4th Cir. 2005). The United States Court of Appeals for the Fourth Circuit, however, has not decided whether an employee has a sufficient personal right with respect to the information contained in her employment records to confer standing. Nevertheless, this court is more persuaded by the authorities that have held that such personal right does exist.

At the hearing, Brown relied on Singletary v. Sterling Transport Co., in which the district court found that an employee did have standing to challenge the subpoenas duces tecum that sought employment records from his former employers. 289 F.R.D. 237, 240 (E.D. Va. 2012). In reaching its decision, the district court noted that "numerous courts from within a wide variety of circuits have approved the existence of such a right and have held that such parties have standing to challenge subpoenas directed to their former employers." Id. at 239. The district court also found the case of Barrington v. Mortage IT, Inc., No. 07-61304-CIV, 2007 WL 4370647, at *2 (S.D. Fla. Dec. 10, 2007) to be especially persuasive. In Barrington, the district court cited to a number of cases which support the argument that employees have a personal right in their employment records. 2007 WL 4370647, at *2. The district court in Barrington also noted that employment records are likely to contain "highly personal and confidential information, such as social security numbers, medical information protected from disclosure under various federal and state laws, payroll information, income tax information, and information about family members." Id. Therefore, the district court held that the employees had standing to move to quash the subpoenas duces tecum directed to their former employers. Id. This court notes that several courts both within and outside of the Fourth Circuit have cited to Singletary in finding that employees have standing to challenge subpoenas seeking employment records. See, e.g., Papanicolas v. Project Execution & Control Consulting, LLC, No. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2015); Bahrami v. Maxie Price Chevrolet-Oldsmobile Inc., No. 1:11-CV-4483-SCJ-AJB, 2013 WL 3800336, at *2 (N.D. Ga. June 19, 2013); Robinson v. Quicken Loans, Inc., No. 3:12-CV-00981, 2012 WL 6045836, at *2 (S.D.W. Va. Dec. 5, 2012).

In addition, even if the court could find that Brown did not have standing to move to quash the subpoenas under Rule 45 of the Federal Rules of Civil Procedure, she would still have standing under Rule 26 to challenge the subpoenas as irrelevant and overbroad. See Singletary, 289 F.R.D. at 240 n.2 ("Additionally, the Court notes that plaintiffs have standing to challenge the subpoenas duces tecum as irrelevant and overbroad under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45."); see also Sirpal v. Wang, No. WDQ-12-0365, 2012 WL 2880565, at *4 n.12 (D. Md. Jul. 12, 2012) (construing plaintiff's motion to quash as one for a protective order under Rule 26 and using relevance and overbreath to quash the subpoena at issue). Although Brown has not explicitly moved for a protective order in her instant motion, her essential challenges to the subpoenas are that they are overbroad and irrelevant to the claims and defenses in this case. Accordingly, the court concludes that Brown has standing to bring this motion to quash.

## II. Motion to Quash

**\*3** The court will now consider the merits of Brown's arguments in support of her motion to quash. The scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26 of the Federal Rules of Civil Procedure. Cook v. Howard, 484 Fed.Appx. 805, 812 (4th Cir. 2012) (per curiam) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."). "Thus, regardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule 26(b)." Singletary, 289 F.R.D. at 241. The discovery rules are to be accorded broad and liberal construction. Herbert v. Lando, 441 U.S. 153, 177 (1979); see also CareFirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (holding that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted").

Specifically, Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence is discoverable." Id. Despite the additional proportionality consideration required under the amendment to Rule 26, the Advisory Committee Notes provide that "the [2015 amendment] does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

Notably, the court "must limit the frequency or extent of

discovery otherwise allowed by these rules" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" or that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "As such, the Court may quash a subpoena duces tecum as overbroad if it 'does not limit the [documents] requested to those containing subject matter relevant to the underlying action.' " Singletary, 289 F.R.D. at 241 (quoting In re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)). Furthermore, Rule 26 provides that the court may protect persons from "annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Likewise, Rule 45 requires the court to quash a subpoena that "subjects a person to an undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The burden of proof is on the party objecting to the production. Finley v. Trent, 955 F. Supp. 642, 648 (N.D.W. Va. 1997) (citing Castle v. Jallah, 142 F.R.D. 618, 620 (E.D. Va. 1992)).

Brown argues that the subpoenas duces tecum should be quashed and/or limited in scope because they are overbroad, irrelevant, and disproportional to the needs of the case. The court is constrained to agree. First, as to the subpoenas issued to Brown's former employers, the court initially concludes that they are overbroad on their face, as the subpoenas are not tailored to seek relevant information in this employment discrimination action. Specifically, the subpoenas command production of Brown's "complete personnel file[,]" including "any other tangible documents or things which relate to [her] employment ... regardless of the ... content[.]" Ex. A to Pl.'s Mot. to Quash at 4, Docket No. 26-1. "Such subpoenas could lead to the production of medical information, social security numbers, payroll information, income tax information, information about family members, and other documents completely extraneous to this litigation[.]" Singletary, 289 F.R.D. at 241; see also Peters v. Baltimore City Bd. of Sch. Comm'rs, No. WMN-13-3114, 2014 WL 4187307, at *5 (D. Md. Aug. 21, 2014) (finding that, in quashing defendant's third party subpoena, "[d]efendant's request, by seeking 'any and all' documents related to [plaintiff's] employment, has the potential to uncover intrusive information that is not relevant to the present action"). As such, the court believes that the subpoenas, in their current form, seek undiscoverable information and are overbroad.

*4 However, the court also believes that some information in Brown's personnel files is relevant to the claims and defenses—namely, Brown's work history, her performance evaluations, and whether she made

discrimination claims against any of these former employers. See Smith v. United Salt Corp., No. 1:08-CV-53, 2009 WL 2929343, at *6 (W.D. Va. Sept. 9, 2009) (finding that plaintiffs' work history records were relevant because they could reveal "prior complaints of emotional distress and sexual harassment[,]" "poor or erratic work histories," and "sustained employment or unemployment" in consideration of plaintiffs' claims for front pay). Great Clips' anticipated defense in this case is that Brown was terminated because of insubordination and/or misconduct on the job. Such discovery may reveal that Brown's former employers terminated her for similar reasons. Although such information may not ultimately be admissible at trial, the court cannot conclude that it would not lead to the discovery of admissible evidence. Singletary, 289 F.R.D. at 237.

Despite the relevance of such discovery, the court is of the opinion that the subpoenas are disproportionate to the needs of the case at this time. Great Clips contends that they have no reasonable means of obtaining the requested information other than through the issuance of these subpoenas duces tecum. However, the court believes that Great Clips could obtain this information through written interrogatories to Brown, which would be the least burdensome source. In her responses, Brown shall detail her work history, performance evaluations, reasons for leaving her former employers, and whether she filed charges of discrimination against her former employers. In reviewing Brown's responses, Great Clips may renew their subpoenas to Brown's former employers, if the circumstances warrant. Therefore, the court finds that Great Clips' subpoenas are overbroad, irrelevant, and disproportionate to the needs of the case at this time. Accordingly, Brown's motion to quash will be granted with respect to the subpoenas duces tecum issued to her former employers.

Second, as to the subpoena duces tecum issued to Brown's subsequent employer, the court concludes that the subpoena is overbroad and disproportionate to the needs of the case. Again, the subpoena seeks Brown's entire personnel file, irrespective of its contents and relevancy to the instant case. Brown does concede, however, that information regarding her pay and benefits from her subsequent employer would be relevant to her claims for damages in this case. Nevertheless, she contends that she can provide Great Clips with this information. In light of this concession, the court believes that the subpoena is disproportionate to the needs of the case, and that the least burdensome way to obtain this discovery would be from Brown herself. As such, Great Clips will also be entitled to such information through written interrogatories to Brown. Accordingly, Brown's

motion to quash will be granted with respect to the subpoena duces tecum issued to her subsequent employer.

Finally, as to the subpoena duces tecum issued to the VEC, the court concludes that such subpoena is overbroad because it does not limit the temporal scope of the documents sought by Great Clips. The court agrees with Brown that the relevant time period for such information would be from her date of termination, December 4, 2012, to the present; Great Clips does not contend otherwise. Therefore, the court will narrow the scope of the subpoena to documents from December 4, 2012 to the present. Accordingly, Brown's motion to quash will be granted in part so as to establish the temporal limitation as set forth herein.

tecum issued to Brown's former employers—Generation Solutions, Great Clips, Olive Garden, Red Robin, and Smart Style—will be quashed. The subpoena duces tecum issued to Brown's subsequent employer, Cost Cutters Family Hair Salon, will also be quashed. The information sought in these subpoenas shall be obtained from Brown through written interrogatories. Finally, the subpoena duces tecum issued to the VEC will be limited in temporal scope to documents from December 4, 2012, the time of Brown's termination, to the present.

**\*5** The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 27ᵗʰ day of May, 2016.

### Conclusion

For the foregoing reasons, the motion to quash will be granted in part and denied in part. The subpoenas duces

**All Citations**

Slip Copy, 2016 WL 3045349

    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Barrington v. Mortage IT, Inc., Not Reported in F.Supp.2d (2007)
2007 WL 4370647

2007 WL 4370647
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

Kelly BARRINGTON, Gabriel Martinez, and
Vernell Roberts, on behalf of themselves
and others similarly situated, Plaintiffs,
v.
MORTAGE IT, INC., a foreign
corporation, Defendant.

No. 07-61304-CIV.
|
Dec. 10, 2007.

**Attorneys and Law Firms**

Robert Scott Norell, Robert S. Norell PA, Christopher Charles Sharp, Sharp Law Firm, P.A., Plantation, FL, for Plaintiffs.

Athalia Lujo, Morgan Lewis & Bockius, Miami, FL, for Defendant.

*ORDER GRANTING PLAINTIFFS'
MOTION TO QUASH SUBPOENAS*

BARRY S. SELTZER, United States Magistrate Judge.

**\*1** THIS CAUSE is before the Court on Plaintiffs' Motion to Quash Subpoenas to Non-Parties, or in the Alternative, Motion for Protective Order (DE 16), and the Court being sufficiently advised, it is hereby ORDERED that Plaintiffs' Motion is GRANTED for the reasons set forth below.

## I. BACKGROUND

This is an action for overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs bring this action on behalf of themselves and other similarly-situated employees who worked for Defendant Mortgage IT, Inc. as Asset Analysts and Correspondence Liaisons [1] in its Sunrise, Florida facility. In addition to the 3 original Plaintiffs, at least 17 other individuals ("opt-ins Plaintiffs") have filed consent forms to join in the action. Defendant has asserted

various defenses, including that it properly classified Plaintiffs as exempt under one or more of the FLSA white collar exemptions, such as the "administrative, executive, highly compensated, profession, retail or service establishment, combination, and/or outside sales exemptions." Affirmative Defenses at ¶ 2 (DE 28).

[1]   Defendant denies that it employed any Plaintiff as a Correspondence Liaison. Answer at 2 n. 1 (DE 28).

On or about October 24, 2007, Defendant issued 25 subpoenas *duces tecum* (to obtain documents without depositions) directed to Plaintiffs' and opt-ins Plaintiffs' former employers, all of whom are in the financial services and/or mortgage industries. Each subpoena seeks production of the following documents:

> Any and all documents, files and records, reflecting or relating to the employment of [Plaintiff, SSN: xxx-xx-xxxx; DOB: dd/mm/yy), including but not limited to job application(s), personnel file, interview notes, performance evaluations, termination or resignation notices, payroll records, income tax forms, and any other personnel documents including, but not limited to those maintained by the Human Resources department.

*See* Subpoenas (DE 16-2). Plaintiffs have moved to quash these subpoenas under Federal Rule of Civil Procedure 45 or, in the alternative, they seek a protective order under Federal Rule of Civil Procedure 26 (DE 16). [2] Defendant has responded to the Motion (DE 35), and Plaintiffs have replied thereto (DE 40). The Motion is now ripe for decision.

[2]   It appearing that the non-party employers were to produce the documents before Defendant's response to the instant Motion was due and before the Court would have had an opportunity to rule, this Court entered an Order (DE 17) requiring Defendant to notify the recipients of the subpoenas *duces tecum* that they should not produce any documents until further notice and that if Defendant had already received any documents pursuant to the subpoenas, it should not inspect them until such time as the Court has ruled on the instant Motion.

## II. *DISCUSSION*

Plaintiffs move to quash the subpoenas *duces tecum* directed to their former employers on the grounds that the documents sought by the subpoenas are not relevant and that the document request is overbroad.[3] In opposition, Defendant first argues that Plaintiffs lack standing to bring a motion to quash subpoenas directed to third-parties.

[3]     Plaintiffs also object on the ground that the subpoenas seek their confidential, personal information. However, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. Confidentiality concerns in many cases may be addressed with an appropriate protective order." *Dean v. Anderson,* No. 01-2599-JAR, 2002 WL 1377729, at *2 (D.Kan. June 6, 2002) (citations omitted).

### A. *Standing*

Generally, an individual does not have standing to challenge a subpoena served on another, unless that individual has a personal right or privilege with respect to the subject matter of the subpoena. *See Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18, 22 (D.C.Cir.2005) ("[A]bsent a privilege, personal interest, or proprietary interest, [a party] has no standing to seek to quash, under Federal Rule of Civil Procedure ("Rule") 45, a subpoena issued to a non-party."); *Stewart v. Mitchell Transport,* No. 01-2546-JWL, 2002 WL 1558210, *at 1 (D.Kan. July 8, 2002) (party does not have standing to quash subpoena served on another except where party has a personal right or privilege with respect to the subject matter requested in the subpoena); *Stevenson v. Stanley Bostitch, Inc.,* 201 F.R.D. 551, 555 (N.D.Ga.2001) ("[I]t appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.' ") (quoting *Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979)); *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 685 (D.Colo.1993) ("A motion to quash ... a subpoena duces tecum may only be made by the [individual or entity] to whom the subpoena is directed except where the [individual] seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.").

*2 In considering whether a party had standing to move to quash a subpoena *duces tecum,* courts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena. *See, e.g., Chamberlain v. Farmington Sav. Bank,* No. 3:06CV01437 (CFD), 2007 WL 2786421, at *1 (D.Conn. Sept.5, 2007) ("The plaintiff clearly has a personal right with respect to information contained in his employment records."); *Richards v. Convergys Corp.,* No. 2:05-CV-00790-DAK; 2:05-CV-00812 DAK, 2007 WL 474012, at *1 (D.Utah Feb.7, 2007) (finding that a party had standing to challenge subpoena seeking employment records from the party's current employer and a company that had made a job offer); *Stewart,* 2002 WL 1558210, at *2 ("The Court finds that [the defendant] clearly has a personal right with respect to the information contained in his personnel files, job applications, and performance evaluations. Thus ... [the defendant] has standing to move to quash the subpoenas served on his employers and to assert objections to the document requests contained therein."); *Beach v. City Olathe, Kansas,* No. 99-2210-GTV, 2001 WL 1098032, at *1 (D.Kan. Sept.17, 2001) (defendant "clearly has a 'personal right' in his personnel file and applications for employment that would give him standing to move to quash the subpoenas"); *see also Thurgood Marshall,* 230 F.3d at 24 (declining to consider standing for quashing subpoenas for employment records where party had alternatively moved for protective order; analyzing challenge to subpoenas under Rule 26 standards); *Chamberlain,* 2007 WL 2786421, at * 1 (In addition to having standing to move to quash a Rule 45 subpoena *duces tecum* seeking employment records from a former employer, defendant also had "standing to challenge the subpoenas on the basis of his having moved for a protective order pursuant to Rule 26."); *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 429 (M.D.Fla.2005) (finding that party did not have standing to move to quash a subpoena, but holding that the party nonetheless had standing to challenge the relevancy of documents sought by subpoena, thus, deeming the motion to quash as a motion for protective order under Rule 26).

This Court agrees with the decisions holding that a party does have a personal right with respect to information contained in their employment records. Here, Defendant has sought all records pertaining to Plaintiffs' former employment. These records likely contain highly

personal and confidential information, such as social security numbers, medical information protected from disclosure under various federal and state laws, payroll information, income tax information, and information about family members. Therefore, Plaintiffs' personal right to the employment records is sufficient to confer standing to move to quash the subpoenas *duces tecum.* Accordingly, the Court will now consider Plaintiffs' arguments advanced in support of their Motion to Quash-irrelevancy and overbreadth.

### B. *Irrelevancy and Overbreadth*

**\*3** Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. Courts, however, have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26. *See, e.g., Chamberlain,* 2007 WL 2786421, at \*1 ("It is well settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26."); *Stewart,* 2002 WL 1558210, at \*3 (same); *see also* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 2459 (2d ed. 1995) (Rule 45 subpoena incorporates the provisions of Rules 26(b) and 34). The Court, therefore, must determine whether the subpoenas *duces tecum* at issue seek irrelevant information and/or are overly broad under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production. *See Wagner v. Viacost.com,* No. 06-81113-Civ, 2007 WL 1879914 (S.D.Fla. June 29, 2007) (Ryskamp, J.) (applying relevance standard of Rule 26(b) to subpoena *duces tecum* seeking employment records from the plaintiff's current employer in deciding such records were not relevant in a FLSA case).

Rule 26(b)(1) provides in pertinent part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any parties claim or defense.... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [4] Fed.R.Civ.P. 26(b)(1). Judge Ryskamp of this District recently explained the burden of establishing relevancy:

[4] Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Ev. 401.

When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Wagner,* 2007 WL 1879914, at \*1 (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453,* 190 F.R.D. 583, 585 (D.Kan.1999)); *see also Moore v. Chertoff,* No. 00-953(RWR)(DAR), 2006 WL 1442447, at \*2 (D.D.C. May 22, 2006) (same); *Merrill v. Waffle House,* 227 F.R.D. 467, 470-71 (N.D.Tex.2005) (same). "However, when relevancy is not apparent, the burden is on the party *seeking* discovery to show the relevancy of the discovery request ." *Dean v. Anderson,* No. 01-2599-JAR, 2002 WL 1377729, at \*2 (D.Kan. June 6, 2002) (emphasis in original).

Plaintiffs argue that any records that their former employers may have relating to Plaintiffs' prior employment have no relevance to the issues in this case-whether Plaintiffs worked more than 40 hours a week without receiving overtime compensation and whether Defendant properly classified Plaintiffs' positions as exempt. Plaintiffs contend that "even a cursory review of the subpoenas indicates that they are not narrowly tailored to obtain relevant evidence." Motion at 6 (DE 16). Rather, the subpoenas seek, "without limitation, each and every record, including personal and financial information, that Plaintiffs' former employers have in their possession regarding the Plaintiffs." Motion at 5 (DE 16). According to Plaintiffs, "[g]iven the limited subject matter of this case, and the overly broad nature of the requests, the purpose of the ... document requests appears to be ... nothing more than a fishing expedition to harass Plaintiffs and to interfere with Plaintiffs' reputations in the financial services field, and to deter them and other potential plaintiffs from pursuing their claims in this case." Motion at 6 (DE 16).

*4 The Court finds that the records of Plaintiffs' former employers do not appear relevant to the claims or defenses herein-whether Plaintiffs worked for Defendant more than 40 hours a week without receiving overtime compensation and whether Defendant properly classified Plaintiffs' positions as exempt from the FLSA overtime provisions. Accordingly, Defendant, as the party seeking discovery, must demonstrate the relevancy of the documents sought.

Defendant first argues that the records of Plaintiffs' former employers are relevant to its defense that Plaintiffs were exempt from the overtime provisions. "Whether an employee is exempt or non-exempt under the FLSA is determined by 'the duties actually performed by the employee.' " *Corrigan v. United States*, 68 Fed. Cl. 589, 595 (2005) (quoting 5 C.F.R. § 551.202(i)). Defendant, however, has failed to explain how the records of Plaintiffs' prior employers are relevant to a determination of the duties performed by Plaintiffs (while employed by Defendant) or to any other consideration of exempt status. Defendant merely states that "courts have repeatedly considered a plaintiff's employment history in determining FLSA exempt status under the administrative, professional and executive exemptions-all of which have been asserted as defenses by MortageIT." Response at 6 (DE 35).

None of the cases cited by Defendant in support of this assertion [5] address the relevance or discoverability of a plaintiff's prior employment records; rather, each case was decided at the summary judgment, trial, or appellate stage and addressed whether plaintiffs were exempt from the overtime provisions of the FLSA. This Court has carefully reviewed these decisions and agrees with Plaintiffs that rather than "considering" the plaintiffs' employment history, the courts "just mentioned the employment history in passing." Reply at 3 (DE 35). A close reading of these cases reveals that in each instance the court based its determination of exempt status on its examination of the plaintiff's job duties with the defendant employer; the plaintiff's employment history was not necessary to the court's decisions. [6]

2005); *Aulen v. Triumph Explosive, Inc.*, 58 F.Supp. 4 (D.Md.1944).

[6]   For example, in *Havey*, 2005 WL 1719061, the case on which Defendant primarily relies, the issue before the court in deciding partial summary judgment was whether the plaintiffs' work for the defendant employer included the exercise of discretion or independent judgment so as to meet the FLSA administrative employee exemption. The plaintiffs in that case argued that no discretion or independent judgment was involved and that the work was automatic and required only a high school education. The *Havey* Court stated:

> Although Plaintiffs emphasize their lack of higher education and irrelevant work experience, both were experienced with mortgage processing when they were hired by Homebound. Havey worked as a mortgage loan processor at National City Bank in Columbus, Ohio immediately prior to being hired by Homebound .... Anderson worked at Chittenden Bank in the mortgage department for nineteen years, including a couple years as an underwriter.

*Id.* at *6. In rejecting the plaintiffs' arguments, the court noted their prior employment, but then proceeded to decide exempt status solely on the duties of the plaintiffs' positions while employed by the defendant.

Defendant also cites *Smith*, 954 F.2d 296, parenthetically stating that the court "review[ed] Plaintiff's employment history in deciding exempt status under the administrative and executive positions." Response at 6 n. 3. But, in considering an appeal of a jury verdict finding that the plaintiffs were not exempt employees, the Fifth Circuit did not "review" the plaintiff's employment history at all; it reviewed only the duties of the plaintiffs while employed by the defendant. Indeed, the appellate court's only mention of "employment history" occurred in setting out the standard of review: "Although historical facts regarding the employment history, and inferences based on these facts are reviewed under the factual standard, the ultimate decision whether an employee is exempt is a question of law." *Id.* at 298.

Even were the court able to find that Plaintiffs' prior employment history is marginally relevant to their exempt status, the subpoenas *duces tecum* at issue are overly broad on their face. They seek "any and all documents, files and records, reflecting or relating to the employment" of each Plaintiff and opt-in Plaintiff, "including but not limited to job application(s), personnel file, interview notes,

Barrington v. Mortage IT, Inc., Not Reported in F.Supp.2d (2007)
2007 WL 4370647

performance evaluations, termination or resignation notices, payroll records, income tax forms, and any other personnel documents including, but not limited to those maintained by the Human Resources department." Subpoenas (DE 16-2). *See Richards,* 2007 WL 474012, at \*4-5 (quashing overbroad subpoena *duces tecum* directed to the plaintiff's former employer that sought "all documents in your possession or control regarding the employment of" the plaintiff).

**\*5** Defendant next contends that all Plaintiffs have brought lawsuits against at least one prior employer (arguing misclassification under the FLSA), including one collective action in which the three Plaintiffs here sued a mortgage company. Defendant, therefore, argues that Plaintiffs' employment records of former employers are relevant to assess Plaintiffs' credibility "in reference to their prior litigation." Response at 8 (DE 35). Plaintiffs acknowledge that credibility is an issue in every case, but they counter that Defendant should be required to demonstrate a good faith basis for Plaintiffs' lack of credibility before it is permitted to obtain the records, "[o]therwise there would be virtually no limits on discovery once a party invokes the mantra of 'credibility' as the basis for a discovery request." Reply at 5 (DE 40). The Court agrees, as have other courts. *See, e.g., Chamberlain,* 2007 WL 2786421, at \*3; *Premer v. Corestaff Servs., L.P.,* 232 F.R.D. 692, 693 (M.D.Fla.2005) (refusing to require production of employer's employment records from the plaintiff's prior employer pursuant to an overbroad subpoena where defendant had failed to provide any reason to suspect plaintiff's credibility). In *Chamberlain,* an employment discrimination case, the defendant issued notice of its intent to serve subpoenas *duces tecum* on the plaintiff's former employers; the subpoenas sought all employment records pertaining to the plaintiff, including his personnel file. The defendant argued, *inter alia,* that the information contained in the plaintiff's prior employment records was relevant to his credibility as a witness. In rejecting this argument, the court stated that "the defendant has not alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation with regard to his previous employment to substantiate such a broad search of his employment records on this ground." 2007 WL 2786421 at \*3.

Finally, Defendant argues that Plaintiffs' employment records are relevant because "if Plaintiffs' prior employers,

who are engaged in the financial services and mortgage industries, classified the same or similar positions held by Plaintiffs as exempt, any claim of willful FLSA violations is critically undermined." Response at 8 (DE 35). In support of this argument, Defendant relies solely on *Bennett v. SLT/TAG Inc.,* No. Civ. CV02-65-HU, 2003 WL 23531402, at \*9 (D.Or. May 8, 2003).

The FLSA plaintiff in *Bennett* sought not only unpaid overtime wages, but also liquidated damages. In deciding whether liquidated damages were warranted, the court was required to determine whether the defendant employer's failure to pay overtime was in good faith and whether it had reasonable grounds for believing that it had not violated the FLSA. In making its decision as to the defendant's good faith, the court considered the testimony of the defendant's payroll manager; she stated that she understood the industry standard was to classify finance and insurance managers as exempt under the FLSA automobile or retail exemption. *Bennett,* therefore, does not stand for the proposition that other employers' classification of a position as exempt is relevant to show that a defendant employer properly classified a same or similar position as exempt, as Defendant appears to contend. Rather, the *Bennett* Court considered the testimony of the defendant's own employee as to the industry standard because it pertained to the reason that the defendant had made the exempt classification and whether that reason was sufficient to show that the defendant had acted in good faith and had reason to believe that it was not violating the FLSA. As Plaintiff here points out, "classification decisions are to be made on the actual job duties and responsibilities of the position at issue, and not on what jobs the person holding that position may have had in the past." Reply at 3 (DE 40).

**\*6** Alternatively, if Defendant is attempting to argue that it acted in good faith (for liquidated damages purposes) when it classified Plaintiffs' positions as exempt because Plaintiffs' (same or similar) prior positions with former employers had been classified as exempt, then Defendant has no need for Plaintiffs' prior employment records. In determining whether liquidated damages are warranted, the relevant consideration would be what Defendant knew or believed *at the time* it determined Plaintiffs' positions were exempt, not whether Plaintiffs' prior employers actually classified the same or similar position as exempt.

### III. *CONCLUSION*

Based on the foregoing, the Court finds that Defendant has failed to meet its burden of establishing that the documents sought by the subpoenas *duces tecum* directed to Plaintiffs' former employers are relevant to any claim or defense herein. Moreover, the document requests of the subpoenas are overly broad on their face. Accordingly, Plaintiffs' Motion to Quash Subpoenas to Non-Parties, or in the Alternative, Motion for Protective Order (DE 16) is GRANTED and the subpoenas duces tecum directed to the former employers of Plaintiffs and opt-in Plaintiffs are QUASHED. [7]

[7] If Defendant has already received any documents pursuant to these subpoenas, it shall return them to the employer that produced them, without first inspecting or copying the documents.

DONE AND ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4370647

---

End of Document                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Pilkington North America, Inc. v. Smith, Not Reported in F.Supp.2d (2012)

2012 WL 689854
Only the Westlaw citation is currently available.
United States District Court,
M.D. Louisiana.

PILKINGTON NORTH AMERICA, INC.
v.
Leonard SMITH, dba Jazz Auto Glass.

Civil Action No. 11–176–BAJ–DLD.
|
March 2, 2012.

**Attorneys and Law Firms**

Eric Earl Jarrell, William Boyles, Robert J. Burvant, King, Krebs & Jurgens, PLLC, New Orleans, LA, for Pilkington North America, Inc.

Darryl M. Phillips, Angela Lumzy Jones, The Cochran Firm, New Orleans, LA, for Leonard Smith, dba Jazz Auto Glass.

*ORDER*

DOCIA L. DALBY, United States Magistrate Judge.

*1 This matter is before the court on a referral from the district court of defendants' motion to quash subpoenas [directed to defendants' financial institutions] and for protective order. (rec.doc.24). The motion is opposed. (rec.doc.28)

*Background*

On March 22, 2011, plaintiff filed suit against Leonard Smith and his unincorporated sole proprietorship Jazz Auto Glass, invoking this court's diversity jurisdiction, for claims of breach of contract and liability under Louisiana Revised Statute 9:2781, otherwise known as the "Open Account Statute," among other things. Plaintiff later amended and restated the complaint to include Jazz Auto Repair and Replacement, LLC, as an alternative defendant. (rec.doc.10)

Plaintiff alleges that on or about November 28, 2007, the parties entered into a Credit Agreement, pursuant to which plaintiff agreed to extend credit to defendants under the terms and conditions contained therein. Defendant Smith executed the Credit Agreement, identifying Jazz Auto Glass as the customer, and Smith executed the guaranty provision of the Credit Agreement as it related to Jazz Auto Glass. (rec.doc.1). Plaintiff also alleges that between March, 2009 and February, 2011, defendants purchased glass products from plaintiff in the net amount of more than $1.1 million dollars, but failed to pay for same.

In response, all the defendants contend that they were never granted credit or had an open account with plaintiff, they do not have records of the transactions, and that all glass products purchased for them were "paid for upon delivery by either cash or credit card authorization," among other things. (rec.doc.19) Defendants also contend that plaintiff's claims should be dismissed on the grounds of accord and satisfaction. *Id.*

*The Motion to Quash*

On December 19, 2011, plaintiff issued subpoenas to Capital One Bank, N.A. and J.P. Morgan Chase Bank, seeking the following documents:

> CERTIFIED COPIES of all bank records for Leonard S. Smith (xxx–xx–xxxx), Jazz Auto Glass and/or Jazz Auto Repair & Replacement, LLC from Janaury 1, 2007, through the present, including, but not limited to, any all bank records from any branch of [Capital One, NA or J.P. Morgan Chase Bank] regarding checking accounts, savings accounts, loan agreements, lines of credit, or any other financial transactions undertaken by or on behalf of Leonard S. Smith (xxx–xx–xxxx), Jazz Auto Repair & Replacement, LLC.

(rec.doc.24–2, e.g.)

Defendants then filed the instant motion to quash stating that the subpoenas were overbroad, vexatious, harassing and constituted a "fishing expedition"; sought irrelevant and/or confidential information; and constituted an unauthorized, pre-judgment debtor examination. Defendants Smith and Jazz Auto Repair argue that they have grounds to challenge the subpoenas issued to their

financial institutions because Smith and Jazz Auto Glass have a legitimate privacy interest in the requested records. Defendants further argue that seeking five years of records is outside the scope of relevant discovery, and that the only relevant fact is whether or not Smith and Jazz Auto Glass owe the alleged debt. Defendants contend that "examining defendants' checking account and banking transactions do nothing to show whether or not the alleged debt is owed," and the subject subpoenas are designed to "elicit confidential information" which "potentially could serve as an unfair advantage and/or leverage" to plaintiff. (rec.doc.24–1, pgs.3, 4) Defendants cite to *Old Towne Development Group, LLC v. J. David Matthews,* 2009 WL 2021723 (M.D.La. July 9, 2009) in support of their arguments.

**\*2** In response to the motion to quash, plaintiff argues defendants have claimed that they do not have copies of the invoices and delivery receipts, and produced only the signed Credit Agreement in response to a discovery request for all their business records relating to the transactions with plaintiff from 2006 to present. Plaintiff also argues that defendants are claiming that all the transactions were with Jazz Auto Repair, although plaintiff alleges that this entity was not formed "until long after the transactions" with plaintiff began. (rec.doc.28)

### *Governing Law & Analysis*

Federal Rule of Civil Procedure 26(b) allows "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The Federal Rules of Civil Procedure therefore permit broad discovery, allowing inquiry into any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party. *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir.1991); Fed.R.Civ.P. 26(b)(1).

The first issue raised by plaintiff is defendants' alleged lack of standing to seek to quash a subpoena issued to a third party, particularly in regard to a bank's records as other courts have determined that bank records are the business records of the bank, and a party has no personal right over those records. However, plaintiff acknowledges the line of unreported cases in the Fifth Circuit which have found that a party's personal interest in the confidentiality of bank records was sufficient to confer standing. *See, e.g., Old Towne \*1; Keybank Nat. Ass'n v. Perkins Rowe Associates, LLC,* 2011 WL 338470, \*2 (M.D.La. January 31, 2011). Thus, because the authority in this District and other local districts dictates that this

interest is enough to confer standing to challenge the bank subpoenas, this court finds that defendants have standing to challenge the subpoenas on this basis.

As the parties are aware, the scope of discovery is broad. Here, defendants deny the transactions occurred, kept no records of either invoices or delivery receipts, and claim they made any payments either in cash or through credit card authorizations, leaving, presumably, banking records as one of the only business records in existence.

According to the pleadings, the credit agreement was executed on November 8, 2007, and the period of non-payment extended from March, 2009, to February, 2011. Since defendants contend they kept no separate records of purchases or delivery receipts, bank records likely could contain relevant information, or lead to relevant information, about cash sales and purchases on credit. Thus, those bank records from November, 2007, to February, 2011, are discoverable.

However, the court finds that defendants' interest in the confidentiality of their banking records are best served by a protective order. Thus, to the extent that the responses to the subpoenas may require production of confidential or proprietary information, and in anticipation of potentially similar discovery disputes, the court will order the parties to fashion a joint protective order with regard to any confidential and/or proprietary information which may arise in this matter, and submit same for the court's approval.

**\*3** Accordingly,

**IT IS ORDERED** that the motion to quash subpoenas [to defendants' financial institutions] and for protective order is **GRANTED** in part and **DENIED** in part as follows:

1. Defendants' motion for protective order is **GRANTED.** The parties shall submit to the court a joint protective order in accordance with this court's Administrative Procedures within fourteen (14) days of this Order. Such protective order shall govern all confidential and/or proprietary information which may arise in this matter.

2. Defendants' motion to quash the subpoenas is **DENIED** as to defendants' banking records between November, 2007 through February, 2011. These documents shall be produced by the subject financial institutions in their entirety within twenty-eight (28) days of this Order. It is the parties' responsibility to expeditiously inform the financial institutions of this Order.

Pilkington North America, Inc. v. Smith, Not Reported in F.Supp.2d (2012)

3. In all other respects, the motion is **DENIED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 689854

End of Document                                                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 832285
Only the Westlaw citation is currently available.
United States District Court,
M.D. Louisiana.

David W. FRAZIER
v.
RADIOSHACK CORPORATION.

Civil Action No. 10–855–BAJ–CN.
|
March 12, 2012.

**Attorneys and Law Firms**

David W. Frazier, Baton Rouge, LA, pro se.

George Davidson Fagan, Margaret F. Swetman, Leake &
Andersson, LLP, New Orleans, LA, for Defendant.

### *RULING & ORDER*

CHRISTINE NOLAND, United States Magistrate Judge.

**\*1** This matter is before the Court on the "Objection to
Notice for Records Deposition Motion to Quash" (R. Doc.
47) filed by plaintiff, David W. Frazier ("Frazier" or
"plaintiff"), which the Court construes to be a motion to
quash a subpoena duces tecum and notice of records
deposition. Defendant, RadioShack Corporation
("RadioShack"), has filed an opposition (R. Doc. 53)
relative to Frazier's motion.

### *FACTS & PROCEDURAL BACKGROUND*

Frazier filed this suit on December 22, 2010, alleging that
his former employer, RadioShack, wrongfully terminated
him on June 3, 2008, discriminated against him on the
basis of his age, and retaliated against him because he
filed a discrimination complaint. He claims that
RadioShack's actions violated various laws, including but
not limited to, the Family and Medical Leave Act
("FMLA"), 29 U.S.C. § 2601, *et seq.,* the Age
Discrimination in Employment Act of 1967 ("ADEA"),
29 U.S.C. § 621, *et seq.,* the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e,
*et seq.,* and Louisiana's Employment Discrimination Law,
La. R.S. 23:301, *et seq.*

In order to obtain information concerning plaintiff's
income following his June 3, 2008 termination at issue in
this litigation, Radioshack issued a subpoena duces tecum
and Notice of Records Deposition to JP Morgan Chase
National Corporate Services, Inc. ("JP Morgan Chase"),
seeking plaintiff's personal banking records from June 3,
2008 through the present date. In their present motion,
Radioshack contends that such records are necessary to
ascertain information concerning plaintiff's sources of
income since June 3, 2008 because other discovery that
they have obtained thus far, such as plaintiff's federal tax
returns for the years 2008 through 2010, plaintiff's
deposition testimony, and plaintiff's statements for a
brokerage account, have provided insufficient information
as to how plaintiff supported himself from the time of his
June 3, 2008 termination through September 2011 when
he obtained part-time employment. Plaintiff objects to the
subpoena duces tecum and notice of records deposition on
the basis that they seek disclosure of personal and private
banking information that is privileged and to which
Radioshack is not entitled because it is a private
corporation and not a "government authority;" that they
seek information that is not relevant to his claims; and
that they are overly broad in that they seek the release of
joint banking account information that is the separate
property of his wife, who is not a party to this lawsuit and
who has not been notified by the defendant regarding the
subpoena.

1        In his motion, plaintiff asserts that the Right to
         Financial Privacy Act of 1978, 12 U.S.C. § 3401, *et
         seq.,* prevents disclosure of banking records to anyone
         but governmental authorities.

### *LAW & ANALYSIS*

As an initial matter, it should be noted that a plaintiff
cannot challenge a Rule 45 subpoena directed to a third
party on the basis that it violates another person's privacy
rights (such as the plaintiff's wife's privacy rights), that
the subpoena is overly broad, or that the subpoena seeks
information that is irrelevant because only the responding
third party can object and seek to quash a Rule 45
subpoena on those grounds.[2] Accordingly, plaintiff's
overbreadth, relevancy, and privacy objections (asserted

Frazier v. RadioShack Corp., Not Reported in F.Supp.2d (2012)

on behalf of his wife) relating to the fact that the subject subpoena seeks records from a joint bank account that he shares with his wife in which she has separate property must be denied for a lack of standing.[3]

[2]    See, *Public Service Co. of Oklahoma v. A Plus, Inc.,* 2011 WL 691204, *5 (W.D.Okla.2011)(Defendants lacked standing to challenge subpoenas directed to third-parties on the basis that the subpoenas are unduly burdensome. Even if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on grounds that the information imposes an undue burden on the subpoenaed party); *Keybank National Ass'n v. Perkins Rowe Associates, L.L.C.,* 2011 WL 90108, at *2 (M.D.La.2011)(defendants had standing to challenge third-party subpoenas seeking the defendants' private bank records, but lacked standing to challenge other third-party subpoenas on grounds of relevance or undue burden to the subpoenaed non-party); *Streck, Inc. v. Research & Diagnostic Systems, Inc.,* 2009 WL 1562851, *3 (D.Neb.2009)(movant lacked standing to contest third-party subpoenas on grounds of undue burden or inconvenience).

[3]    See, *Sneirson v. Chemical Bank,* 108 F.R.D. 159, 161, n.5 (D . C.Del.1985)(Plaintiff argued that his wife's independent right to privacy in her financial records precluded the defendant's discovery of his joint bank accounts with her. The court held that, despite the plaintiff's "zealous advocacy" of his wife's separate legal status, similar to Frazier's in the present case, he had no standing to assert a right to privacy or privilege on behalf of another party. He only had standing to challenge the defendant's discovery because *he* personally claimed a privilege in the bank records).

**\*2** Furthermore, even assuming plaintiff could assert a relevancy objection to the subject subpoena, it would be denied since this Court has previously determined, during the December 16, 2011 telephone conference in this matter, that information concerning plaintiff's income and his employment subsequent to his termination by Radioshack is relevant to this litigation, and that by filing this lawsuit, plaintiff "opened himself up" to discovery concerning such matters.[4] In the Complaint, Frazier asserts claims for wrongful termination, discrimination, and retaliation under Title VII, the ADEA, the ADA, and the FMLA and can be awarded lost earnings or backpay in connection with those claims.[5] In response to Frazier's claims, RadioShack raised the affirmative defense that Frazier failed to mitigate his damages as required by the ADEA and Title VII. *See,* R. Doc. 8, Affirmative Defense 20. Specifically, RadioShack contends that, following his

termination, Frazier failed to make reasonable efforts to obtain and maintain substantially equivalent employment to his employment at RadioShack. For RadioShack to demonstrate that Frazier failed to mitigate his damages in that manner, it must prove that Frazier failed to conduct a diligent search for employment following his termination by Radioshack.[6] In an effort at meeting its burden of proof on the mitigation defense, Radioshack gathered records from the Louisiana Workforce Commission; from plaintiff's current employer, Lofton Security Services, Inc.; and from Smith Barney regarding a mortgage account from which plaintiff purportedly obtained money to support himself since 2007. However, those records and plaintiff's deposition testimony still have not made clear how plaintiff supported himself financially from the time of his June 3, 2008 termination by RadioShack through September 2011 when he obtained part-time employment, particularly during the years 2010 and 2011. Plaintiff's JP Morgan Chase bank records should reflect his source(s) of income since his June 3, 2008 termination and are therefore relevant to whether plaintiff has made reasonable efforts to secure substantially similar employment since his termination.[7] Additionally, plaintiff's bank records are relevant to plaintiff's claims for damages in this case. If plaintiff is awarded damages, the amount of damages RadioShack is required to pay may be offset by sums that plaintiff has received from other sources, such as through subsequent employment.[8]

[4]    The undersigned also finds that RadioShack adequately specified the materials sought by the subpoena (in terms of type and time period), as is required to overcome a motion to quash. *See, Rice v. Reliastar Life Ins. Co.,* 2011 WL 5513181 (M.D.La.2011); *U.S. Manghis,* 2010 WL 349583, *2 (D.Mass.2010). The subpoena seeks "[a]ny and all records associated with accounts maintained by David W. Frazier, DOB: [REDACTED]; SSN: [REDACTED] at your institution, including but not limited to statements, deposits, copies of checks written [ ] the accounts; all loan information, including but not limited to loan applications and surety agreements securing any and all loans for the period of June 3, 2008 through present." *See,* R. Doc. 53–1.

[5]    *Manuel v. Texas State Technical College,* 2008 WL 4411475 (5th Cir.2008)(awarding back pay in Title VII case related to a job termination where plaintiff properly mitigated her damages); *McClain v. Lufkin Industries, Inc.,* 519 F.3d 264 (5th Cir.2008); *McLean v. Runyon,* 222 F.3d 1150 (9th Cir.2000).

6    "Because an award of back pay is an equitable remedy designed to make the injured party whole," the U.S. Fifth Circuit Court of Appeals has held "that an injured party has a duty ... to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages." *Jackson v. Host Intern., Inc.,* 2011 WL 2119644, * *6 (5th Cir.2011); *Palasota v. Haggar Clothing Co.,* 499 F.3d 474, 486 (5 th Cir.2007). The burden is on the employer to prove that: (1) substantially equivalent work was available; and (2) the former employee did not exercise reasonable diligence to obtain it. *Id.,* citing *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 393 (5th Cir.2003). "Substantially equivalent employment is that employment which affords virtually identical promotion opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [former employee] has been discriminatorily terminated." *Jackson,* at * *6. If an employer can demonstrate that the former employee did not exercise reasonable diligence, it need not prove the availability of equivalent work. *Id.*

7    *See, Shirazi v. Childtime Learning Center, Inc.,* 2008 WL 4792694 (W.D.Okla.2008)(The court found that the plaintiff's recent salary, including prior to and after his employment with the defendant, was relevant to the inquiry of what type of employment might be "substantially equivalent"); *De Bauche v. Harley-Davidson Motor Co. Operations, Inc.,* 2004 WL 260277 (7th Cir.2004)("[I]nformation about [plaintiff's] current employment-or the extent to which she has rejected any additional employment offered to her-was relevant to [defendant's mitigation] defense, and thus discoverable").

8    *See, Johnson v. Martin,* 473 F.3d 220, 222 (5th Cir.2006)( "Under the ADEA, "[c]ourts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards"); *Stephens v. C. I.T. Group/Equip. Fin ., Inc.,* 955 F.2d 1023, 1028 (5th Cir.1992)(In the context of the ADEA, courts must offset lost wage awards with post-termination earnings); *Galloway v. State of La.,* 817 F.2d 1154 (5th Cir.1987)(plaintiff was reinstated with full back pay retroactive to the date of his suspension, subject to an offset for wages earned and unemployment benefits received); *Grace v. Ga. Gulf Corp.,* 2002 U.S. Dist. LEXIS 19997, at *12 (M.D.La.2002)("[H]ad plaintiff proven she was entitled to damages, the award would have been offset by any sums that the plaintiff received from other sources, such as unemployment compensation or subsequent employment"); *Martin v. Anslinger, Inc.,* 794 F.Supp. 640 (S.D.Tex.1992); *St. John The Baptist Parish Ass'n of Educators v. St. John The Baptist School Bd.,* 556

So.2d 157 (La.App. 5 Cir.1990), citing *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730 (5th Cir.1977) and *Merriweather v. Hercules, Inc.,* 631 F.2d 1161 (5th Cir.1980)(Public policy does not support double recovery by an employee of unemployment benefits and wages for the same (overlapping) period of time. The decision of offset is left to the sound discretion of the trial court); *Palasota v. Haggar Clothing Co.,* 499 F.3d 474 (5th Cir.2007)("Certain events or circumstances may serve to cut off an employee's entitlement to back pay prior to the date of the judgment, such as, for example, the plaintiff's employment in a higher-paying job or 'the plaintiff's failure to seek other employment with reasonable care and diligence' ").

Finally, although, generally, when a plaintiff claims a *personal* interest in the confidentiality of the information requested by a Rule 45 subpoena, he/she has standing to challenge the subpoena on that basis even though it is directed to a third party,[9] it has nevertheless been held by the U.S. Supreme Court, in *U.S. v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), that there is "no legitimate 'expectation of privacy' " in the contents of original checks and deposit slips held by a bank "[b]ecause the checks are not confidential communications but negotiable instruments to be used in commercial transactions" and that "financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Miller,* at 442. Notwithstanding *Miller,* some federal courts have differed on the issue of whether a person has a privilege in or a privacy right to bank records held by his bank and whether that right is sufficient to provide standing to challenge a subpoena issued to a bank. *Keybank,* at *7, n.7. This Court, however, has previously held that a plaintiff lacked standing to challenge a subpoena issued to his bank for his bank records in the context of a civil action on privilege/privacy grounds because the plaintiff failed to cite a case decided by the U.S. Fifth Circuit Court of Appeals, or any federal court in Louisiana, holding that such standing exists. *Id .* Since Frazier has likewise failed to cite any such jurisprudence in the present case, his motion to quash RadioShack's subpoena for his banking records in the context of this civil suit should be denied. Furthermore, the undersigned finds that any privacy concerns plaintiff may have relative to discovery of his banking documents in the context of this litigation (as well as any privacy concerns relating to his wife's confidential information) are sufficiently addressed by the protective order entered on May 17, 2011.[10]

9    *See, Brown v. Braddick,* 595 F.2d 961, 967 (5th

Cir.1979); *Jez v. Dow Chemical Co., Inc.,* 402 F.Supp.2d 783 (S.D.Tex.2005)(A motion to quash or modify a subpoena under Rule 45 may only be made by the party to whom the subpoena is directed, except where the party seeking to challenge the subpoena has alleged some personal privacy right or privilege in the documents sought). *Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979); *Jez v. Dow Chemical Co., Inc.,* 402 F.Supp.2d 783 (S.D.Tex.2005).

10    *See, Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC,* 2010 U.S. Dist. LEXIS 121192, *7 (M.D.La.2010)("To the extent that the subpoenas require production of confidential or proprietary information, the protective order previously issued affords [mover] sufficient protection from public disclosure").

11    This Court has previously noted that La. R.S. 6:333, by its terms, does not create a privilege that bars discovery of financial records from a banking institution that are relevant and otherwise discoverable in a particular case. *KeyBank,* at *6. Instead, that statute only provides for specific procedures that are to be followed before a customer's financial records may be produced by a bank. *Id.,* at *6–7. Those procedures appear to have been followed by RadioShack in that plaintiff was personally served with the subpoena on December 21, 2011, which is more than fifteen (15) business days prior to the January 16, 2012 return date on the subpoena, and because RadioShack provided an affidavit establishing that service. *See,* La. R.S. 6:333.

**\*3** Furthermore, regarding Frazier's argument concerning the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401, *et seq.,* such Act does not apply to a private corporation, such as RadioShack. Such Act only limits the power of a government agency to issue subpoenas for the records of bank customers. *See, Tullier v. United States DOD,* 2005 U.S. Dist. LEXIS 13495 (W.D.Tex.2005). The Act provides no justification for a bank's noncompliance with a subpoena issued in a civil action by a private corporation. *Clayton Brokerage Company, Inc. v. Clement,* 87 F.R.D. 569 (D.Md .1980); *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC,* 2010 U.S. Dist. LEXIS 120344 (M.D.La.2010). 12

12    *See also, Sneirson,* at 161 (The privilege against a bank's disclosure of a customer's financial records in a bank's custody is not established by reference to the Right to Financial Privacy Act, 12 U.S.C. § 3401, *et seq.,* which limits government access to individual

financial records, not access in litigation between two (2) private parties).

Finally, the undersigned finds that RadioShack's request for an award of the attorney's fees that it incurred in opposing the present motion should be granted. Pursuant to Fed.R.Civ.P. 37(a)(5)(B), where a discovery motion (such as a motion to quash) is denied, a court must require the movant, the attorney filing the motion, or both to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney fees, unless it is determined that the motion was "substantially justified" or that other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37(a)(5)(B). As mentioned above, during the December 16, 2011 telephone conference in this matter, wherein the undersigned denied plaintiff's prior motion to quash subpoenas directed to Louisiana Workforce Commission and Lofton Security Services concerning plaintiff's post-termination employment and income information, the undersigned expressly informed plaintiff that, by filing this suit, he had "opened himself up" to discovery concerning his income and employment.

According to RadioShack's present opposition, despite the undersigned's comments during that conference, plaintiff nevertheless filed the present motion, seeking to quash a subpoena requesting income information through his banking records. RadioShack also informs the Court that it contacted plaintiff and requested that he voluntarily withdraw the present motion to quash in light of the undersigned's advice and decision on his prior motion to quash during the December 16, 2011 conference. However, plaintiff refused to do so, resulting in RadioShack incurring attorney's fees to oppose the motion. Because plaintiff has not demonstrated that the present motion was substantially justified[13] and that an award of attorney's fees to RadioShack is unjust,[14] RadioShack will be awarded the reasonable amount of attorney's fees that it incurred in connection with this motion.

13    Considering this Court's express recognition, in *KeyBank,* that (1) La. R.S. 6:333 does not create a privilege barring discovery of financial records that are relevant and otherwise discoverable in a particular case; (2) that, under U.S. Supreme Court jurisprudence, there is "no legitimate 'expectation of privacy' " in the contents of original checks, deposit slips, and financial statements; (3) that the Right to Financial Privacy Act, 12 U.S.C. § 3401, *et seq.,* only limits a government authority's ability to acquire personal financial information from banks and similar financial

institutions and does not apply when records are sought in the context of a civil action between private parties; and (4) that a private party only has standing to object to a third party subpoena when he or she has a "specific personal right which would bar production" of his/her financial records, Frazier did not have a "substantial justification" for filing the present motion.

14  Although Frazier filed a supplemental memorandum in support of his motion to quash after RadioShack filed its opposition requesting attorney's fees, he did not present any specific arguments as to why an award of attorney's fees would be unjust.

Accordingly;

**IT IS ORDERED** that the "Objection to Notice for Records Deposition Motion to Quash" (R. Doc. 47) filed by plaintiff, David W. Frazier, which the Court construes to be a motion to quash the subpoena duces tecum and notice of records deposition directed to J.P. Morgan Chase National Corporate Services, Inc., is hereby **DENIED.**

**\*4 IT IS FURTHER ORDERED** that J.P. Morgan Chase National Corporate Services, Inc., shall produce the documents requested by the subpoena to defendant, RadioShack Corporation, subject to the protective order in place in this matter, within ten (10) days of receiving this Order, and can do so by retrieving the documents that it

sent to the Court for *in camera* inspection, pursuant to the Court's February 23, 2012 Order, as soon as possible.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail a copy of this Order to J.P. Morgan Chase National Corporate Services, Inc., through its Registered Agent, CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

**IT IS FURTHER ORDERED** that, defendant, RadioShack Corporation, is entitled to an award of the reasonable attorney's fees that it incurred in opposing the present motion and that, in connection with that award, the parties are to do the following:

(1) If the parties agree to the amount of attorney's fees, plaintiff shall pay that amount;

(2) If the parties do not agree to the amount, RadioShack shall, within twenty (20) days of the date this order is signed, submit to the Court a report setting forth the amount of attorney's fees incurred in obtaining this Order; and

(3) Plaintiff shall have ten (10) days after the filing of RadioShack's report to file an opposition.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 832285

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1652791
Only the Westlaw citation is currently available.
United States District Court,
M.D. Louisiana.

Kenneth HALL and Byron Sharper
v.
State of LOUISIANA, et al.

Civil Action No. 12–657–BAJ–RLB.
|
Signed April 23, 2014.

**Attorneys and Law Firms**

Ronald Ray Johnson, Ron Johnson and Associates, Stephen M. Irving, Steve Irving LLC, Joel Gerard Porter, Baton Rouge, LA, for Plaintiff.

Patricia Hill Wilton, Angelique Duhon Freel, Jessica Marie Field Thornhill, Madeline S. Carbonette, Department Of Justice, William P. Bryan, III, Attorney General's Office, Edmond Wade Shows, John Carroll Walsh, Shows. Cali, Berthelot & Walsh, LLP, Elizabeth Everett, Grant Joseph Guillot, Shows, Cali & Walsh, L.L.P., Christina Berthelot Peck, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Ashley Walton Beck, Sarah Shannahan Monsour, Parish Attorney's Office, James L. Hilburn, Mary E. Roper, Baton Rouge, LA, for Defendants.

## *ORDER*

RICHARD L. BOURGEOIS, JR., United States Magistrate Judge.

**\*1** Before the Court are various Motions to Quash Nonparty Deposition Subpoenas and Subpoenas to Produce Documents. (R. Docs.220, 222, 223, 227). On April 14, 2014, after hearing oral argument, the Court took the Motions to Quash under advisement. For the reasons detailed below, the Motions to Quash are **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

In this action, Plaintiff, Kenneth Hall, and Intervenor, Byron Sharper (Plaintiffs), allege Louisiana's Judicial Election Plan of 1993, Louisiana Revised Statute § 13:1952, intentionally dilutes and/or has the effect of diluting the voting power of African Americans in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, as well as the First, Fourteenth and Fifteenth Amendments to the United States Constitution. (R. Docs.1, 74, 76, 128, 133, 180). According to Plaintiffs, since implementing the 1993 Judicial Election Plan, the demographics of Baton Rouge's voting population has significantly changed and African Americans now constitute the majority of the voting age population. In an attempt to redistrict the Baton Rouge City Court sub-districts to address the changing demographics, House Bills 1013, 945, 318 and 198 were proposed in 2004, 2006, 2013 and 2014, respectively.[1] All were unsuccessful.

[1]   The Louisiana Legislative Digest summarized the purpose of each House Bill as: "Changes the election sections for the City Court of Baton Rouge and provides that three judges are elected from election section one and two judges are elected from election section two." 2004 H.B. No. 1013; 2006 H.B. No. 945; 2013 H.B. No. 318; 2014 H.B. No. 198.

As applied to modern demographics, the 1993 Plan allegedly dilutes the voting power of African Americans and results in the under-representation of African American judges to the Baton Rouge City Court. Plaintiffs also suggest the actual process of electing judges to the Baton Rouge City Court is racially discriminatory. Plaintiffs urge that the State's continued use of the 1993 Plan, at the least, disparately impacts African Americans, if it does not intentionally discriminate.

The State of Louisiana, Governor Jindal, Attorney General Caldwell, Secretary of State Schedler, the City of Baton Rouge, the Parish of East Baton Rouge, and Mayor Holden remain as Defendants.[2] According to the February 19, 2014 Scheduling Order (R. Doc. 202), the discovery deadline was April 21, 2014 (R. Doc. 202 at 1).

[2]   Governor Jindal, Attorney General Caldwell, Secretary of State Schedler, and Mayor Holden are all sued in their official capacities.

## II. APPLICABLE LAW

### A. Voting Rights Act and Constitutional Violations

To prove racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause and the Fifteenth Amendment's right to vote, a plaintiff must prove the government acted with discriminatory intent. To demonstrate discriminatory intent, a plaintiff can, but need not offer direct evidence—e.g., statements made by the legislative body or its members. Instead, a plaintiff may rely on circumstantial evidence to show that lawmakers purposefully discriminated against that plaintiff on the basis of race. *See Ketchum v. Byrne,* 740 F.2d 1398, 1406 (7th Cir.1984) ("In [*Rogers v. Lodge,* 458 U.S. 613, 622–27 (1982) ], the Supreme Court affirmed the district court's finding of intentional discrimination based on indirect and circumstantial evidence and endorsed its reliance on a 'totality of the circumstances' approach.").

**\*2** To evaluate claims of racial vote dilution under the Fourteenth Amendment's Equal Protection Clause, courts rely on the totality of the circumstances test. The test allows courts to infer an "invidious discriminatory purpose ... from the totality of the relevant facts," including the discriminatory effect of a redistricting scheme, by considering either circumstantial or direct evidence. *Rogers,* 458 U.S. at 618.

Unlike the Fourteenth and Fifteenth Amendments, proof of discriminatory intent is sufficient, but not necessary, to sustain a claim under the Voting Rights Act. Instead, a Voting Rights Act plaintiff may carry his or her burden by either satisfying the more restrictive intent test or the more lenient results test. *See Thornburg v. Gingles,* 478 U.S. 30, 43–44 (1986). Under the results test, the essential "question ... is whether as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice." *Thornburg,* 478 U.S. at 44. To effectively answer this question, "a court must assess the impact of the contested structure or practice on minority electoral opportunities on the basis of objective factors." *Id.*

### B. Rules 26 and 45 of the Federal Rules of Civil Procedure

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the scope of discovery. Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1484

(5th Cir.1990) (quoting Fed.R.Civ.P. 26(b)(1)). The scope of discovery is not without limits, however, and the Court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(c)(1). Additionally, the Rule provides that, on a timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed.R.Civ.P. 45(c)(3). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir.2004). A court's consideration of a motion to quash a third-party subpoena as unduly burdensome should be governed by the following factors: (1) relevance of the information sought; (2) the requesting party's need for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity of the description of the documents; and (6) the burden imposed. *Wiwa,* 392 F.3d at 818.

**\*3** Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b). See *Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D.Tex.2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1).")

### III. DISCUSSION

### A. Motion to Quash Subpoena Issued to Christina Peck

On April 4, 2014, Plaintiffs issued a Rule 45 subpoena to Christina Peck. The subpoena asked Ms. Peck to appear for a deposition on April 15, 2014 and to produce documents. (R. Doc. 220–1 at 3, 7). The Notice of Deposition explains that questions "will be limited to [Ms. Peck's] testimony given before the House and Governmental Affairs Committee on May 19, 2004 and

information related to House Bill 1013. (R. Doc. 220–1 at 1). The subpoena additionally seeks production of the following documents:

**Document Request No. 1**

All documents and communications, including e-mails, concerning the Baton Rouge City Court, the Judicial Election Plan, and the Voting Rights Act, including: (a) contracts of employment between you and Judges Ponder, Wall and Davis and the Baton Rouge City Court; (b) evidence of payment under those contracts; (c) expert reports, opinions and drafts of reports and opinions from any expert retained as a result of any contracts of employment; and (d) revisions and/or changes to the 1993 Judicial Election Plan.

**Document Request Nos. 2–6**

All documents related to the legislative redistricting process leading to the planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004, House Bill 945 of 2006, House Bill 318 of 2013 and House Bill 198 of 2014, and any documents related to the defeat of House Bill 1013 of 2004, 945 of 2006, 318 of 2013 and 198 of 2014 (proposed House Bills).

**Document Request No. 7**

All documents—including payments for services, agreements of representation and contracts of employment—of any person or entity as a voting rights expert, attorney, or lobbyist relating to the planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004 and House Bill 945 of 2006.

(Peck Subpoena, R. Doc. 220–1 at 13–14).

According to Plaintiffs, Christina Peck appeared and testified before the Louisiana Legislature on behalf of former Defendants, City Court Judges Suzan Ponder, Alex Wall and Laura Prosser (the judges), in opposition to the redistricting legislation, House Bill 1013 of 2004 and House Bill 945 of 2006. Plaintiffs therefore suggest the testimony and documents sought from Christina Peck are relevant and discoverable.[3] The three judges are former Defendants, but Ms. Peck did not represent them in this litigation. (Order Dismissing Judges, R. Doc. 177). Instead, Ms. Peck currently serves as counsel of record for Defendants, City of Baton Rouge, Parish of East Baton Rouge and Mayor Holden. As such, Ms. Peck moved to quash the subpoena on April 8, 2014 "because it is overly broad, seeks production of information protected

by the attorney-client privilege and the attorney work product protection, and is unduly burdensome." (R. Doc. 220 at 3).

[3]    Plaintiff Hall had alleged, among other things, that the three judges "actively campaigned and testified in opposition" to legislation that would have reapportioned the City Court judgeships and also "acted individually and in concert with others in the intentional defiance of the Plaintiff's right of suffrage." (R. Doc. 1 at ¶ 77; R. Doc. 74 at ¶ 13).

**\*4** An opposing party's counsel is not "absolutely immune from being deposed." *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986).[4] However, courts should only allow an opponent's counsel to be deposed in limited circumstances—i.e., where the party seeking the deposition has shown that: (1) "no other means exist to obtain the information than to depose opposing counsel;" (2) "the information sought is relevant and nonprivileged"; and (3) "the information is crucial to the preparation of the case." *Shelton,* 805 F.2d at 1327. Regardless of the movant, *Shelton* makes clear that the party asking to depose its opponent's counsel bears the burden of proof.

[4]    Ms. Peck cites several Eastern and Middle District cases to support her suggestion that article 508 of the Louisiana Code of Evidence instructs the Court's resolution of her Motion to Quash. (R. Doc. 220–3 at 2–3). However, Louisiana's Code of Evidence is inapplicable because: "Questions of privilege that arise in the course of adjudication of federal rights are governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *U.S. v. Zolin,* 491 U.S. 554, 562 (1989) (quoting Fed.R.Evid. 501). But, even though article 508 is not controlling, the Court notes that article 508 and the federal common law essentially employ the same substantive analysis in considering whether to allow the deposition of opposing counsel. *Compare* La. C. Evid. art. 508 (considering whether the information sought is (a) essential to the case, (b) not intended to harm or harass, (c) narrowly tailored and (d) not available from any other source), *with* Fed.R.Civ.P. 26(b),(g) (discovery requests may not be overly broad or intended to harass), *and Shelton,* 805 F.2d at 1327 (considering, among other things, whether the information is "crucial" and may be obtained by any other means).

Plaintiffs' case does not present the limited circumstances described by the *Shelton* Court. To begin, to the extent the questioning in the deposition will be limited to Ms. Peck's

testimony on House Bill 1013 given before the House and Governmental Affairs Committee on May 19, 2004, counsel has obtained a transcript of that testimony. (R. Doc. 225 at 5).⁵ There is no need to depose Ms. Peck about what was said when the testimony itself is available. As the District Judge previously explained to Plaintiffs, "to the extent [Ms. Peck] may have testified before a legislative body or anywhere else where there has been a transcript of her testimony ... that certainly would be enough." (Mot. to Disqualify Hr'g Tr., R. Doc. 219 at 12).

5    Plaintiff Hall's opposition mistakenly refers to a transcript of testimony occurring in May, 2014 instead of 2004.

Plaintiffs' remaining claims concern the current effects of the 1993 Judicial Election Plan and the failure of the legislature to enact subsequent legislation that would have allegedly remedied any negative effects resulting from the 1993 Plan's continued use. Plaintiffs argue that Ms. Peck's testimony is relevant to the claims of intentional discrimination and the claim for vote dilution "based on the 2010 Census Data." (R. Doc. 225 at 5). Plaintiffs have not sufficiently identified how any lobbying efforts or testimony by Ms. Peck before the legislature, years prior to that data being available, are relevant, much less crucially relevant, to their claims before the Court. The Court reiterates the District Judge's reasoning that the outcome of this case "will not be based upon any lobbying efforts made by anyone" and so long as Ms. Peck adheres to any rules governing "lawyer conduct with respect to legislative bodies ... she's certainly entitled to engage in that sort of conduct." (R. Doc. 219 at 14).

Beyond that, even assuming that Ms. Peck's testimony before any legislative body some ten years ago is relevant to the remaining claims, questioning Ms. Peck regarding the circumstances surrounding that testimony such as any communications she had with her clients in preparation for such appearance, would necessarily infringe upon confidential attorney-client communications. The attorney-client privilege is held by the clients, not Ms. Peck, and she is without authority to waive it. *See American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir.1971) (explaining that as holder of privilege, only client may waive it and fact that "one ceases to be a client after communication with the attorney makes no difference; the lawyer's lips must continue to remain sealed").

**\*5** Even if the legislative testimony provided by Ms. Peck is relevant to Plaintiffs' claims of intentional

discrimination and non-privileged, that information is not "crucial" to those claims, given they may be proven through circumstantial evidence. *See Miller v. Johnson*, 515 U.S. 900, 916 (1995) (plaintiffs may use direct or circumstantial evidence to establish violation of Voting Rights Act); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266–67 (1977) (direct and circumstantial evidence can be used to show intentional discrimination under the Equal Protection Clause).

Finally, Plaintiffs only allege that Ms. Peck provided testimony before lawmakers regarding House Bill 1013 of 2004 and House Bill 945 of 2006. Nonetheless, they have subpoenaed information which potentially spans Ms. Peck's 30 year career of litigating Voting Rights Act cases, including all documents "concerning the ... Voting Rights Act" as well as all documents "related to the legislative redistricting process" for specified time periods, regardless of whether any such documents were ever provided to or presented to any legislative body. (R. Doc. 220–1 at 13). The subpoena gave Ms. Peck approximately 11 days to comply. Plaintiff has made no showing to justify such an overreaching and burdensome request.

To the extent that the requests for documents seek to obtain evidence of communications, contracts and payments between Ms. Peck and her former clients, Plaintiffs have not shown how those items are both non-privileged and relevant to the remaining causes of action. The city court judges are no longer parties to this suit. Even if non-privileged evidence exists of a relationship between Ms. Peck and her former clients, Plaintiffs have not demonstrated the relevance of that relationship to the remaining causes of action.

The Court finds that the circumstances sufficient for the deposition of opposing counsel are not present. The Court also finds that the subpoena request fails to allow for a reasonable time to comply and is also unduly burdensome. For these reasons, Ms. Peck's Motion to Quash is **GRANTED.**

**B. Motion to Quash Subpoena Issued to the City Court Judges**

On April 4, 2014 and April 7, 2014, Plaintiffs subpoenaed Judges Ponder, Prosser and Wall ("the judges") to appear for depositions and to produce the following:

**Document Request Nos. 1–5**

All documents related to the legislative redistricting

process which led to the defeat, planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004, House Bill 945 of 2006, House Bill 318 of 2013 and House Bill 198 of 2014.

**Document Request No. 6**

All documents—including payments for services, agreements of representation and contracts of employment—indicating retention of any person or entity as a voting rights expert, attorney, or lobbyist relating to the planning, development, negotiation, drawing, revision or redrawing of the 1993 Judicial Election Plan, House Bill 1013 of 2004 and House Bill 945 of 2006.

**\*6** (R. Doc. 222–3 at 11).

In their Motion to Quash and supporting Memorandum (R. Doc. 222), the City Court judges request that this Court quash the subpoenas because (1) Plaintiffs have failed to comply with Louisiana Code of Evidence article 519 and (2) the information sought by the subpoenas is irrelevant. (R. Doc. 222–1).

In opposition, Plaintiffs argue that article 519 is inapplicable because this is a federal case involving matters of federal law. Plaintiff Hall further notes that the judges' attempt to apply, by analogy, cases regarding Louisiana Code of Evidence article 508, are distinguishable for this same reason. The Court agrees and will not quash the subpoenas for failure to follow the procedural and substantive requirements of article 519.

In both the Opposition and during oral argument, counsel for Plaintiffs explained that he intends to depose the judges as "merely fact witness[es] who opposed, testified, and who may have lobbied the Defendants and/or state legislators before, during, and post legislative hearings considering amendments to the Judicial Election Plan." (R. Doc. 226 at 3). Essentially, Plaintiffs intend to question the judges about their activities before the legislature.

Contrary to Plaintiff's position, however, the judges were not mere fact witnesses when testifying before the legislature. Plaintiffs repeat their argument that the judges' actions were non-judicial and outside of their function as judicial officers. This argument was rejected by the District Judge in his order dismissing the judges' from this action. (R. Doc. 177 at 14–19). In that ruling, the court specifically concluded that these acts were "judicial in nature" even if certain actions "may" have been taken "for their own personal benefit, and not for the

benefit of the citizens of Baton Rouge generally." (R. Doc. 177 at 18). The Court noted that even allegations of bad faith or malice are not sufficient to overcome immunity. The Court determined that the judges were entitled to absolute judicial immunity and dismissed the suit against them.[6]

[6]    The District Judge noted that judicial immunity included immunity from suit as well as immunity from damages. (R. Doc. 177 at 15).

Despite having those claims dismissed, Plaintiffs seek to depose the judges and presumably inquire about the circumstances surrounding those same acts that have previously been found to be judicial in nature. The judges argue that any testimony or information they could provide is irrelevant. In opposition, Plaintiffs summarily assert that the judges' actions over the past ten years go to the very heart of his case. Plaintiffs' case, however, no longer includes those claims against the judges that they "actively campaigned and testified in opposition" to legislation that would have reapportioned the City Court judgeships and also "acted individually and in concert with others in the intentional defiance of the Plaintiff's right of suffrage." (R. Doc. 1 at ¶ 77; R. Doc. 74 at ¶ 13). There is also no question that the judges have no role in the enforcement of the 1993 Judicial Election Plan and no duty or responsibility to take action in response to any shift in the voting population in the Baton Rouge area.

**\*7** Plaintiffs also contend the judges' interest in incumbency protection may be relevant to their claims. Plaintiffs have not shown, however, why the subjective intent or motivations of an individual citizen regarding a decision by the legislature as to whether to enact a law is relevant. Plaintiff Hall has provided no legal support for the proposition that the subjective intent of the judges bears on the presence of discriminatory intent of the legislative body.

Even if the Court were to assume that the statements of the judges to the legislature were relevant, the testimony opposing the proposed House Bills is available in the transcripts of those hearings. Second, there is no dispute that the three judges have an interest in incumbency protection. (R. Doc. 219 at 10) ("No question about it."). As such, facts relevant to those points are readily available from other sources. Finally, the District Judge conceded his willingness to assume that lobbying efforts occurred in connection with the proposed House Bills. (R. Doc. 219 at 15) ("Based upon the arguments that were previously made at prior hearings, it's clear to me that there were some lobbying efforts."). The District Judge,

however, also made clear that Plaintiffs did not show how those lobbying efforts are relevant to their claims. (R. Doc. 222–6). Plaintiffs have likewise failed to do so here, especially where the claims against those judges have been dismissed .⁷ This Court agrees that Plaintiffs have again not shown the relevance of any lobbying efforts by the judges. As such, the Court **GRANTS** the judges' Motion to Quash the Rule 45 subpoenas issued by Plaintiffs.

⁷ In argument before the District Judge at a hearing concerning a motion to disqualify Ms. Peck, counsel for Plaintiffs stated that the lobbying efforts of the judges and Ms. Peck "might be an element of the claims against some of the parties ... such as the judges." (R. Doc. 222–6 at 14–15). Again, those claims are no longer part of this litigation.

### C. Motion to Quash Subpoenas Issued to the Legislators

On April 4, 2014, Plaintiffs issued subpoenas to John A. Alario, Jr., President of the Louisiana Senate; Charles Kleckley, Speaker of the Louisiana House of Representatives; Dr. William Blair, Demographer of the Louisiana Legislature; and Alfred Speer, Clerk of the Louisiana House of Representatives (legislators), for both the production of documents and deposition testimony. Broadly summarized, the subpoenas ask for information concerning: (1) the identities of persons participating in the legislative redistricting process; (2) communications the legislators had with any other government official or interested party about the 1993 Plan or any of the proposed House Bills; (3) the factual information considered in connection with the 1993 Plan and the proposed House Bills; (4) finalized maps and any drafts of maps relevant to the 1993 Plan and the proposed House Bills, as well as the individuals contributing to the creation of those maps and the data they relied on; and (5) documents, reports or other information provided by any experts or consultants associated with the 1993 Plan and the proposed House Bills.

The legislators argue that the subpoenas should be quashed because, as Judge Jackson previously held, Senator Alario's and Representative Kleckley's conduct related to Plaintiffs' claims was legislative in nature and entitled them to absolute immunity. (R. Doc. 223–1 at 7); (Order, R. Doc. 178 at 18). The legislators suggest that because the requested documents and intended testimony center on the same legislative acts, the legislators and their staff are absolutely immune from testifying on those matters. (R. Doc. 223–1 at 7).

**\*8** The legislators also argue that the documents sought are irrelevant because the intent of the legislators has no bearing on Plaintiffs' claims which may be proven by circumstantial, as opposed to only direct evidence. (R. Doc. 223–1 at 8, 10–11).

Finally, the legislators suggest that the subpoenas are unduly burdensome. Plaintiffs seek documents spanning 21 years and covering 23 specific categories. The scope of the documents in each category is essentially limitless. The subpoenas commanded the legislators and staff to appear for deposition and produce those documents on April 16, 2014—within less than two weeks of service and only 6 days before the discovery deadline, all while the legislature is in session. (R. Doc. 223–1 at 12).

The legislators do not object, however, "to furnishing Mr. Hall with any document or files considered public records under Louisiana law including the legislative histories, committee minutes, and available audio and video for the named bills." (R. Doc. 223–1 at 2).

The District Judge, citing *Tenney v. Brandhove,* 341 U.S. 367 (1951), has already determined that the individual legislators are absolutely immune from liability for their legislative acts. (R. Doc. 178 at 16). The question here, however, is whether that legislative immunity gives rise to a general evidentiary privilege, allowing them to refuse to provide evidence in a civil lawsuit related to their legislative activities.

The Speech or Debate Clause of the First Amendment gives *federal* legislators "two distinct privileges: (1) freedom from questioning, which is in the nature of a testimonial privilege, and (2) freedom from liability, which means that reference may not be made in court to a defendant's legislative activities." *U.S. v. Swindall,* 971 F.2d 1531, 1544 (11th Cir.1992) (member of the U.S. House of Representatives); *Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491, 502–03 (1975) (absolute privilege from testimony and absolute immunity from liability in Speech or Debate Clause applies to Congress).

However, the Speech or Debate Clause only applies to U.S. Congressmen and not to state legislators. Instead, the state lawmaker's "legislative privilege is governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence." *Favors v. Cuomo,* 285 F.R.D. 187, 209 (E.D.N.Y.2012); *Village of Arlington,* 429 U.S. at 268 (recognizing a testimonial privilege for state legislators and severely limiting, but not foreclosing, the possibility of piercing the privilege in discriminatory-intent claims). Unlike the absolute privilege afforded to

members of Congress, the legislative privilege for state lawmakers is qualified and capable of yielding. *Rodriguez v. Pataki,* 280 F.Supp.2d 89, 93–94 (S.D.N.Y.2003); *Hobert v. City of Stafford,* 784 F.Supp.2d 732, 763 (S.D.Tex.2011) (recognizing a qualified privilege for local legislators).

The Court, therefore, recognizes the existence of a common law state legislative privilege that may yield in certain circumstances. As such, the question becomes whether the disclosure of certain evidence should be allowed. In making this determination, the Court must balance the interest of the party seeking the evidence against the interest of the one claiming the privilege by considering the following factors:

> **\*9** (i) the relevance of the evidence sought to be protected;
>
> (ii) the availability of other evidence;
>
> (iii) the seriousness of the litigation and the issues involved;
>
> (iv) the role of the government in the litigation; and
>
> (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Perez v. Perry,* No. 11–360, 2014 WL 106927, at \*2 (W.D.Tex. Jan. 8, 2014) (citing *Rodriguez,* 280 F.Supp.2d at 101). In considering these factors, "the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of worry about inquiry into [its] deliberations.' " *Veasey v. Perry,* No. 13–193, 2014 WL 1340077, at \*2 (S.D. Tex. April 3, 2014) (citing *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections,* No. 11–5065, 2011 WL 4837508, at \*7 (N.D.Ill. Oct. 12, 2011)).

The legislators argue that the evidence requested is irrelevant to show discriminatory intent. Contrary to the legislators' argument, statements made by members of the lawmaking body are relevant to show discriminatory intent, which may be part of the proof used to establish Plaintiffs' substantive claims. *See Village of Arlington,* 429 U.S. at 268. But this is just one factor among many that Plaintiffs may use to prove their claims. As acknowledged by the Supreme Court,

> Inquiries into congressional motives or purposes are a hazardous matter. When the issue is simply the interpretation of

legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature, because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose. It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

*Hunter v. Underwood,* 471 U.S. 222, 228 (1985); *see also Palmer v. Thompson,* 403 U.S. 217, 224 (1971) ("no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it"); *Hispanic Coal. on Reapportionment v. Legislative Reapportionment Comm.,* 536 F.Supp. 578, 586 (D.Pa.1982) (discriminatory statements made by chairman of city redistricting committee were insufficient to prove discriminatory intent absent a showing that state legislative body adopted chairman's views). The Court finds that while certain requested evidence may be relevant, "it is not central to the outcome of this case." *Comm. for a Fair & Balanced Map,* 2011 WL 4837508, at \*8.

Even where contemporaneous statements by members of the decision making body may be relevant, those can be reflected in transcripts, meeting minutes, or reports. *Village of Arlington,* 429 U.S. at 268. The legislators have recognized that these types of other evidence, specifically "any document or files considered public records under Louisiana law including the legislative histories, committee minutes, and available audio and video for the named bills," are not objected to and will be provided. (R. Doc. 223–1 at 2). During argument, counsel for the legislators indicated that some of Plaintiffs' document requests concerning the objective evidence available to and relied upon by the legislators in connection with the 1993 Judicial Election Plan, including Election Sections 1 and 2, and the House Bills proposed in 2004, 2006, 2013 and 2014 are matters of public record. As these documents are matters of public record, this factor weighs against disclosure.[9]

8      While such publicly available evidence may be useful
       in establishing discriminatory intent, the Court
       recognizes, however, the "practical reality that officials
       seldom, if ever, announce on the record that they are
       pursuing a particular course of action because of their
       desire to discriminate against a racial minority."
       *Veasey,* 2014 WL 1340077, at *3.

**\*10** The Court finds that the third and fourth factors
weigh in favor of disclosure. Plaintiffs raise serious
questions about the continued use of the Judicial Election
Plan of 1993 and its effect of diluting the voting power of
African Americans in violation of Section 2 of the Voting
Rights Act, as well as the First, Fourteenth and Fifteenth
Amendments to the United States Constitution. Plaintiffs
allege that discriminatory motives were likewise involved
in the failed attempts to redistrict the Baton Rouge City
Court sub-districts to address the changing demographics
in the defeat of House Bills 1013, 945, 318 and 198 that
were proposed in 2004, 2006, 2013 and 2014,
respectively. The role of the government in the alleged
conduct is direct.

The fifth factor weighs against disclosure. Courts have
long recognized that disclosure of confidential documents
and communications concerning intimate legislative
activities should be avoided. *Veasey,* 2014 WL 1340077,
at *3 n.7 (collecting cases). Failure to afford protection to
such confidential communications between lawmakers
and their staff will not only chill legislative debate but
also discourage earnest discussion within governmental
walls. The Court also recognizes that inquiries regarding
the specific motives of individual legislators, or advice
and recommendations used by those legislators to support
their decision, will encourage timidity and hamper the
legislative process.

The Court finds that the balance struck by the district
court in *Committee for a Fair and Balanced Map* is
instructive and also appropriate in this case. 2011 WL
4837508, at *9–10. As the *Committee* Court explained,
the privilege applies to any documents or information that
contains or involves opinions, motives, recommendations
or advice about legislative decisions between legislators
or between legislators and their staff. The broad and
speculative assumptions made by Plaintiffs are
insufficient to warrant a finding that the legislative
privilege should yield in this case to allow disclosure of
the motives, intent and communications of the
subpoenaed legislators or the identities of specific
legislators involved in the decision-making process. The
privilege therefore also applies to any information that
would reveal such opinions and motives. This includes

any procedures used by lawmakers in the legislative
process as well as the identification of any specific
legislators that were involved in any particular step in the
process. The Court finds that any need for this
information is outweighed by the purpose of the qualified
privilege.

With respect to facts or information that were made
available to lawmakers at the time of their decision, the
Court concludes that these materials are not shielded.
Indeed, to the extent that this information is part of the
public record, the legislators represent that they will
provide that information.⁹ This also includes, however,
information, reports or recommendations provided by
outside consultants, experts or lobbyists utilized in
consideration of the legislation and any contractual
agreements related thereto.

9      Assuming Defendants intend to present expert
       testimony, much of this is likely discoverable under
       Rule 26(a)(2)(B)(ii) of the Federal Rules of Civil
       Procedure.

**\*11** With these parameters in place, the Court now turns
to the specific document requests made by the Plaintiffs.
In their Opposition, Plaintiffs claim that the subpoenas
were issued "narrowly" and should not be quashed in any
way. (R. Doc. 235 at 1). Contrary to that assertion, the
subpoena is quite expansive in both the time periods
covered as well as the near limitless scope of materials
requested. Perhaps realizing the privileged nature of
certain information that would be responsive under the
subpoena, Plaintiffs have offered to "amend the subpoena
duces tecum to remove" any documents or information
"containing the motives and intent of individual members
of the Louisiana Legislature." (R. Doc. 235 at 9).

As noted above, Plaintiffs also served these subpoenas
during the legislative session and demanded production of
the documents and depositions to occur in less than two
weeks. Considering the expansive scope of the requests
and the potentially privileged nature of the information
requested, it was also unreasonable to expect the
preparation of a privilege log within the requisite amount
of time. In addition, Plaintiffs also failed to give the
required notice to the remaining Defendants of these Rule
45 subpoenas. The Court therefore finds that the
subpoenas did not give the third party legislators and their
staff a reasonable time to comply and also subjects them
to an undue burden. Pursuant to Rule 45, the Court must
quash or modify any such subpoena. Fed.R.Civ.P.
45(d)(3)(A).

For the foregoing reasons and for those set forth in the following section, the legislators' Motion to Quash is **GRANTED in part** and **DENIED in part.**

The requests for documents contained in the subpoenas are modified in that the legislators are not required to produce any responsive documents or information that contains or involves opinions, motives, recommendations or advice about the referenced legislation, including communications between either legislators, or legislators and their staff. This also includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process.

To the extent there are documents responsive to Plaintiffs' requests that have been made a part of the legislative record or would otherwise constitute public records, including "the legislative histories, committee minutes, and available audio and video for the named bills" as identified by the legislators in the Motion to Quash, those documents are properly the subject of discovery and the Court does not find that they would be covered by any privilege. (R. Doc. 223–1 at 2). The responsive date on the subpoena, however, is modified and this information shall be provided no later than **May 7, 2014.** Plaintiffs are responsible for providing a copy to all other parties in the litigation.

Finally, to the extent not covered by documents in the public record, the legislators shall provide any facts or information in their possession that were made available to lawmakers at the time of their decisions, including any information, reports or recommendations provided by outside consultants, experts or lobbyists in consideration of the legislation, as well as any contractual agreements related thereto. This information shall be provided no later than **May 7, 2014.** Plaintiffs are responsible for providing a copy to all other parties in the litigation. Any documents being withheld as privileged under this Order shall be identified in a privilege log pursuant to Rule 45(e)(2) of the Federal Rules of Civil Procedure and provided to Plaintiffs along with the production of documents.

**\*12** With respect to the subpoenaed depositions, the Motion to Quash is **GRANTED.** Plaintiffs did not provide reasonable notice to the other parties in the litigation or to the subpoenaed parties. Plaintiffs waited until the legislative session had begun, and with less than three weeks remaining to conduct discovery, to subpoena the President of the Senate, the Speaker of the House, a demographer, and the Clerk of the Louisiana House of Representatives, as well as four other individuals.

Substantively, Plaintiffs have not set forth the discoverable, non-privileged and relevant information that would be obtained through these depositions in accordance with the factors outlined above. The Court finds that quashing the deposition subpoenas is appropriate pursuant to Rule 45(A)(i), (ii) and (iv).

### D. Motion to Quash by State of Louisiana and Notice and Timing of Subpoenas

Rule 45 of the Federal Rules of Civil Procedure provides that "[s]erving a subpoena requires delivering a copy to the named person." Fed.R.Civ.P. 45(b)(1). "If the subpoena commands the production of documents ..., then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed.R.Civ.P. 45(a)(4). The "purpose of such notice is to afford other parties an opportunity to object to the production or inspection." *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp. Inc.,* No. 97–3012, 1998 WL 186705, at \*7 (E.D. La. April 17, 1998) (citing prior version at Fed.R.Civ.P. 45(b)(1)). Rule 30(b)(1) of the Federal Rules of Civil Procedure requires that "[a] person who wants to depose a person by oral questions must give reasonable written notice to every other party." Failure to serve a copy of a subpoena upon an opposing party or to give notice of its content deprives that party of any meaningful right to object or to otherwise protect its interests.

Plaintiffs issued 8 subpoenas to the various third parties on either April 4, 2014 or April 7, 2014 commanding them to appear for depositions and produce documents on either April 15, 2014 or April 16, 2014. Defendant, State of Louisiana first learned of the subpoenas issued to the various third parties upon either contact with the third parties or when those third parties filed their Motions to Quash. In any event, Defendant did not become aware of the various subpoenas before Thursday, April 10, 2014— only 1 business day before the Court's April 14, 2014 hearing and just 2 to 3 days before the depositions were scheduled and the requested documents were due.

"A party's failure to serve a copy of a subpoena on his opponent, as required by [Rule 45(a)(4) ], has been held to substantiate a decision to quash the subpoena." *Williams v. Weems Community Mental Health Center,* No. 04–179, 2006 WL 905955, at \*2 (S.D. Miss. April 7, 2006) (citing *Butler v. Biocore Med. Tech., Inc.,* 348 F.3d 1163, 1173 (10th Cir.2003)); *Firefighter's Inst. for Racial Equality v. City of St. Louis,* 220 F.3d 898, 903 (8th Cir.2000). The Court finds that given the circumstances, Plaintiffs' failure to comply with Rule 30(b)(1) and 45(a)(4) deprived Defendant of a fair opportunity to

protect its interests, resulting in prejudice. For that reason, in addition to those already given, the Court **GRANTS in part** and **DENIES in part** Defendant State of Louisiana's Motion to Quash the subpoenas for Plaintiffs' failure to provide notice and serve a copy of the subpoenas on all parties (R. Doc. 227). The Court finds that the document requests contained in the subpoenas to the legislators are modified in scope and timing as limited above. All other subpoenas are quashed.

**\*13** In addition to not giving sufficient notice of the subpoenas to all parties, the Court also finds Plaintiffs failed to provide sufficient notice to all of the actual subpoenaed third parties. Plaintiffs served their subpoenas on either April 4 or 7 and required the third parties to appear and produce documents between April 15 and 16. In other words, some of the third parties had at most 12 days to respond, while others were given as little as 9 days to comply with numerous and, in some instances, lengthy requests. The timeframes are clearly unreasonable, particularly when the 14 day period for serving objections under Rule 45(c)(2)(B) is generally considered a reasonable time. And so, the subpoenas must additionally be quashed as they "fail(s) to allow a reasonable time to comply." Fed.R.Civ.P. 45(c)(3)(A)(i); *see also Thomas v. IEM, Inc.,* No. 06–886, 2008 WL 695230, at \*3 (M.D.La. Mar. 12, 2008) (subpoenas would be quashed where they only allowed 9 days business days to respond and produce documents); *Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.,* No. 03–1496, 2004 WL 595236, at \*9 (E.D.La. Mar. 23, 2004) (on its face, 14 days to respond to subpoena to produce documents is generally considered reasonable, but reasonableness may vary depending on the circumstances of each case).

### IV. CONCLUSION
For the reasons given above, based on the parties' arguments in their memoranda and during oral argument, **IT IS ORDERED** that:

The Motion to Quash the Deposition Subpoena and Subpoena to Produce Documents issued to Christina Peck (R. Doc. 220) is **GRANTED;**

The Motion to Quash the Deposition Subpoenas and Subpoenas to Produce Documents issued to Judges Suzan Ponder, Laura Prosser and Alex Wall (R. Doc. 222) is **GRANTED;**

The Motion to Quash the Deposition Subpoenas and Subpoenas to Produce Documents issued to John A. Alario, Jr., President of the Louisiana Senate; Charles Kleckley, Speaker of the Louisiana House of Representatives; Dr. William Blair, Demographer of the Louisiana Legislature; and Alfred Speer, Clerk of the Louisiana House of Representatives, (R. Doc. 223) is **DENIED in part** and **GRANTED in part.** Discovery regarding the categories of documents referenced above is permitted and must be produced by **May 7, 2014** but denied as to materials that remain shielded by privilege as well as the subpoenaed depositions.

Defendant State of Louisiana's Motion to Quash Nonparty Deposition Subpoenas and Subpoenas to Produce Documents (R. Doc. 227) is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** as it relates to the subpoenas issued to Christina Peck and Judges Suzan Ponder, Laura Prosser and Alex Wall, which are quashed. With respect to the subpoenas issued to John A. Alario, Charles Kleckley, Dr. William Blair and Alfred Speer, the Motion is **DENIED** regarding the production of documents falling within the categories of documents referenced above but **GRANTED** as to materials that remain shielded by privilege as well as the subpoenaed depositions.

**\*14** Unless specifically set forth in this Order, all other deadlines set forth in the Scheduling Order (R. Doc. 202) or in the April 14, 2014 Minute Entry (R. Doc. 241) remain in effect. Signed in Baton Rouge, Louisiana, on April 23, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1652791

---

    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2786421
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

David CHAMBERLAIN, Plaintiff
v.
FARMINGTON SAVINGS BANK, Defendant.

Civil No. 3:06CV01437 (CFD).
|
Sept. 25, 2007.

**Attorneys and Law Firms**

Mary E. Kelly, Livingston, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT, for Plaintiff.

James F. Shea, Jackson Lewis, Sheldon D. Myers, Kainen, Escalera & McHale, PC, Hartford, CT, for Defendant.

*RULING ON PLAINTIFF'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER*

THOMAS P. SMITH, United States Magistrate Judge.

**\*1** Plaintiff, David Chamberlain, moves to quash the subpoenas duces tecum served upon his former employers by the defendant, Farmington Savings Bank, and for a protective order pursuant to Federal Rules of Civil Procedure 45 and 26(c). (Dkts.26, 27). For the reasons stated herein, the plaintiff's motions are **GRANTED.**

**I. BACKGROUND**

This case arises out of the plaintiff's claim that he was discriminated against and subsequently terminated by the defendant because of his age and disability and in retaliation for his exercise of rights under the Family Medical Leave Act, 29 U.S.C. §§ 2612 *et seq.* (Complaint ¶ 40). The defendant maintains that it terminated the plaintiff for poor performance. (D's Mem. Opp. at 2).

On July 27, 2007, the defendant issued notices of intent to serve subpoenas duces tecum to the plaintiff's former employers, New Alliance Bank and Citizen's Bank,

seeking the plaintiff's prior employment records. (Dkts.26, 27; Exh. A). Specifically, the defendant requested "[a]ny and all records relating to [the plaintiff], ... including but not limited to his: personnel file; any investigative file relating to complaints he lodged or complaints lodged about him; resume; background check documents; and notes from any interviews with or investigations relating to [the plaintiff]." (*Id.,* Exh. A at 5). The plaintiff has moved to quash the subpoenas and for a protective order on the grounds that the defendant's requests are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and will subject the plaintiff to an unwarranted intrusion, annoyance, embarrassment and oppression. (P.'s Mem. at 1). In opposition, the defendant claims that the plaintiff's prior employment records are discoverable because they may contain information relevant to: (1) its after-acquired evidence defense; (2) the plaintiff's credibility as a witness; and (3) its defense that it terminated the plaintiff for performance reasons. (D.'s Mem. Opp. at 5).

**II. DISCUSSION**

**A. Plaintiff's Standing to Move to Quash the Subpoenas**

As an initial matter, the court must consider whether the plaintiff has standing to move to quash the subpoenas served on his former employers. Ordinarily, a party does not have standing to quash a subpoena served on a third party, unless the party has a personal right or privilege with respect to the requested documents. *See, e.g., Chemical Bank v. Dana,* 149 F.R.D. 11, 13 (D.Conn.1993); *see also* 9A, Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2459, at 41 (2d ed.1995). The plaintiff clearly has a personal right with respect to the information contained in his employment records. Additionally, the court notes that the plaintiff has standing to challenge the subpoenas on the basis of his having moved for a protective order pursuant to Rule 26. It is well-settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26. *See* Fed.R.Civ.P. 45 Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"); *see also* 9A Wright & Miller § 2459, at 42 (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34). The court, therefore, will consider the pending motions in view of the standards set forth in Rule 26.

Chamberlain v. Farmington Sav. Bank, Not Reported in F.Supp.2d (2007)

## B. Standard of Review

**\*2** Pursuant to Rule 26(b), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...." Fed.R.Civ.P. 26(b)(1). Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The term "relevant" should be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)).

Despite the broad scope of discovery, there are certain limitations. For instance, discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Fed.R.Civ.P. 26(b)(1). *Oppenheimer Fund, Inc.,* 437 U.S. at 351–52. The Federal Rules afford courts wide discretion in resolving discovery disputes, which should be exercised by "determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Yancey v. Hooten,* 180 F.R.D. 203, 207 (D.Conn.1998). The party resisting discovery bears the burden of showing why discovery should be denied. *Blakenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975).

## 1. After–Acquired Evidence

The defendant claims that the plaintiff's prior employment records may contain information relevant to an after-acquired evidence defense and are, therefore, discoverable. (D's Mem. Opp. at 5–6). Specifically, the defendant asserts that the plaintiff's records may contain evidence that the plaintiff misrepresented information on his employment application or during the course of his employment with the defendant concerning his previous employment and performance history, which would limit his claim for relief pursuant to this defense. (*Id.*). The plaintiff maintains that discovery for the purpose of uncovering evidence from which to establish an after-acquired evidence defense is improper and would subject the plaintiff to unnecessary embarrassment, annoyance and oppression. (P's Mem. at 4–6).

The after-acquired evidence defense, recognized by the Supreme Court in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879 (1995), provides that an employee's relief can be limited by evidence of wrong-doing discovered after his or her termination that would have provided a legitimate basis for such termination. *Id.* at 362. While recognizing this defense, the Court also cautioned against the potential for abuse of the discovery process by employers seeking to limit their liability through an after-acquired evidence defense, noting the ability of courts to curb such abuses through the Federal Rules of Civil Procedure. *Id.* at 363. The Court stated: "The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts ... to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses." *Id.* Several lower courts have relied on *McKennon* in holding that the after-acquired evidence defense cannot be used to pursue discovery in the absence of some basis for believing that after-acquired evidence of wrong-doing will be revealed. *See, e.g., Rivera v. Nibco, Inc.,* 364 F.3d 1057, 1071–72 (9th Cir.2004); *Maxwell v. Health Ctr. of Lake City Inc.,* No. 3:05–CV–1056–J–32MCR, 2006 WL 1627020 at \*5 (M.D. Fla. June 6, 2006); *Premer v. Corestaff Servs., L.P.,* 232 F.R.D. 692 (M.D.Fla .2005).

**\*3** Here, the defendant has not presented any evidence to suggest that the plaintiff may have misrepresented information to the defendant, which would have provided legitimate grounds for his termination. For example, the defendant has not pointed to any statements made by the plaintiff during his deposition or in response to interrogatories indicating that he may not have fully disclosed information to the defendant regarding his prior employment. *See Premer,* 232 F.R.D. at 693 (limited production from former employers appropriate to support after-acquired evidence defense in view of discrepancy between plaintiff's interrogatory responses and employment application); *Graham v. Casey's General Stores,* 206 F.R.D. 251, 255–56 (S.D.Ind.2002) (certain prior employment records discoverable in view of concession made by plaintiff as to prior criminal conviction in order to determine whether plaintiff was truthful about events surrounding the termination of her previous employment). Rather, the defendant seeks discovery of the plaintiff's records in order to search for information from which to establish such a defense. The court finds that the defendant cannot use the after-acquired evidence defense to conduct extensive discovery into the plaintiff's prior employment records on the basis of pure speculation. Under such circumstances, production of the plaintiff's records would constitute an unwarranted intrusion.

### 2. Credibility

The defendant also claims that information contained in the plaintiff's prior employment records is relevant to his credibility as a witness. The defendant maintains that the records are discoverable in order to determine whether the plaintiff has been truthful about his performance history and his reasons for leaving his former positions. (D's Mem. Opp. at 5). As above, the defendant has not alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation with regard to his previous employment to substantiate such a broad search of his employment records on this ground.

### 3. Performance History

Finally, the defendant claims that information as to the plaintiff's performance history is relevant to its defense that it terminated the plaintiff because of poor performance. (D's Mem. Opp. at 7). The defendant asserts that the plaintiff's records may reveal that he did not have the ability to perform similar duties in his former employment. (*Id.* at 8).

The defendant's argument is unavailing. The court finds that evidence of the plaintiff's performance history is neither relevant nor admissible for the purpose of showing that the plaintiff performed poorly in his position with the defendant. First, the plaintiff's performance history is not relevant to the issues involved in the current case; rather, at issue is the plaintiff's performance in his position with the defendant. Second, the defendant's request for production of documents relating to the plaintiff's performance history is not reasonably calculated to lead to the discovery of admissible evidence. The defendant seeks to discover evidence of the plaintiff's performance

history in order to show that he has a propensity for certain performance deficiencies. Such evidence is inadmissible under Federal Rule of Evidence 404(a), which provides that " [e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith...." Fed.R.Evid. 404(a); *see also, e.g., Zubulake v. UBS Wharburg LLC,* 382 F.Supp.2d 536, 540–41 (S.D.N.Y.2005). The plaintiff's performance history, therefore, does not provide a basis for the discovery sought here.

### III. CONCLUSION

**\*4** The court finds that the defendant's discovery requests are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and would subject the plaintiff to unwarranted intrusion. For the foregoing reasons, the plaintiff's motions to quash and for protective orders, (Dkts.26, 27), are **GRANTED.** This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. 636(b)(1)(A); Fed.R.Civ.P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. *See* 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2786421

---

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 1558210
Only the Westlaw citation is currently available.
United States District Court,
D. Kansas.

James STEWART, et al., Plaintiffs,
v.
MITCHELL TRANSPORT, et al., Defendants.

CIVIL ACTION NO. 01–2546–JWL.
|
July 11, 2002.

Motorist brought personal injury action against tractor-trailer's driver, operator, and insurer, asserting claims for alleged violations of Interstate Transportation Act, negligence, reckless conduct, and breach of insurer's duty to act in good faith. Defendants moved to quash subpoenas served by motorist on third parties, and one third party moved to quash subpoena, or, alternatively, for protective order. The District Court, David J. Waxse, United States Magistrate Judge, held that: (1) driver had standing to move to quash subpoenas issued to his former and current employers; (2) operator had standing to move to quash subpoenas issued to insurers; (3) use of terms "regarding" and "all information" made subpoenas facially overbroad; (4) driver was not entitled to protective order on grounds that subpoenas issued to his employers were simply attempts to annoy, harass, and embarrass him; (5) time period for disclosure of information from third-party insurers was properly limited to one-year period following accident; (6) subpoenas were overly broad to the extent that they commanded production of "information" and all documents and records "regarding" operator; and (7) subpoena could not be quashed on grounds that it required insurer to divulge information about driving records of 36 drivers who were not parties to action.

Ordered accordingly.

**MEMORANDUM AND ORDER**

DAVID J. WAXSE, Magistrate Judge.

**\*1** This matter is before the Court on the following Motions: (1) Renewed Motion to Quash Subpoenas and/or Motion for Protective Order filed by Defendants

Mitchell Transport, Inc., Larry G. Ramsey, and Insurance Corporation of Hannover (hereinafter referred to collectively as "Defendants") (doc. 43); (2) Motion to Quash, or in the Alternative, for Protective Order, filed by Associates Insurance Company (doc. 24); and (3) Motion to Quash Second Subpoena, or in the Alternative, for Protective Order, filed by Associates Insurance Company (doc. 51).

I. Nature of the Matter Before the Court

This is a personal injury action arising out of the collision between a pickup truck driven by Plaintiff James Stewart and a tractor-trailer driven by Defendant Larry Ramsey ("Ramsey"). According to Plaintiffs' Complaint, the tractor-trailer was operated by Defendant Mitchell Transport, Inc. ("Mitchell Transport") and insured by Defendant Insurance Corporation of Hannover ("Hannover"). Plaintiffs assert claims against Mitchell Transport and Ramsey for violations of the Interstate Transportation Act. Plaintiffs also assert claims against Mitchell Transport and Ramsey for negligence and reckless conduct. In addition, Plaintiffs assert a claim against Hannover for breach of the insurer's duty to act in good faith.

Plaintiffs have served six subpoenas[1] on various entities that are not parties to this action, including Associates Insurance Company ("AIC"). AIC is located in Texas, while the other entities served are located in Kentucky, Tennessee, and Wisconsin.

[1] In their reply brief, Defendants state that Plaintiffs later served a seventh subpoena on AXA Global Risks U.S. Insurance Company ("AXA subpoena"). *See* Ex. L, attached to doc. 52. The AXA subpoena was signed by Plaintiffs' counsel on May 15, 2002 and apparently served some time thereafter, which was at least more than eight days after Defendants' Renewed Motion to Quash was filed. There is no indication that counsel for the parties have ever conferred regarding the AXA subpoena, as required by D. Kan. Rule 37 .2. Because the document request contained in the AXA subpoena differs from the document requests contained in the other six subpoenas at issue, and because Defendants' counsel has failed to satisfy the duty to confer as to the AXA subpoena, the Court will decline to entertain Defendants' Motion to Quash as it applies to the AXA subpoena.

II. Defendants' Renewed Motion to Quash and/or Motion

for Protective Order (doc. 43)

### A. Defendants' Standing to Move to Quash the Subpoenas

Before the Court analyzes the merits of Defendants' objections to the subpoenas and their arguments in support of their Renewed Motion to Quash, the Court must first determine whether Defendants have standing to move to quash the subpoenas. These subpoenas were not served on Defendants but rather on various third parties. Generally speaking, a party to the lawsuit does not have standing to quash a subpoena served on a nonparty. *Johnson v. Gmeinder,* 191 F.R.D. 638, 640 n. 2 (D.Kan.2000); *Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620, 635 (D.Kan.1999). A motion to quash a subpoena "may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *Id.* (quoting *Smith v. Midland Brake,* Inc., 162 F.R.D. 683, 685 (D.Kan.1995)).

[1] Thus, for Defendants to bring this motion, each must have a personal right or privilege with respect to the subject matter of the documents requested in the subpoenas. The subpoenas directed at Ramsey's former employers (Boyd Brothers Transportation, Mayfield Printing, and General Tire and Rubber) and his present employer (Goodyear Tire and Rubber) seek "all records, documents or information ... regarding Larry G. Ramsey, including, but not limited to your complete personnel file, job application, job description and performance evaluations." Exs. A–D, attached to doc. 44.

**\*2** The Court finds that Ramsey clearly has a personal right with respect to the information contained in his personnel files, job applications, and performance evaluations. Thus, the Court holds that Ramsey has standing to move to quash the subpoenas served on his employers and to assert objections to the document requests contained therein. *See Beach v. City Olathe, Kansas,* No. 99–2210–GTV, 2001 WL 1098032, at *1 (D.Kan. Sept.17, 2001) (defendant "clearly has a 'personal right' in his personnel file and applications for employment that would give him standing to move to quash the subpoenas."). In contrast, the Court finds that neither Mitchell Transport nor Hannover has any personal right or privilege with respect to the personnel files and other employment-related records sought. The Court thus rules that neither Mitchell Transport nor Hannover has standing to move to quash the subpoenas served on Ramsey's employers.

[2] The subpoenas served on AIC and Sentry Select Insurance Company ("Sentry") request "all insurance applications, your complete underwriting file, and complete claims files regarding all collisions or incidents that trucks operated by Mitchell Transport or any driver employed by Mitchell Transport were involved in from July 1, 1997 through the present." Exs. E–F, attached to doc. 44. Mitchell Transport asserts that these documents contain proprietary information such as Mitchell Transport's client lists, routes of travel, and net worth. It also contends that these documents likely contain privileged communications and materials protected by the work product doctrine.

The Court finds that Mitchell Transport has a personal right with respect to these requested documents. Accordingly, the Court holds that Mitchell Transport has standing to move to quash the subpoenas served on AIC and Sentry. In contrast, Ramsey and Hannover have presented no information or argument that would lead the Court to believe that they too have any personal right in any of the information contained in the documents requested by these subpoenas. The Court therefore holds that neither Ramsey nor Hannover has standing to move to quash the subpoenas served on AIC and Sentry.

In light of the above, the Court will deny the Renewed Motion to Quash to the extent it is brought by Ramsey and Hannover to quash the subpoenas served on AIC and Sentry. The Court will also deny the Renewed Motion to Quash to the extent it is brought by Mitchell Transport and Hannover to quash the subpoenas served on Ramsey's employers, Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber.

### B. Ramsey and Mitchell Transport's Procedural Objections to the Subpoenas

[3] Ramsey and Mitchell Transport object to all of the subpoenas on procedural grounds, arguing that each of the entities upon which these subpoenas were served is outside the 100–mile geographical limitation provided for in Rule 45(b)(2). That provision allows a subpoena to be served "at any place within the district of the court by which it is issued, or at any place without the district *that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection* specified in the subpoena...." Fed.R.Civ.P. 45(b)(2) (emphasis added). Ramsey and Mitchell Transport contend that the subpoenas should be quashed pursuant to Rule 45(c)(3)(A), which states that the court from which a subpoena was issued shall quash the subpoena if it requires a third party "to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person."

Ramsey and Mitchell Transport argue that these subpoenas should be quashed because they require the subpoenaed parties, who are located in Kentucky, Tennessee, Texas, and Wisconsin, "to travel outside the 100 mile limit allowed by Rule 45 ." Doc. 44 at p. 4.

**\*3** The Court disagrees. The subpoenas do not require the attendance of any witnesses. They only require the production of documents.[2] The documents are required to be produced at Plaintiffs' counsel's law firm in Prairie Village, Kansas. In other words, the place of production is in Prairie Village, Kansas. The entities subpoenaed are merely required to mail the documents, or have them delivered, to Plaintiffs' counsel's office in Kansas. No representative is required *to travel* to Kansas. Furthermore, Rule 45(a)(2) expressly states that such document subpoenas *must* issue from the district in which the production is to take place. It provides:

> [2]    Rule 45 expressly provides that a subpoena may be issued to compel a nonparty to produce documents independent of any deposition, hearing, or trial. *See* Fed.R.Civ.P. 45(c)(2)(A) ("A person commanded to produce ... designated books, papers, documents or tangible things ... need not appear in person at the place of production ... unless commanded to appear for deposition, hearing or trial.") *See also* Fed.R.Civ.P. 45(a)(1) (setting forth procedure for issuance of subpoena for production of documents that is "separate from a subpoena commanding the attendance of a person").

> If separate from a subpoena commanding the attendance of a person, a subpoena for production or inspection *shall* issue from the court for the district in which the production or inspection is to be made.
> Fed.R.Civ.P. 45(a)(2) (emphasis added).

In light of the above, the Court holds that the subpoenas were properly issued from this district, where the production was to take place, and that the subpoenas do not require any of the entities served to travel in violation of the Rule's 100–mile limitation. The Court thus declines to quash the subpoenas based on this procedural objection.

### C. Ramsey's Substantive Objections to the Subpoenas Served on His Employers

Ramsey objects to the subpoenas directed to three former employers and to his current employer. The subpoenas request:

> [A]ll records, documents or information in your possession regarding Larry G. Ramsey, including, but not limited to, your complete personnel file, job application, job description and performance evaluations.

Exs. A–D, attached to doc. 44.

Ramsey objects to the subpoenas on the basis that the document request contained therein is overly broad and seeks irrelevant documents. He also objects on the basis that the subpoenas seek confidential documents, including some that contain confidential medical information about himself.

### 1. Overbreadth and irrelevance

Overbreadth and irrelevance are not contained within Rule 45's list of enumerated reasons for quashing a subpoena. It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b)[3] and 34. *See* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). *See also* 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 2459 at p. 42 (2d ed.) (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34). Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production. *See Phalp v. City of Overland Park, Kan.,* No. 00–2354–JAR, 2002 WL 1162449, at \* 3–4 (D.Kan. May 8, 2002) (applying general principles of overbreadth and irrelevance to subpoena duces tecum).

> [3]    Fed.R.Civ.P. 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

### a. Overbreadth

**\*4** [4] The Court will first turn to Ramsey's objection that the request is overly broad. A party objecting to a

discovery request on the grounds that the request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Etienne v. Wolverine Tube, Inc.,* 185 F.R.D. at 656; *Hilt v. SFC Inc.,* 170 F.R.D. 182, 186 (D.Kan.1997). Here, the subpoenas request "all records, documents or information in your possession *regarding* Larry G. Ramsey, including, but not limited to, your complete personnel file, job applications, job description and performance evaluations." Exs. A–D, attached to doc. 44 (emphasis added). The Court finds that the use of the term "regarding" makes this request overly broad on its face. *See Bradley v. Val–Mejias,* No. 00–2395–GTV, 2001 WL 1249339, *6 (D.Kan. Oct.9, 2001) (use of the term "pertaining to" rendered document request overly broad on its face); *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 197 (D.Kan.1996) (same). The use of such omnibus phrases as "regarding" or "pertaining to" requires the answering party "to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Id.*

The Court also finds the request overly broad on its face to the extent it commands the employers to produce "all ... information" regarding Ramsey. Rule 45 expressly provides that a subpoena may require the production of "designated books, documents or tangible things" in the possession, custody, or control of the subpoenaed individual or entity. Fed.R.Civ.P. 45(a)(1). There is no provision for a subpoena that seeks "information."

The Court does not, however, find that the request is overly broad on its face to the extent it asks the employer to produce discrete documents, *i.e.,* Ramsey's personnel file, job application, job description, and performance evaluations. Moreover, the Court does not find that Ramsey has satisfied his burden to show how the request for these particular documents is overly broad. The Court will therefore overrule his overbreadth objection to the extent the subpoena requests each employer to produce Ramsey's personnel file, job application, job description, and performance evaluations.

#### b. Irrelevance

[5] The Court will now turn to Ramsey's relevance objections to the requested personnel files, job applications, job descriptions, and performance evaluations. Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001) (citations omitted). A request for discovery should be allowed "unless it is clear that the information sought can

have no possible bearing" on the claim or defense of a party. *Id.* (citations omitted). When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. *Scott v. Leavenworth Unified School Dist. No. 453,* 190 F.R.D. 583, 585 (D.Kan.1999). Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request. *Steil v. Humana, Inc.,* 197 F.R.D. 442, 445 (D.Kan.2000).

*5 Applying these principles, the Court finds that the request for Ramsey's personnel file, job application, job description, and performance evaluations appears relevant on its face, and Ramsey has failed to convince the Court otherwise. The Court is unable to find that there is "no possibility" that the documents requested could have a "possible bearing" on a claim or defense of the parties. Ramsey's safety record, work history and performance issues—while employed as a truck driver or even in some other capacity—may reveal that Ramsey has a history of other accidents or safety violations. The Court therefore overrules Ramsey's relevancy objections to these subpoenas to the extent they request his personnel files, job applications, job descriptions, and performance evaluations.

#### 2. Confidentiality
Ramsey also objects to the subpoenas on the grounds they seek private and confidential information about himself, including some medical information that he contends should remain private. Ramsey does not elaborate on the confidential nature of the requested documents.

[6] Ramsey fails to recognize that a party may not rely on the confidential nature of documents as a basis for refusing to produce them, because "[c]onfidentiality does not equate to privilege." *Hill v. Dillard's, Inc.,* No. 00–2523–JWL, 2001 WL 1718367, *4 (D.Kan. Oct.9, 2001) (quoting *Folsom v. Heartland Bank,* No. 98–2308–GTV, 1999 WL 322691, *2 (May 14, 1999)). *See also Federal Open Mkt. Comm. v. Merrill,* 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979)) ("there is no absolute privilege for ... confidential information"). Thus, the Court will overrule Ramsey's confidentiality objection to the subpoenas.

[7] Apparently recognizing the fact that the Court might

overrule his confidentiality objection, Ramsey asks the Court, in the event it enforces the subpoenas, to enter a protective order to prevent the disclosure of the documents to third parties. Although documents are not shielded from discovery on the basis of confidentiality, it is true that a party may request the court to enter a protective order pursuant to Fed.R.Civ.P. 26(c) as a means to protect the confidential information from disclosure to individuals or entities not connected with the litigation. *Hill,* 2001 WL 1718367, at \*4. The decision whether to enter a protective order is within the court's discretion. *See Thomas v. Int'l Bus. Mach.,* 48 F.3d 478, 482 (10th Cir.1995). Rule 26(c) nevertheless requires that the party seeking the protective order establish "good cause" for the protective order. *Johnson v. Gmeinder,* 191 F.R.D. 638, 642 (D.Kan.2000). In determining whether good cause exists for the court to issue a protective order that prohibits partial or complete dissemination of documents or other materials obtained in discovery to non-parties, "the initial inquiry is whether the moving party has shown that disclosure of the information will result in a 'clearly defined and very serious injury.' " *Zapata v. IBP, Inc.,* 160 F.R.D. 625, 627 (D.Kan.1995) (quoting *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471, 480 (S.D.N.Y.1982)) (internal quotations omitted).

\*6 Although Ramsey has asked the Court to enter such a protective order, he has failed to show how disclosure of the alleged confidential and medical information to any non-parties would result in a "clearly defined" or "serious injury." Without such information, the Court is not in a position to determine whether the requisite good cause exists to issue a protective order prohibiting dissemination of Ramsey's personnel files and other requested job-related documents. The Court does, however, recognize that at least the potential for injury exists if the alleged confidential documents, and, in particular, documents containing medical information about Ramsey, are disclosed to non-parties. In the interest of justice, the Court will direct the parties to submit an agreed protective order prohibiting disclosure of the alleged confidential documents/information to non-parties and prohibiting the use of these documents/information outside of this lawsuit. *See Hill,* 2001 WL 1718367, at \*5 (directing parties to attempt to draft a protective order to prevent disclosure of requested documents to non-parties).

Within ten (10) days of the date of filing of this Order, counsel for the parties shall confer and attempt to agree upon such a protective order. If the parties are unable to reach an agreement, the Court will allow Ramsey five (5) days thereafter to move for a protective order prohibiting the disclosure of these documents to non-parties and prohibiting the use of these documents outside of this

lawsuit. Plaintiffs shall file their response to the motion for protective order within five (5) days after service of the motion.

### 3. Annoyance, harassment, and embarrassment

[8] Ramsey also urges the Court to quash the subpoenas on the basis that "Plaintiffs [through the subpoenas] are simply attempting to annoy, harass and embarrass" him. Doc. 44 at 2. Rule 45 does not provide for the quashing of a subpoena on this basis. Rule 26(c), however, does allow a court to enter a protective order to protect a party from annoyance, embarrassment or oppression. The Court will therefore treat Ramsey's request as a Rule 26(c) motion for protective order to prevent the discovery from being had.

As noted above, the moving party has the burden to show good cause for granting a protective order. *Johnson v. Gmeinder,* 191 F.R.D. 638, 642 (D.Kan.2000). To establish good cause, that party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Ramsey has made nothing more than conclusory statements that Plaintiffs seek to annoy, harass, and embarrass him through these subpoenas. These conclusory statements are insufficient to satisfy Ramsey's Rule 26(c) burden. The Court therefore declines to enter a protective order on this basis.

### B. Mitchell Transport's Substantive Objections to the Subpoenas Served on AIC and Sentry

\*7 The subpoenas served on AIC and Sentry command them to produce the following:

> [A]ny and all information, documents or records in your possession regarding Mitchell Transport, Inc., including but not limited to all insurance applications, your complete underwriting file, and complete claims files regarding all collisions or incidents that trucks operated by Mitchell Transport or any driver employed by Mitchell Transport were involved in from July 1, 1997 through the present.

Exs. E–F, attached to doc. 44.

Apparently, Mitchell Transport applied for, or obtained, liability insurance from these entities at one time. Mitchell Transport objects to the document request contained in the subpoenas on the grounds that it is overly broad and does not seek relevant information. It also objects on the basis that "the information contained in the insurance applications and underwriting files is proprietary in nature in that it contains information such as client lists, routes of travel, net worth, etc." Doc. 44 at p. 3. Finally, it asserts that any underwriting or claims files produced "will likely contain" privileged information. Doc. 52 at 5.

### 1. Overbreadth and irrelevance

[9] Mitchell Transport argues that the request is overly broad in its scope and time frame (July 1, 1997[4] to the present) and that any records relating to any other accidents or claims involving Mitchell Transport drivers have no bearing on the issue in this case, *i.e.,* whether *Ramsey* negligently caused the accident involving Plaintiff James Stewart. Plaintiffs do not directly respond to these overbreadth and relevance arguments, and instead assert that irrelevance and overbreadth are not proper grounds for quashing a subpoena.

---

[4]    The collision in this case occurred on July 1, 1997.

---

As discussed above, a court may quash a subpoena duces tecum that is overly broad or that seeks irrelevant documents. The Court will thus examine the merits of Mitchell Transport's objections. The Court finds the request to be relevant on its face and can easily conceive how the requested documents might reveal information about other accidents and safety violations that would be relevant to Plaintiffs' punitive damages claims. At the same time, however, the Court finds the time period covered to be overly broad. The Court will therefore limit the subpoena to the time frame July 1, 1997 through June 30, 1998, which is the one-year period following the collision in this case.

[10] In addition, for the same reasons discussed above in Part II.C.1.a, the Court finds the request to be overly broad to the extent the subpoenas command AIC and Sentry to produce (1) "information," and (2) all documents and records "regarding" Mitchell Transport. The Court therefore quashes the subpoenas served on AIC and Sentry to the extent they request this information and these documents.

### 2. Proprietary nature of the documents

[11] The Court will next address Defendants' objection that the subpoenaed documents contain "proprietary information" such as "client lists, routes of travel, net worth, etc." *See* Doc. 44 at p. 3. Defendants contend that this proprietary information falls within the scope of Rule 45(c)(3)(B)(i), which requires the Court to quash a subpoena that will result in "disclosure of a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. 45(c)(3)(B)(i).

**\*8** The Federal Rules of Civil Procedure do not define the term "trade secret" or "confidential research, development, or commercial information." Case law, however, has defined these terms to mean "information, which, if disclosed would cause substantial economic harm to the competitive entity from whom the information was obtained." *In re S3 LTD.,* 242 B.R. 872, 876 (Bankr.E.D.Va.1999) (quoting *Diamond State Ins. Co. v. Rebel Oil Co.,* 157 F.R.D. 691, 697 (D.Nev.1994)).

The party moving to quash a subpoena under Rule 45(c)(3)(B)(i) has the burden to establish that the information sought is confidential and that its disclosure will work a clearly defined and serious injury to the moving party. *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1025 (Fed.Cir.1986); *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., Inc.,* 160 F.R.D. 70, 72 (E.D.Pa.1995). The claim "must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim." *Diamond State Ins.,* 157 F.R.D. at 697–98.

Mitchell Transport has not satisfied this burden. It has failed to show that any specific or serious injury would result from the disclosure of this alleged "proprietary" information. In addition, it has failed to describe the documents with sufficient particularity so as to enable Plaintiffs to contest its claim. The Court will therefore decline to grant the motion to quash under Rule 45(c)(3)(B)(i). Mitchell Transport asks the Court—in the event it denies the motion to quash—to enter a protective order preventing disclosure of this alleged proprietary information to non-parties and prohibiting the use of these documents outside of this lawsuit. For the same reason discussed above with respect to Ramsey's request for a protective order (*see* Part II.C.2, *supra* ), the Court will direct counsel for the parties to work together with AIC and Sentry to submit an agreed protective order guarding the confidentiality of the alleged proprietary documents/information.

### 3. Claim of privilege

[12] Finally, Mitchell Transport alleges that the requested underwriting and claims files "will likely contain information which is protected by the attorney/client privilege, work product doctrine and/or insurer/insured privilege." Doc. 52 at 5. Mitchell Transport seeks to quash the subpoenas pursuant to Rule 45(c)(3)(A)(iii), which requires a court to quash a subpoena that will result in "disclosure of privileged or other protected matter [where] no exception or waiver applies."

This Court recently summarized the rules regarding subpoenas and privilege as follows:

Parties objecting to [a subpoena] on the basis of ... privilege bear the burden of establishing that it applies. To carry the burden, they must describe in detail the documents or information to be protected[5] and provide precise reasons for the objection to discovery. A blanket claim as to the applicability of a privilege does not satisfy the burden of proof.

[5]    Rule 45(d)(2) expressly provides that "when information subject to a subpoena is withheld on a claim that such information is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim."

**\*9** *Phalp v. City Of Overland Park, Kan.,* No. 00–2354–JAR, 2002 WL 1162449, at \* 2 (D.Kan. May 8, 2002) (citations and internal quotations omitted).

Mitchell Transport has failed to satisfy these requirements with respect to its privilege and work product objections. The Court therefore does not possess sufficient information to enable it to determine whether each element of the asserted privilege/protection has been satisfied. Given Mitchell Transport's failure to provide the required information, the Court could deny the motion to quash to the extent it is based on Mitchell Transport's assertion of privilege and work product protection. The Court, however, will decline to do so at this time. Instead, the Court will grant the motion to quash as to the alleged privileged/protected documents, and AIC and Sentry shall not be required to produce, at least at this time, the requested documents that Mitchell Transport contends are privileged/protected. Notwithstanding the above,

however, the Court will direct Mitchell Transport to provide to Plaintiffs a privilege log containing "a detailed description of the materials in dispute and specific and precise reasons for its claim of protection from disclosure." *See id.* (citation omitted) (requiring party moving to quash on privilege grounds to provide privilege log). The log should, at a minimum, include the following for each document that Mitchell Transport contends is privileged or protected by the work product doctrine:

1. A description of the document (i.e., correspondence, memorandum, etc.);

2. Date prepared or date notations made;

3. Date of document (if different from # 2);

4. Who prepared the document or made notations on the document;

5. For whom the document was prepared and to whom it was directed;

6. Purpose of preparing the document or making the notations;

7. Number of pages of each document; and

8. Basis for withholding discovery.

*See id* (setting forth minimum requirements for privilege log).

Mitchell Transport shall provide this privilege log to Plaintiffs within ten (10) days from the date of filing of this Memorandum and Order.[6] Plaintiffs may then request production of any document for which the claim of privilege/protection appears inadequate or waived, and, if Mitchell Transport objects as provided for under Rule 45(c)(2)(B), Plaintiffs may file a motion to compel pursuant to that same rule.

[6]    In Part III.B.1, below, the Court grants in part AIC's motion to quash the second subpoena served on it. The Court recognizes that its rulings with respect to AIC's motion to quash may render Mitchell Transport's privilege concerns moot.

### III. AIC's Motions to Quash, or in the Alternative, for Protective Order (doc. 24 and 51)

#### A. AIC's Motion to Quash First Subpoena, or in the Alternative, for Protective Order (doc. 24)

Plaintiffs have served, or have attempted to serve, two subpoenas on AIC. AIC moves to quash the first subpoena, arguing that it was not properly served on AIC. Although Plaintiffs do not concede that the first subpoena was improperly served, they do state in their response that they have re-served the subpoena on AIC. By serving the second subpoena, Plaintiffs effectively withdrew the first subpoena, thereby rendering moot the issues raised in this first motion to quash.

#### B. AIC's Motion to Quash Second Subpoena, or in the Alternative, for Protective Order (doc. 51)

**\*10** AIC moves to quash the second subpoena on numerous grounds. In the event the Court denies the motion to quash, AIC requests that the Court enter a protective order to guard the confidentiality of any documents AIC produces pursuant to this subpoena.

#### 1. Irrelevance

AIC raises much the same argument as Mitchell Transport regarding the lack of relevance of the subpoenaed documents. For the same reasons discussed above in Part II.B.1, the Court will limit the second subpoena to the time period July 1, 1997 to June 30, 1998 and will quash the second subpoena to the extent it commands AIC to produce documents outside of that time frame.

The Court also notes that its ruling above with respect to the overly broad nature of the subpoena (*see* Part II.C.1.a, *supra),* applies equally to AIC. The Court thus grants AIC's motion to quash to the extent the second subpoena commands AIC to produce (1) "information," and (2) all documents and records "regarding" Mitchell Transport.

#### 2. Privacy rights of other drivers

[13] AIC also moves to quash the second subpoena on the basis that the subpoena requires AIC to divulge information about the driving records of thirty-six drivers who are not parties to this action. AIC asserts that disclosure of this information would violate Tennessee and federal law protecting against the disclosure of such information. *See* Tenn.Code Ann. § 55–25–107; 18 U.S.C. § 2721. As Plaintiffs correctly point out, however, those laws allow the disclosure of such information "[f]or use in connection with any civil ... proceeding." *See* Tenn.Code Ann. § 55–25–107; 18 U.S.C. § 2721.

Accordingly, the Court will decline to quash the second subpoena based on AIC's privacy objections. The Court

will, however, grant AIC's motion for protective order to guard against disclosure of these documents to non-parties and to prohibit use of these documents outside of this litigation. Counsel for AIC shall work together with counsel for the parties to agree to a protective order prohibiting the disclosure of these documents to non-parties and prohibiting the use of these documents outside of this lawsuit. In the event an agreement cannot be reached, AIC shall, within ten (10) days from the date of filing of this Order, submit to the Court a proposed protective order for the Court's review.

---

[7]    The Court recognizes that ten drivers whose records are covered by the second subpoena were not even hired by Mitchell Transport until 2002. Given the Court's ruling as to the relevant time period of the second subpoena, those drivers' records need not be produced.

#### 3. Proprietary and trade secret information

AIC objects to producing certain documents that "contain numbers, dollars and codes used by AIC in calculating premiums" (doc. 51 at p. 2) on the basis that they contain proprietary and trade secret information. Plaintiffs respond that they are not interested in these documents. The Court will therefore grant the motion to quash to the extent it commands AIC to produce documents containing such information.

AIC also objects to producing a "Fleet Safety Evaluation" on the basis that it too contains proprietary and trade secret information. AIC states that the Fleet Safety Evaluation was conducted in September 2001. Because the Court has already ruled that the only relevant time period is July 1, 1997 to June 30, 1998, AIC is not required to produce the Fleet Safety Evaluation and the Court need not address AIC's trade secret argument regarding the Evaluation.

#### 4. Claim of privilege as to AIC's claims files

**\*11** AIC states that it has already provided Plaintiffs with the claims file relating to Plaintiff James Stewart's accident. AIC objects to producing privileged documents from any other claims files, because those files all relate to other accidents. According to AIC, those accidents occurred after September 2001. Because these other claims files fall outside the relevant time period, AIC is not required to produce them, and the Court need not address AIC's privilege objection.

IT IS THEREFORE ORDERED that Defendants'

Renewed Motion to Quash (doc. 43–1) is denied to the extent it is brought by Defendants Larry G. Ramsey and Insurance Corporation of Hannover to quash the subpoenas served on Associates Insurance Company and Sentry Select Insurance Company.

IT IS FURTHER ORDERED that Defendants' Renewed Motion to Quash (doc. 43–1) is denied to the extent it is brought by Defendants Mitchell Transport, Inc. and Insurance Corporation of Hannover to quash the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber.

IT IS FURTHER ORDERED that the Court declines to entertain Defendants' Renewed Motion to Quash (doc. 43–1) to the extent it seeks to quash the subpoena served on AXA Global Risks U.S. Insurance Company.

IT IS FURTHER ORDERED that Defendants' Renewed Motion to Quash (doc. 43–1) is granted to the extent it is brought by Defendant Larry G. Ramsey to quash that portion of the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber which commands them to produce "all records, documents or information in [their] possession regarding Larry G. Ramsey." The Renewed Motion to Quash (doc. 43–1) is denied in all other respects as it applies to the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber.

IT IS FURTHER ORDERED that the Motion for Protective Order (doc. 43–2) brought by Larry G. Ramsey to protect the confidentiality of documents subpoenaed from Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber is denied. However, within ten (10) days of the date of filing of this Order, counsel for the parties shall confer and attempt to agree upon a protective order guarding the confidentiality of any private or medical information about Ramsey contained in any documents subpoenaed from Boyd Brothers Transportation, Mayfield Printing, General Tire and Rubber, and Goodyear Tire and Rubber. If the parties are unable to reach an agreement, the Court will allow Ramsey five (5) days thereafter to move for a protective order protecting the confidentiality of the documents/information. Plaintiffs shall respond to the motion for protective order within five (5) days after service of the motion. If neither an agreed-upon protective order nor a motion for protective order is filed within the time period specified, production of the documents requested in the subpoenas served on Boyd Brothers Transportation, Mayfield Printing, General Tire and

Rubber, and Goodyear Tire and Rubber. shall proceed without the protection of any such order.

**\*12** IT IS FURTHER ORDERED that Defendants' Renewed Motion to Quash (doc. 43–1) is granted in part and denied in part, as set forth herein, to the extent it is brought by Defendant Mitchell Transport, Inc. to quash the subpoenas served on Associates Insurance Company and Sentry Select Insurance Company.

IT IS FURTHER ORDERED that Mitchell Transport, Inc. shall, within ten (10) days from the date of filing of this Order, serve on Plaintiffs a privilege log as set forth herein. Plaintiffs may then request production of any document for which the claim of privilege/protection appears inadequate or waived, and, if Mitchell Transport, Inc. objects as provided for in Rule 45(c)(2)(B), Plaintiffs may file a motion to compel pursuant to that same rule.

IT IS FURTHER ORDERED that the Motion for Protective Order (doc. 43–2) brought by Mitchell Transport, Inc. to protect the confidentiality of alleged proprietary information contained in the documents subpoenaed from Associates Insurance Company and Sentry Select Insurance Company is denied. However, within ten (10) days of the date of filing of this Order, counsel for the parties, in conjunction with Associates Insurance Company and Sentry Select Insurance Company, shall confer and attempt to agree upon such a protective order. If an agreement is not reached, the Court will allow Mitchell Transport five (5) days thereafter to move for a protective order protecting the confidentiality of the alleged proprietary documents/information. Plaintiffs shall respond to the motion for protective order within five (5) days after service of the motion.

IT IS FURTHER ORDERED that Associates Insurance Company's Motion to Quash Subpoena, or in the Alternative, for Protective Order (doc. 24) is denied as moot.

IT IS FURTHER ORDERED that Associates Insurance Company's Motion to Quash Second Subpoena (doc. 51–1) is granted in part and denied in part as set forth herein.

IT IS FURTHER ORDERED that Associates Insurance Company's Motion for Protective Order (doc. 51–2) is granted as to the records of those drivers that Associates Insurance Company is required to produce pursuant to this Order. Counsel for Associates Insurance Company shall work together with counsel for the parties to agree to a protective order protecting the confidentiality of these documents. In the event an agreement cannot be reached, Associates Insurance Company shall, within ten (10) days

Stewart v. Mitchell Transport. Not Reported in F.Supp.2d (2002)

from the date of filing of this Order, submit to the Court a proposed protective order for the Court's review.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 1558210

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works

2011 WL 4591088
Only the Westlaw citation is currently available.
United States District Court,
M.D. Louisiana.

John SMITH, on behalf of Himself and a Class of
those Similarly Situated
v.
SERVICEMASTER HOLDING CORP., et al.

Civil Action No. 10–444–BAJ–SCR.
|
Sept. 30, 2011.

**Attorneys and Law Firms**

J. Burton Leblanc, IV, Baron & Budd, P.C., Jo Ann Lea,
Baton Rouge, LA, Denyse F. Clancy, Baron & Budd,
Dallas, TX, Lori E. Andrus, Andrus Anderson LLP, San
Francisco, CA, for Plaintiffs.

Rene' E. Thorne, Jackson Lewis LLP, New Orleans, LA,
Amanda C. Sommerfield, Joan B. Tucker Fife, Winston
And Strawn LLP, San Francisco, CA, for Defendants.

*RULING ON MOTION TO COMPEL DISCOVERY*

STEPHEN C. RIEDLINGER, United States Magistrate
Judge.

*1 Before the court is Plaintiff's Motion to Compel filed
by plaintiff John Smith. Record document number 45.
The motion is opposed.[1]

[1]   Record document number 54. Plaintiff also filed a reply
memorandum. Record document number 59.

Plaintiff brought this representative action for violations
of the Fair Labor Standards Act ("FLSA") against
defendants ServiceMaster Holding Corp., ServiceMaster
Company, Inc., Terminix International Company, L.P.,
and Terminex International, Inc. Plaintiff alleged that he
worked as a termite technician in the defendants' Baton
Rouge, Louisiana branch from approximately May 2007
to December 2007. He claimed on behalf of himself, and
for all other persons employed by the defendants as a pest
or termite technicians throughout the United States at any

time within the nationwide FLSA period, that the
defendants violated the FLSA by engaging in a common
policy and practice of not compensating the technicians
for all the hours they worked and refusing to pay them
overtime wages.

Plaintiff filed this collective action for violations of the
FLSA under 29 U.S.C. § 216(b) in the Western District of
Tennessee on July 14, 2009. On April 8, 2010 William
Craig, a pest control technician, filed a notice of consent
to join in the collective action.[2] This case proceeded in the
Tennessee district court for approximately one year.
During this time a scheduling order was entered,[3]
discovery commenced focusing on collective action
certification issues, a stipulated protective order was
issued,[4] and this motion was filed by the plaintiff.

[2]   Record document number 44.

[3]   Record document number 31. This scheduling order
was later modified. Record document number 52.

[4]   Record document number 39.

Defendants then filed a Motion to Change Venue and
Transfer the Action to the Middle District of Louisiana
and a Motion to Stay consideration of the plaintiff's
Motion to Compel.[5] Both motions were granted and the
case was transferred to this court.[6] At the time of the
transfer this motion was still pending.

[5]   Record document numbers 60 and 62.

[6]   Record document numbers 66, 79, and 81.

After a careful review of the record in light of the
applicable law in the Fifth Circuit,[7] the proper course at
this time is to deny the pending motion without prejudice
to the plaintiff re-urging it or filing another motion later.

[7]   Since this case was filed in the Tennessee district court,
the parties cited and relied on Sixth Circuit decisions in
their memoranda.

Plaintiff's collective action is governed by § 216(b), which provides in part as follows:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

The Fifth Circuit has not established a standard for FLSA collective action certification, declining to choose between the two methods it set forth in *Mooney v. Aramco Services*[8]—the two-step *Lusardi v. Xerox Corp.*[9] method and the spurious class action method of *Sushan v. University of Colorado*.[10] Since *Mooney* the prevailing method used by district courts in the Fifth Circuit has been the *Lusardi* two-step method.[11] The *Lusardi* method is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed.R.Civ.P., and the collective action provided by the FLSA. The Fifth Circuit, in comparing § 216(b) of the FLSA to Rule 23(c), has stated that Rule 23 provides for "opt out" class actions, and the FLSA provision allows as class members only those who "opt in." These two types of actions are fundamentally different, mutually exclusive and irreconcilable. *Sandoz v. Cingular Wireless LLC.,* 553 F.3d 913, 916 (5th Cir.2008), *citing, La Chapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288–89 (5th Cir.1975).[12]

[8]     54 F.3d 1207 (5th Cir.1995).

[9]     118 F.R.D. 351 (D.N.J.1987).

[10]    132 F.R.D. 263 (D.Colo.1990); *Roussell v. Brinker International Incorporated,* 2011 WL 4067171 (5th Cir. Sept. 14, 2011).

[11]    *Lang v. DirecTV, Inc.,* 735 F.Supp.2d 421, 434–35 (E.D.La.2010); *Johnson v. Big Lots Stores, Inc.,* 561 F.Supp.2d 567, 569 (E.D.La.2008); *England v. New Century Financial Corp.,* 370 F.Supp.2d 504, 509 (M.D.La.2005).

[12]    *See also, West v. Lowes Home Centers, Inc.,* 2010 WL 5582941 (W.D.La. Dec. 16, 2010), *report and recommendation adopted by,* 2011 WL 126908 (W.D.La. Jan. 14, 2011).

**\*2** Plaintiffs in an FLSA collective action have the burden of establishing that they are similarly situated to the other employees. *England,* 370 F.Supp.2d at 507. Section 216(b) requires that the employees be similarly, not identically, situated. An FLSA collective action is appropriate when there is a demonstrated similarity among the individual situations, that is, some factual nexus which binds the named plaintiff and the other employees together as victims of a particular alleged policy or practice. *Id.,* at 508.

Under *Lusardi* the trial court approaches the "similarly situated" collective action requirement using a two-stage analysis: (1) the notice stage, and (2) the merits stage. In the notice stage the court determines whether the plaintiffs are similarly situated in order to give notice of the action to potential members of the collective action. This initial determination is usually based only on the pleadings and any affidavits which have been submitted. Because typically little if any discovery has taken place, this determination is usually made using a fairly lenient standard and usually results in conditional certification of a collective action.[13] If the district court conditionally certifies a collective action the potential members are given notice and the opportunity to opt-in. The case then proceeds as a collective action throughout discovery. *Mooney,* 54 F.3d at 1213–14; *Clarke v. Convergys Customer Mgt. Group,* 370 F.Supp.2d 601, 605–06 (S.D.Tex.2005); *England, supra.*

[13]    At the notice stage the courts appear to require nothing more than substantial allegations that the employees were victims of a single decision, policy or plan. While the standard at the notice stage is not particularly stringent, it is not automatic. *Mooney,* 54 F.3d at 1214, n.8; *Xavier v. Belfor USA Group, Inc.,* 585 F.Sup.2d 873, 878 (E.D.La.2008).

After the opt-in period ends the second stage takes place. Generally, the second-stage determination is precipitated by a motion for decertification by the defendant, usually filed after discovery is largely complete and the case is ready for trial. At this stage the court has much more information on which to base its decision and makes a factual determination as to whether there are similarly-situated employees who have opted in. *Id.; Sandoz,* 553 F.3d at 915, n.2. Several factors are considered at this stage: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and, (3) fairness and procedural considerations that would make certification improper. *England,* 370 F.Supp.2d at 509–10; *West, supra, citing, Mooney,* 54 F.3d at 1213, n.7.

If the court makes a factual finding that the plaintiff and the opt-in plaintiffs are similarly-situated employees the court allows the collective action to proceed to trial. *Mooney,* 54 F.3d at 1214; *Sandoz, supra; Kaluom v. Stolt Offshore, Inc.,* 474 F.Supp.2d 866, 871 (S.D.Tex.2007).[14] If the court finds they are not, the court decertifies the collective action, the opt-in employees are dismissed without prejudice, and the original named plaintiffs proceed to trial on their individual claims. *Id.*

14      *See also, Gandhi v. Dell, Inc.* 2009 WL 1940144 (W.D.Tex., July 2, 2009), *report and recommendation adopted* August 4, 2009.

In light of the above legal principles this case should proceed in accordance with the *Lusardi* two-step method for determining whether a collective action under § 216(b) is proper. It is apparent from the record that although the initial scheduling order entered in the Tennessee court allowed some time for discovery

focusing on collective action issues, the case was still at the initial or notice stage. Under *Lusardi* the court must decide "whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action."[15] At the notice stage the conditional certification decision is usually based only on the pleadings and any affidavits. Thus, under the more lenient standard which governs at the first stage of the *Lusardi* analysis, the present record and any discovery or other information that has been obtained thus far is adequate for the court to make the conditional certification determination, i.e. whether the named plaintiffs and other employees are similarly situated in order to give them notice of the action and the opportunity to opt in.

15      *Sandoz,* 553 F.3d at n.2.

**\*3** Therefore, it is unnecessary to resolve the merits of the plaintiff's motion at this time. The next step in this litigation is filing a motion for conditional certification of a collective action, based on the pleadings, any affidavits, any discovery obtained by the parties since the case was filed, and any other available information relevant to the certification issue.

Accordingly, the Plaintiff's Motion to Compel is denied, without prejudice to the plaintiff re-urging it or filing another motion after the court decides the motion for conditional certification of a collective action.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4591088

End of Document                                                                © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1622880
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Maria Orozco, et al., Plaintiffs,

v.

Anamia's Tex-Mex Inc., Defendant.

Civil Action No. 3:15-CV-2800-L-BK
|
Signed 02/10/2016

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

RENÉE HARRIS TOLIVER, UNITED STATES MAGISTRATE JUDGE

**\*1** Pursuant to the District Judge's *Standing Order of Reference, Doc. 8,* the undersigned now considers *Plaintiffs' Expedited Motion for Conditional Certification, Notice to Potential Plaintiffs, and Limited Expedited Discovery, Doc. 16.* For the foregoing reasons, Plaintiffs' motion should be **GRANTED IN PART.**

### I. BACKGROUND

Maria Orozco and Karina Martinez bring this suit under the Fair Labor Standards Act ("FLSA") against their former employer, Anamia's Tex–Mex, Inc. *Doc. 1 at 1–2.* Defendant operates restaurants in Coppell, Plano, South Lake, and Flower Mound, Texas. *Doc. 1 at 3.* Plaintiffs are former employees who worked as waitresses who received tips at Defendant's restaurants. *Doc. 1 at 3.* Plaintiff Orozco worked at Defendant's Plano location from approximately April 2012 to May 2015. *Doc. 25–1 at 1.* Plaintiff Martinez worked at Defendant's Coppell location from approximately September 2013 to May 2014, and at Defendant's Plano location from approximately May 2014 to March 19, 2015. *Doc. 25–2 at 1.*

The two Opt-in Plaintiffs, Gabriel Munoz and Elvin Izaguirre, are former waiters at Defendant's restaurants. *Doc. 25–3 at 1; Doc. 25–4 at 1.* Munoz worked at Defendant's Southlake location from approximately August 2005 to August 2008, at Defendant's Coppell location from approximately August 2008 to August 2011, at Defendant's Flower Mound location from approximately August 2011 to September 2011, and at Defendant's Plano location from approximately September 2011 to May 2014. *Doc. 25–3 at 1.* Izaguirre worked at Defendant's Plano location from the summer of 2013 to February 2014. *Doc. 25–4 at 1.*

Plaintiffs also seek to bring this action on behalf of other similarly-situated employees and former employees of Defendant, pursuant to 29 U.S.C. § 216(b) of the FLSA. *Doc. 1 at 2.* Plaintiffs now seek conditional certification of the class by this court. In support of conditional certification, Plaintiffs argue that Defendant forced Plaintiffs and other similarly situated employees to "deep clean" the restaurant, to surrender a portion of their tips to ineligible employees, and to pay for customer walk outs, otherwise known as "dine and dash." They further allege that Defendant failed to inform them and other similarly-situated employees of its intention to take the tip credit.[1] *Doc. 16 at 16–17.* Plaintiffs represent that they and opt-in Plaintiff, Gabriel Munoz, have worked at all four of Defendant's restaurant locations, and declare that violations of the FLSA occur at each one. *Doc. 16 at 17.*

[1]  Under 29 U.S.C. § 203(m), there is an exception to the $7.25 per hour minimum wage for tipped employees. Employers are permitted to pay such employees at a rate of $2.13 per hour, provided tips received by the employees make up the difference between the national minimum wage of $7.25 and $2.13 per hour. *Montano v. Montrose Rest. Assocs., Inc., 800 F.3d 186, 188 (5th Cir. 2015).* This is referred to as a tip credit. *Id.*

Plaintiffs request that the Court approve and disseminate notice to persons who were employed as waiters, waitresses, bartenders, and other employees receiving tips at Defendant's restaurant at any time from August 27, 2012, to the present. *Doc. 16 at 18.* Plaintiffs further request that all potential plaintiffs be given 90 days from the date the notices are mailed to "opt-in" to the collective action. *Doc. 16 at 18.*

**\*2** Defendant argues that Plaintiffs have not met the standards required to obtain conditional certification because they have not shown that persons exist that are both interested in this litigation and similarly situated as Plaintiffs. *Doc. 18 at 7, 12.* Specifically, Defendant asserts

that the affidavits submitted by Plaintiffs are conclusory, vague, unsupported, and fail to identify a single current or former employee that wishes to join this suit, other than themselves. *Doc. 18 at 13.* Further, Defendant alleges that Plaintiffs have failed to meet their burden of showing a common illegal pay policy or decision on a company-wide basis, considering the alleged unlawful activity is specific to one manager and one location. *Doc. 18 at 14–15.*

## II. APPLICABLE LAW

The FLSA provides that a suit may be instituted by "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover unpaid minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions. 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure in which no "employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Under the FLSA, courts have discretion to allow a party asserting claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). Although the Court of Appeals for the Fifth Circuit has not adopted a specific standard to be used in determining the propriety of class certification under the FLSA, this Court has utilized the prevailing two-step approach. *Aguilar v. Complete Landsculpture, Inc.,* No. 3:04–CV–0776, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004) (Fitzwater, J.); *see also Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 n.2 (5th Cir. 2008) (noting that collective actions are "typically" analyzed this way).

## III. PLAINTIFFS' EVIDENCE TO SUPPORT CONDITIONAL CERTIFICATION

Plaintiffs have submitted to the Court four affidavits in support of their motion, including the affidavits of the two opt-in plaintiffs. *Doc. 25–1; Doc. 25–2; Doc. 25–3; Doc. 25–4.* Plaintiffs and opt-in Plaintiffs submit nearly identical declarations in which Plaintiffs state they were waitresses or waiters at the Defendant's restaurant, and were tipped employees. *Doc. 25–1 at 1; Doc. 25–2 at 1; Doc. 25–3 at 1; Doc. 25–4 at 1.* Plaintiffs aver they were "consistently required to perform job duties outside [their] responsibilities as waiters/waitresses and were not

properly paid for such time." *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.*

Plaintiffs aver that they frequently were required to stay up to two additional hours to "deep clean[ ] the kitchen, walls, and scrub[ ] restaurant tables/floors and chairs and clean[ ] mold out of refrigerators" and "clean walls at the restaurant with ... foam cleaner, sweep, and take out the garbage." *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.* They assert that these tasks were normally performed by "bus boys or a cleaning crew that is typically paid at least minimum wage or better." *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.* Plaintiffs performed these tasks at the rate of $2.13 an hour or, on occasion, without compensation. *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.*

Further, Plaintiffs state they are required to contribute 4% of their tips for the night to a tip pool from which "bartenders and expediters received 1% each ... while bus boys received 2%." *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.* The expediters work in the kitchen, do not interact with customers, and, thus, are not regularly tipped. *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.* Additionally, "[m]anagement ... consistently threatened to terminate employees who refused to pay for 'dine and dash' meals, breakage, or register shortages." *Doc. 25–1 at 2; Doc. 25–2 at 2; Doc. 25–3 at 2; Doc. 25–4 at 2.* Plaintiffs also declare they were never informed of the "tip credit," and that Defendant has never had a sign concerning minimum wage rights conspicuously displayed. *Doc. 25–1 at 3; Doc. 25–2 at 3; Doc. 25–3 at 3; Doc. 25–4 at 3.* Lastly, Plaintiffs were required to work during their paid breaks. *Doc. 25–1 at 3; Doc. 25–2 at 3; Doc. 25–3 at 3; Doc. 25–4 at 3.*

## IV. ANALYSIS

### a. There are other similarly-situated aggrieved individuals who desire to the join the lawsuit.

**\*3** At the first or "notice" stage, the evidentiary standard is lenient, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 n.8 (5th Cir. 1995). The court may only foreclose the plaintiffs' right to proceed collectively if the action relates to circumstances personal to each plaintiff rather than any generally applicable policy or practice. *Altiep v. Food Safety Net*

*Servs., Ltd.*, No. 3:14–CV–0642, 2014 WL 4081213, at *3 (N.D. Tex. Aug. 18, 2014) (Kinkeade, J.).

To demonstrate that conditional certification and notice to potential plaintiffs is proper, a plaintiff must, at a minimum, show that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit." *Jones v. JGC Dallas LLC*, No. 3:11–CV–2743, 2012 WL 6928101, at *3 (N.D. Tex. Nov. 29, 2012) (Ramirez, M.J.) (internal alterations omitted) (citing *Prater v. Commerce Equities Mgmt. Co.*, No. 07–CV–2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007)), *recommendation accepted by* 2013 WL 271665 (2013) (O'Connor, J.). To determine whether the requisite showing has been made, courts look to the similarity of job requirements and pay provisions, whether the putative class members appear to be possible victims of a common policy or plan, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. *Id.* Courts also consider whether potential plaintiffs were identified. *Songer v. Dillon Resources, Inc.*, 569 F.Supp.2d 703, 707 (N.D. Tex. 2008) (McBryde, J.). Once a plaintiff meets this lenient burden, the court conditionally certifies the class and facilitates notice to the potential plaintiffs. *Aguilar*, 2004 WL 2293842, at *1.

Defendant argues that the declarations consist of general, vague, conclusory, and hearsay comments made by unnamed family, friends, and coworkers. *Doc. 18 at 9–10.* Defendant further asserts that the declarations are not supported by specific facts, such as dates on which the FLSA violations occurred, who was behind the alleged violations, or the names of the family, friends, and other tipped employees who discussed their situation with Plaintiffs. *Doc. 18 at 11.* Defendant argues that, consequently, the Court should not consider the declarations. The Court does not find Defendant's argument availing.

Each named Plaintiff has provided a declaration that describes Defendant's alleged failure to comply with provisions under the FLSA. Declarations such as these "are ideal for analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.' " *Jones v. SuperMdia Inc.*, 281 F.R.D.

282, 289 (N.D. Tex. 2012) (Boyle, J.) (citing *Morales v. Thang Hung Corp.*, 2009 WL 2524601, at *3 (W.D. Tex Aug. 14, 2009)). Additionally, Plaintiffs have sufficiently demonstrated that the allegations in the declarations are based on personal knowledge. *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) ("Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience."). Moreover, at this stage, the Court typically relies only on the pleadings and affidavits, necessitating a more lenient standard. *Heeg v. Adams Harris*, Inc., 907 F.Supp.2d 856, 861 (S.D. Tex. 2012). The Court does not consider the underlying merits of the action. Id. Accordingly, the Court finds that Plaintiffs have successfully demonstrated the existence of other aggrieved individuals.

**\*4** Likewise, Plaintiffs have provided sufficient evidence that such aggrieved individuals are similarly situated. *JGC Dallas LLC*, 2012 WL 6928101, at *3 (citing *Mooney*, 54 F.3d at 121314.). Plaintiffs provided declarations from both class representatives and opt-in Plaintiffs attesting to similarities in job duties and pay practices for waiters and waitresses in Defendant's restaurants. *Doc. 25–1 at 1; Doc. 25–2 at 1; Doc. 25–3 at 1; Doc. 25–4 at 1.* All declarants aver they were (1) tipped employees, (2) required to exceed the scope of their job responsibilities, (3) required to participate in an impermissible tip pool, (4) required to pay for "dine and dash meals," (5) uninformed of the tip credit, and (5) required to work during paid breaks. *Doc. 25–1 at 1–3; Doc. 25–2 at 1–3; Doc. 25–3 at 1–3; Doc. 25–4 at 1–3.*

Defendant argues that Plaintiffs have not carried their burden of alleging sufficient facts establishing common illegal pay policies or decisions on a company-wide basis. *Doc. 18 at 14.* Specifically Defendant asserts that Plaintiffs claims stem from their experiences as servers only at the Plano location. *Doc. 18 at 14.* The Court agrees. Plaintiff Martinez and Opt-in Plaintiff Munoz have not produced competent evidence supporting their allegations that Defendant has a uniform tipping and wage payment policy at each of their restaurants. The declarations allege misconduct from three managers, all located at the Defendant's Plano location. *Doc. 25–1 at 1; Doc. 25–2 at 1; Doc. 25–3 at 1; Doc. 25–4 at 1.* Plaintiffs fail to show that they have personal knowledge of violations at Defendant's other locations. Specifically, Plaintiffs fail to identify the managers at Defendant's other locations or detail any violations at the other restaurant

locations. Plaintiffs' vague and conclusory assertion that they have "friends and family" that currently or formerly worked for Defendant who informed them of violations at Defendant's other locations is not persuasive. *Doc. 25–1 at 2–3; Doc. 25–2 at 2–3; Doc. 25–3 at 2–3; Doc. 25–4 at 2–3; See H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999) (finding conditional certification improper where the two plaintiffs submitted declarations "simply stat[ing] that they believe other workers were discriminated against in similar ways").

Accordingly, the Court finds that Plaintiffs have sufficiently established the existence of similarly situated potential plaintiffs and, thus, have met the requirements for conditional certification of the class inclusive only of waiters, waitresses, bartenders, and other tipped personnel employed at Defendant's Plano location at any time from August 27, 2012, to the present.

### b. Form and Method of Notice

Plaintiffs request that the Court approve and disseminate the notice attached to Plaintiffs' Brief in Support. *Doc. 16 at 17; Doc. 16–5; Doc. 16–6.* They argue that the notice is neutral as to the merits of the case and specifically states that the Court is not indicating whether any relief will be granted. *Doc. 16–5.* They further contend that the notice states that potential plaintiffs are free to choose whether to be represented by the undersigned attorney or an attorney of their own choosing. *Doc. 16–5 at 4.* Plaintiffs also request that all potential plaintiffs be given 90 days from the date of mailing to opt-in to the collective action. *Doc. 16 at 18.*

Defendant objects to Plaintiffs' proposed notice as biased, and suggests that the parties confer to develop notice language that is consistent with the circumstances of the case before notice is issued. *Doc. 18 at 25.* Defendant further argues that the notice should be limited to Defendant's Plano location, should not include bartenders, should not refer to causes of actions that are not pleaded in Plaintiffs' complaint, and should reflect the proper statute of limitations period. *Doc. 18 at 25–29.* Defendant does not object to the request that all potential plaintiffs be given 90 days from the date of mailing to opt-in to the collective action.

**\*5** Defendant's position that a conference of the parties regarding the notice is appropriate in this case is well taken. Accordingly, it is recommended that the parties

be ordered to confer in an attempt to agree on notice language that is consistent with the circumstances of the case. *See Aguayo v. Bassam Odeh, Inc.,* No. 3:13–CV–2951–B, 2014 WL 737314, at *6 (N.D. Tex. Feb. 26, 2014) (Boyle, J.) (ordering the parties to confer on the contents of the notice). Such notice should include bartenders, as the evidence indicates that they too are tipped employees. *See Aguilar,* 2004 WL 2293842, at *4 ("The court holds that no distinction should be made between foremen and laborers ... because they appear to be similarly situated in all relevant respects ... The positions need to be similar, but not identical."). However, the notice should exclude references to overtime and credit card percentages being withheld. And, as discussed *supra,* the notice should be limited to Defendant's Plano location. Lastly, all potential plaintiffs should be given 90 days from the date of mailing to opt-in to the collective action. If the parties are unable to agree on the contents of the notice, they should be required to submit a joint report to the Court detailing any unresolved issues and their respective positions. *See Aguayo,* 2014 WL 737314, at *6.

### c. Expedited Discovery

Plaintiffs request that the Court compel Defendant to provide the name, job titles, beginning and end dates of employment, address, telephone number, date of birth, Social Security number, and e-mail address of each person who worked as a waiter, waitress, bartender, and other tipped employees, and those who performed the same or similar job duties to Plaintiffs during the relevant time period—August 27, 2012 to present. *Doc. 16 at 18; Doc. 16–7.* Defendant objects that Plaintiffs broad requests violate the privacy rights of the proposed class members, and argues that Plaintiffs do not need all of the information requested to provide notice to putative class members. *Doc. 18 at 30.* In particular, Defendant objects to providing to Plaintiffs the telephone numbers, dates of birth, email addresses, and Social Security numbers of its current and former employees. *Doc. 18 at 30.* However, "discovery of this sort of information is a routine component of court-facilitated notice in FLSA collective actions." *Behnken v. Luminant Min. Co., LLC,* 997 F.Supp.2d 511, 525–26 (N.D. Tex. 2014) (Fitzwater, J.) (citing *Hoffmann–La Roche Inc.,* 493 U.S. at 170).

Thus, to improve the accuracy of notice and minimize delay, Plaintiffs' request for expedited discovery of the name, job titles, beginning and end dates of employment, and last known address of each person who worked as

a waiter, waitress, bartender, and other tipped employee, or who performed the same or similar job duties as those positions, during the period of August 2012 through the present, inclusive, and at Defendant's Plano location, should be granted. But Plaintiffs' request that Defendants also reveal the telephone numbers, dates of birth, Social Security numbers, and email addresses of potential class members should be denied, due to the "highly personal" nature of the information sought. *Aguilar,* 2004 WL 2293842, at *5 (declining request for telephone numbers); *Altiep,* 2014 WL 4081213, at *6 (declining request for phone numbers and email addresses); *Aguayo,* 2014 WL 737314, at *6 (limiting production to names, last known addresses, and dates of employment). However, Defendant should be required to provide Plaintiffs' counsel with the last four digits of the Social Security number of any potential class member whose notice is returned as undeliverable. *Aguayo,* 2014 WL 737314, at *6.

### V. CONCLUSION

For the above reasons, *Plaintiffs' Expedited Motion for Conditional Certification, Notice to Potential Plaintiffs, and Limited Expedited Discovery, Doc. 16,* should be **GRANTED IN PART**. The Court should conditionally certify this collective action. The prospective class should be limited to waiters, waitresses, bartenders, and other tipped personnel employed at Defendant's Plano location

at any time between August 27, 2012, and the present, inclusive.

**\*6** The parties should be ordered to confer and jointly submit a proposed notice to the Court in accordance with the specific recommendations herein. If after conferring the parties are unable to fully agree on the notice contents, they should be required to submit to the Court a joint report outlining the disputed issues and the parties' respective positions.

Lastly, Defendant should be ordered to produce to Plaintiffs' counsel the names, job titles, dates of employment, and address of every individual employed at Defendant's Plano location as a waiter, waitress, bartender, and other tipped employee, or who performed the same or similar duties as those positions, at any time between August 27, 2012, and the present, inclusively. Further Defendant should be ordered to provide to Plaintiffs' counsel the last four digits of the Social Security number of any potential class member whose notice is returned as undeliverable.

**SO RECOMMMENDED** on February 10, 2016.

**All Citations**

Slip Copy, 2016 WL 1622880

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Vogt v. Texas Instruments, Inc., Not Reported in F.Supp.2d (2006)
2006 WL 4660134

2006 WL 4660134
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

Wilford VOGT, James P. Gauthier,
Humberto Reyna, Jr., for themselves and
all others similarly situated, Plaintiffs,
v.
TEXAS INSTRUMENTS, INC., Defendant.

Civil Action No. 3:05-CV-2244-L.
|
Sept. 19, 2006.

**Attorneys and Law Firms**

David K. Watsky, Hal K. Gillespie, James Dennis
Sanford, Gillespie Rozen Watsky Motley & Jones, Dallas,
TX, for Plaintiffs.

Stephen E. Fox, Thomas M. Melsheimer, Elizabeth M.
Bedell, Robert L. Rickman, Fish & Richardson, Sarah
Donch, Theresa Ann Couch, Texas Instruments Inc.,
Dallas, TX, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

IRMA CARRILLO RAMIREZ, United States
Magistrate Judge.

**\*1** Pursuant to the District Court's *Order of Reference,*
filed May 15, 2006, the following pleadings were referred
to the undersigned United States Magistrate Judge for
hearing, if necessary, and for determination:

(1) Plaintiffs' *Motion to Facilitate § 216(b) Notice and
Brief in Support Thereof* ("Mot."), filed February 13,
2006;

(2) *Appendix to Motion to Facilitate § 216(b) Notice and
Brief in Support Thereof,* filed February 13, 2006;

(3) *Defendant's Response in Opposition to Plaintiffs'
Motion to Facilitate § 216(b) Notice and Brief in
Support* ("Resp."), filed April 7, 2006;

(4) *Defendant's Appendix in Support of its Response in
Opposition to Plaintiffs' Motion to Facilitate § 216(b)
Notice and Brief in Support,* filed April 7, 2006;

(5) *Plaintiffs' Reply to Defendant's Response in
Opposition to Plaintiffs' Motion to Facilitate § 216(b)
Notice* ("Reply"), filed May 9, 2006;

(6) *Supplemental Appendix in Support of Plaintiffs'
Reply to Defendant's Response in Opposition to
Motion to Facilitate § 216(b) Notice,* filed May 9,
2006;

(7) *Defendant's Motion to Strike and Objections to
New Evidence in Plaintiffs' Supplemental Appendix in
Support of Plaintiffs' Reply to Defendant's Response in
Opposition to Plaintiffs' Motion to Facilitate § 216(b)
Notice and Brief in Support* ("Mot. to Strike"), filed
May 23, 2006;

(8) *Defendant's Motion for Leave to File Surreply in
Opposition to Plaintiffs' Motion to Facilitate § 216(b)
Notice and Brief in Support,* filed May 23, 2006, and;

(9) *Plaintiffs' Response to Defendant's Motion to Strike
and Motion for Leave to File Surreply* ("Resp. to Mot.
to Strike"), filed June 9, 2006.

### I. BACKGROUND

This is a putative collective action suit by current and
former employees to recover unpaid overtime wages under
the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §
201 *et seq.* Plaintiffs work as Manufacturing Specialists
in specialized production rooms ("cleanrooms") in
Defendant's Dallas, Texas, manufacturing facility. (Mot.
at 3; Resp. at 1.) In addition to the Dallas facility,
Defendant also has manufacturing facilities in Sherman,
Texas; Stafford, Texas; and Tucson, Arizona. (Resp. at 2.)
The manufacturing facilities are sub-divided into several
production units ("fabs"). (Mot. at 2.) Plaintiffs allege
that Defendant requires the employees in its fabs to work
"compressed" shifts, which officially change every twelve
hours, but employees who work "compressed" shifts are
paid for eleven and one-half hours per day. (Mot. at
3-4.) Plaintiffs allege that prior to reporting to their
work stations at their scheduled start time, Manufacturing
Specialists and Equipment Engineering Technicians in the
fabs are required to go to the locker area to remove their

Vogt v. Texas Instruments, Inc., Not Reported in F.Supp.2d    6)
2006 WL 4660134

street shoes and don cleanroom shoes. (Mot. at 3.) They are then to proceed to the gowning area, where they put on a hairnet, wash their hands, put on a cleanroom suit, a hood, and gloves, and pass through an air shower. *Id.* Only then do they report to their work station and their official work day begins. *Id.* Plaintiffs also claim that after the end of their official shift, they are required to remain at their work stations for twelve minutes for a "pass down" briefing with the next shift. (Mot. at 4.) Plaintiffs assert that they are not paid overtime for the time spent gowning before the shift and in the "pass down" briefing after the shift, in violation of the FLSA. *Id.*

## II. MOTION TO FACILITATE § 216(b) NOTICE

### A. Requirements for § 216(b) Notice

**\*2** The FLSA provides that a suit may be instituted by "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover unpaid overtime compensation and liquidated damages from employers who violate the statute's overtime provisions. 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure in which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." [1] *Id.*

> Section 216(b) actions differ from FED. R. CIV. P. 23 class actions in that the members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney, et al. v. ARAMCO Servs. Co., et al.,* 54 F.3d 1207, 1212 (5th Cir.1995). Rule 23 and § 216(b) class actions are "mutually exclusive and irreconcilable", and those who choose not to opt-in to a class action under § 216(b) are not bound by, and may not benefit from, the judgment. *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 288-89 (5th Cir.1975).

Under the FLSA, courts have discretion to allow a party asserting claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Although the Fifth Circuit has not adopted a specific standard to be used in determining the propriety of class certification under the FLSA, it has recognized the two-stage approach used by many courts. *See Mooney v. Aramco Services Co.,* 54 F.3d

1207, 1213-14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). [2] The two-stage approach involves a "notice" stage and a "decertification" stage, and different evidentiary thresholds apply at each stage. *Id.* At the "notice" stage, a plaintiff files a motion to authorize notice of the lawsuit to potential class members. *Id.* The evidentiary standard at this stage is lenient, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan...." *Id.* at 1214 n. 8. However, courts are mindful that they have a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266-67 (D.Minn.1991). If the motion is granted, the district court will conditionally certify the class so that putative class members are given notice and the opportunity to "opt-in" to the lawsuit. *Id.* at 1214. The action then proceeds as a representative action throughout discovery. *Id.* Once discovery is complete, the case proceeds to the second stage of litigation, in which the court re-visits the issue of certification, usually when the defendant files a motion to decertify the class. *Id.*

[2]
> Although *Mooney* addressed the collective action procedure under the Age Discrimination in Employment Act ("ADEA"), it applies in the FLSA context because the ADEA explicitly incorporates 29 U.S.C. § 216(b). *Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807, 809 n. 7 (S.D.Tex.2003).

### 1. Members of the conditional class
Plaintiffs seek authorization to serve notice on all current and former employees of Defendant who have been and/or are employed as Manufacturing Specialists of Equipment Engineering Technicians working compressed shifts in cleanroom facilities from November 15, 2002 to the present, to permit such individuals to "opt-in" to the putative class pursuant to 29 U.S.C. § 216(b). (Reply at 1.) Defendant does not contest Plaintiff's request that notice be given to all Manufacturing Specialists who work compressed shifts in cleanrooms at the Dallas, Texas, facility but does contest notice to other employees.

**\*3** In determining whether a plaintiff in an FLSA action has met his burden to provide sufficient evidence that he is similarly situated to the intended notice recipients, courts have looked to the similarity of the job requirements and pay provisions and at whether the putative class members

appear to be possible victims of a common policy or plan. *See Roebuck v. Hudson Valley Farms, Inc.,* 239 F.Supp.2d 234, 238 (N.D.N.Y.2002); *Butler v. San Antonio,* 2003 WL 22097520, at *1 (W.D.Tex. Aug. 21. 2003). Other courts have looked to whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. *H & R. Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex.1999).

Here, Defendant contends that Plaintiffs have not provided sufficient evidence to show that they are similarly situated to Equipment Engineering Technicians such that notice should also be given to that group. (Resp. at 8-11; Surreply at 2-4.) Defendant notes that none of Plaintiffs has worked as an Equipment Engineering Technician. Defendant provides affidavits of several its supervisors who attest to the fact that Equipment Engineering Technicians do not smock up until after their shift start time. (App. to Resp. at 7, 9, 11, 15, 17, 25, 29, 31, 33, 60.)

Because Plaintiffs have not provided affidavits of any current or former Equipment Engineering Technicians to attest to their job requirements, and because Defendant has provided numerous affidavits from persons with knowledge testifying that the job requirements of Equipment Engineering Technician are substantially different from those of Manufacturing Specialist, the Court does not find that Plaintiffs have met their burden to show that these two groups of employees are similarly situated.[3] Therefore, notice shall only issue to Manufacturing Specialists who work compressed shifts in a cleanroom.

[3]    Plaintiffs filed a supplemental appendix to their reply brief which contained new evidence concerning the EET job requirements without seeking leave of court. The local rules do not permit do not permit a party to submit additional evidence with a reply brief, and a movant desiring to submit additional evidence in support of a motion must first seek leave of court. *Dethrow v. Parkland Health Hospital System,* 204 F.R.D. 102, 103-04 (N.D.Tex.2001) (citations omitted). "[W]here a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them." *Spring Industries, Inc. v. American Motorists Ins. Co.,* 137 F.R.D. 238, 239 (N.D.Tex.1991). For

this reason, the Court **GRANTS** Defendant's motion to strike the supplemental appendix.

> The Court notes that even if not stricken, the supplemental declaration of Vogt would still be inadmissible for lack of personal knowledge. *See White v. MPW Industrial Services, Inc.,* 236 F.R.D. 363, 369 (E.D.Tenn.2006) (despite the relaxed evidentiary standards at the notice stage, an affidavit in support must be based on the personal knowledge of the affiant); *see also Harrison v. McDonald's Corp.,* 411 F.Supp.2d 862, 865-66 (S.D.Ohio 2005) ("[O]nly admissible evidence may be considered in connection with a [Section] 216(b) motion."). While Vogt's supplement declaration states that certain Equipment Engineering Technicians in the Plasma and Thin Film sections of the DFAB were required to smock up prior to their shift start time and unsmock after the end of their shift, (Supp.App. at 5.), it does not state whether Vogt had personal knowledge of the practices pertaining to Equipment Engineering Technicians and contradicts affidavits of persons who did have personal knowledge.

### 2. *Geographic scope of notice*

Plaintiffs seek to have notice sent to employees at all four of Defendant's facilities in the United States. (Mot. at 8.) Defendant asserts that notice should be limited to Manufacturing Specialists at the Dallas, Texas, facility. (Resp. at 11; Surreply at 4.) As noted above, Plaintiffs are required to provide evidence supporting their claim that potential class members are similarly situated to Plaintiffs. *See* 29 U.S.C. § 216(b); *Mooney,* 54 F.3d at 1213-14.

Plaintiffs have provided no evidence showing that the shift requirements at the Stafford, Texas; Tucson, Arizona; and Sherman, Texas, facilities are similar to those at the Dallas location.[4] Accordingly, Plaintiffs have not met their burden to demonstrate that the Manufacturing Specialists at those locations are similarly situated to Plaintiffs, and notice will therefore not be given to those employees.

[4]    The Court notes that Plaintiffs submitted the Gauthier Supplemental Declaration in their supplemental appendix, wherein Gauthier states that he was required to smock up prior to his shift's official start time and was required to remain at his work station for a pass down briefing after the official end of his shift during his tenure at the Sherman

© 2017 Thomson Reuters. No claim to

facility. (Supp.App. at 1-2.) However, Gauthier left the Sherman, Texas facility approximately one year before the relevant period; his declaration does not address the class period. Accordingly, even the Court had considered the declaration, such consideration would not alter the outcome.

In conclusion, the Court conditionally certifies the class of all current and former Manufacturing Specialists working compressed shifts in cleanroom facilities at Defendant's Dallas facility, from November 15, 2002, through the present. The Court emphasizes that the record is incomplete, so this Court cannot make a definitive determination as to whether the putative class members are similarly situated. After the potential opt-in plaintiffs have filed their Notices of Consent, the District Court may consider any motion filed by Defendant to decertify the class.

### B. Language of Notice

**\*4** After considering the parties' positions with respect to the notice language and the District Court's *Memorandum Opinion and Order and Preliminary Injunction,* the Court approves the attached form of notice to be sent to the conditionally certified class.

### C. Discovery

To facilitate the collective adjudication of this action, Plaintiffs ask that Defendant be ordered to provide Plaintiffs' counsel with a "computer-readable data file containing the names, last known addresses, phone numbers and Social Security numbers for all non-exempt employees employed as Manufacturing Specialists and Equipment Engineering Technicians from November 15, 2002 to the present." (Mot. at 21.) Defendant objects that the requested discovery invades employees' privacy. (Resp. at 22-25.) Defendant requests that notice be limited to the names and last known addresses of potential class members. *Id.*

The Court agrees with Defendant's concerns regarding the privacy of its employees. At this stage, Plaintiffs have not demonstrated a need for locating information beyond names and addresses. Therefore, by October 10, 2006, Defendant shall provide to Plaintiffs a list of the names and last known addresses (in electronic form) of all current and former Manufacturing Specialists in Defendant's Dallas facility. By October 24, 2006, Plaintiffs, through their counsel, shall send the attached notice and consent

form to these individuals by first class mail. If any notices are returned to Plaintiffs' counsel because the contact information is inaccurate, Plaintiffs may petition the District Court to order Defendant to produce the phone numbers and/or Social Security numbers of those potential opt-in plaintiffs. The consent forms must be postmarked by December 29, 2006, and filed with the Court by January 12, 2007.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' *Motion to Facilitate § 216(b) Notice and Brief in Support Thereof,* filed February 13, 2006, is **GRANTED,** in part, and **DENIED,** in part, and the Court conditionally certifies the class of all current and former Manufacturing Specialists working compressed shifts in cleanrooms at Defendant's Dallas facility, from November 15, 2002, through the present. It is further

**ORDERED** that Defendant shall provide to Plaintiffs a list of the names and last known addresses (in electronic form) of all current and former Manufacturing Specialists working compressed shifts in cleanrooms in Defendant's Dallas facility by October 10, 2006. It is further

**ORDERED** that Plaintiffs, through their counsel, shall send the attached notice and consent form to the putative opt-in plaintiffs by first class mail, by October 24, 2006. It is further

**ORDERED** that the consent forms must be postmarked by December 29, 2006, and filed with the Court by January 12, 2007. It is further

**ORDERED** that *Defendant's Motion to Strike and Objections to New Evidence in Plaintiffs' Supplemental Appendix in Support of Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Motion to Facilitate § 216(b) Notice and Brief in Support,* filed May 23, 2006, is **GRANTED.** *Defendant's Motion for Leave to File Surreply in Opposition to Plaintiffs' Motion to Facilitate § 216(b) Notice and Brief in Support,* filed May 23, 2006, is therefore **DENIED AS MOOT.**

**\*5  SO ORDERED.**

Vogt v. Texas Instruments, Inc., Not Reported in F.Supp.2d (2006)

2006 WL 4660134

### IMPORTANT NOTIFICATION TO POTENTIAL CLASS MEMBERS

**TO: ALL CURRENT OR FORMER EMPLOYEES OF TEXAS INSTRUMENTS, INCORPORATED ("TI"), WHO HAVE BEEN ANS/OR CURRENTLY ARE EMPLOYED AS MANUFACTURING SPECIALISTS WORKING COMPRESSED SHIFTS IN CLEANROOM FACILITIES LOCATED IN DALLAS, TEXAS, AT ANY TIME SINCE NOVEMBER 15, 2002.**

**FROM: GILLESPIE, ROZEN, WATSKY, MOTLEY & JONES, P.C.**

**RE: RIGHT TO JOIN A LAWSUIT SEEKING TO RECOVER UNPAID OVERTIME COMPENSATION**

**DATE:** [Plaintiffs' counsel shall insert the date that the notice is mailed.]

### 1. PURPOSE OF NOTICE

The purpose of this Notification is to inform you of the existence of a collective action lawsuit in which you may be eligible to participate because you may be "similarly situated" to the named Plaintiffs. This Notification is also intended to advise you how your rights under the federal Fair Labor Standards Act ("the Act") may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit, should you decide that it is appropriate and you choose to do so.

### 2. DESCRIPTION OF THE LAWSUIT

A lawsuit has been brought by Wilford Vogt, James P. Gauthier, and Humberto Reyna, Jr. ("named Plaintiffs") against TI in the United States District Court for the Northern District of Texas as Cause No. 3:05-CV-2244-L. The lawsuit alleges that TI failed to provide overtime compensation as required by the Act. Plaintiffs' lead counsel in this case are:

David K. Watsky and Hal Gillespie

GILLESPIE, ROZEN, WATSKY, MOTLEY & JONES, P.C. 3402 Oak Grove Ave., Suite 200

Dallas, Texas 75204

Telephone: (214) 720-2009

Facsimile: (214) 720-2291

email: David Watsky at watsky@grwlawfirm.com or Jim Sanford at jsandford @grwlawfirm.com

Generally, the overtime provisions of the Act require that, for all hours over forty hours per week that an employee works, the employer must compensate the employee at the rate of one and one-half times his or her regular hourly rate, unless that employee is properly classified as "exempt" from t he overtime provisions of the Act. The named Plaintiffs claim that during one or more weeks of their employment with TI, they worked in excess of forty hours, but were not paid overtime at t he rate of on and one-half times their hourly rate for the hours they worked in excess of forty.

Specifically, the named Plaintiffs allege that (1) they were not paid for the time spend donning and doffing the required cleanroom suit; (2) they were not paid for time spent walking to and from their work stations; and (3) they were not paid for time spend in required "pass down" briefings at the end of their regularly scheduled shifts. Plaintiffs are suing to recover unpaid overtime compensation for the period from November 15, 2002 to the present.

TI denies the named Plaintiffs allegations.

### 3. COMPOSITION OF THE CLASS

The named Plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated. Those individuals that the named Plaintiffs allege are similarly situated are current and former employees of TI who have been and/or currently are employed as Manufacturing Specialists working compressed shifts in TI's cleanroom facilities located in Dallas, Texas and Sherman, Texas at any time since November 15, 2002.

*6 This Notification is only for the purpose of determining the identity of those persons who wish to be involved in this case and has no other purpose. Your right to participate in this suit may depend upon a later decision by the United States District Court that you and the representative Plaintiffs are actually "similarly situated."

### 4. YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT

Vogt v. Texas Instruments, Inc., Not Reported in F.Supp.2d (2006)
2006 WL 4660134

If you fit the definition above, that is, you were or currently are employed as a Manufacturing Specialist and worked/work a compressed shift in one of TI's cleanrooms located in Dallas, Texas, at any time from November 15, 2000, you may have a right to participate in this lawsuit.

You may file a consent form to seek to participate in this lawsuit even if you did or did not keep records of you hours worked.

### 5. HOW TO PARTICIPATE IN THIS LAWSUIT

Enclosed you will find a form entitled "Notice of Consent" ("Consent Form"). If you choose to join this lawsuit and, thus, participate in any recovery that may result from this lawsuit, **it is extremely important that you read, sign, and return the Consent Form.**

The signed Consent Form must bey postmarked by December 29, 2006. If your signed Consent Form is not postmarked by December 29, 2006, you will not participate in any recovery obtained against TI in this lawsuit. If you have any questions about filling out or sending in the Consent Form, please contact Plaintiffs' counsel listed on page one of this notice.

### 6. NO RETALIATION PERMITTED

The Act prohibits an employer from discharging, or in any manner discriminating or retaliating against an employee for taking part in a case of this type. If you believe that you have been penalized, discriminated against, or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, you should contact Plaintiffs' counsel immediately.

### 7. EFFECT OF JOINING THIS SUIT

If you choose to join in this lawsuit, you will be bound by the judgment, whether it is favorable or unfavorable. You will also be bound by, and will share in, any settlement that may be reached on behalf of this class.

By joining this lawsuit, you designate the named Plaintiffs as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

The named Plaintiffs in this matter have entered into a contingency fee agreement with Plaintiffs' counsel, which means that if there is no recovery, there will be no attorneys' fees or costs chargeable to you. If there is a recovery, Plaintiffs' counsel will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. You may request a copy of the contingency fee agreement executed by the named Plaintiffs in this matter from Plaintiffs' counsel at the address, telephone number, facsimile number, or email address that appear on page one of this notice.

### 8. NO LEGAL EFFECT IN
### NOT JOINING THIS SUIT

**\*7** If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. You will not be entitled to share any amounts recovered by the class. You will be free to file your own lawsuit, subject to any defenses that might be asserted. The pendency of this lawsuit will not stop the running of the statute of limitations as to any claim you might have until you opt-in to it.

### 9. FURTHER INFORMATION

Further information about this Notification or the lawsuit may be obtained from Plaintiffs' counsel at the address, telephone number, facsimile number, or email address identified on page one of this notice.

### *CONSENT TO JOIN*

I understand that I may be eligible to join this lawsuit filed by current and/or former employees of Defendant to recover unpaid overtime wages and liquidated damages.

I hereby authorize the prosecution of this Fair labor Standards Action action in my name and on my behalf by Wilford Vogt, James Gauthier, and Humberto Reyna, Jr., the "Representative Plaintiffs." I designate the Representative Plaintiffs as my agents to make decisions on my behalf concerning this litigation, including the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel

concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

I understand that the Representative Plaintiffs have entered into a contingency fee agreement with the law office of Gillespie, Rozen, Watsky, Motley & Jones, P.C., which applies to all plaintiffs who join the lawsuit. I understand that I may obtain a copy of the contingency fee agreement on request. By choosing to join this lawsuit, I agree to be bound by the contingency fee agreement.

By choosing to join in this lawsuit, I understand that I will be bound by the judgment, whether it is favorable or unfavorable. I will also be bound by, and will share in, any settlement that may be negotiated on behalf of all Plaintiffs and approved by the Court.

I acknowledge and understand that if I had chosen not to join this lawsuit, I would not be affected by any judgment rendered or settlement reached in this lawsuit, whether favorable or unfavorable.

I hereby consent to join this lawsuit.

_____

Signature Date

_____

Date

PLEASE PRINT OR TYPE THE FOLLOWING INFORMATION:

Name:_____

Any other Name(s) used or known by:_____

Mailing Address:_____

City, State, and Zip Code:_____

Daytime Telephone:_____

Evening Telephone (optional):_____

Cellular Telephone (optional):_____

Email Address (optional):_____

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 4660134

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

Morgan v. Rig Power, Inc., Slip Copy (2015)

2015 WL 12532545, 2015 Wage & Hour Cas.2d (BNA) 408,540

2015 WL 12532545
United States District Court,
W.D. Texas, Midland-Odessa Division.

Garland Morgan, Ruben Ramirez,
Jorge Pinedo, David Duron, and Alfelio
Martinez, on behalf of themselves and
all others similarly situated, Plaintiffs,
v.
Rig Power, Inc. and M3P Energy, LLC, Defendants.

No. 7:15-CV-73-DAE
|
Signed 12/10/2015

**Attorneys and Law Firms**

Joshua C. Borsellino, Borsellino, P.C., Fort Worth, TX, for Plaintiffs.

Lisa K. Hooper, Randall L. Rouse, Lynch, Chappell & Alsup, P.C., Midland, TX, for Defendants.

ORDER CONDITIONALLY
CERTIFYING A CLASS

DAVID ALAN EZRA, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is a Motion for Conditional Certification and Notice to Potential Opt-In Plaintiffs filed by Garland Morgan, Ruben Ramirez, Jorge Pinedo, David Duron, and Alfelio Martinez, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") (Dkt. # 16.) Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the Motion and supporting memoranda, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Conditional Certification and Notice to Potential Opt-In Plaintiffs.

BACKGROUND

Rig Power is a Texas corporation that provides rental equipment and services to companies in the oil and gas industry. ("Compl.," Dkt. # 1 ¶¶ 6, 15.) M3P

is Rig Power's parent company. (Id. ¶ 11.) Plaintiffs were employed by Rig Power and M3P (collectively, "Defendants") as field technicians to perform manual labor related to the transportation, operation, and maintenance of oilfield equipment. (Id. ¶ 16.)

Plaintiffs allege that they routinely worked more than 40 hours per week and that Defendants failed to compensate them at the required overtime rate for such work. (Id.) Plaintiffs specifically allege that Rig Power paid a fixed amount for each day an employee worked more than eight hours, regardless of how many additional hours the employee worked on those days or how many additional hours the employee worked in a given week. (Id.) Plaintiffs further allege that Rig Power subsequently stopped paying this "daily bonus" due to the downturn in the oil and gas industry, resulting in Plaintiffs being paid no compensation of any kind for hours worked above 40 in a given week. (Id. ¶ 17.) Plaintiffs further allege that similarly situated field technicians were also not paid overtime for hours worked in excess of 40 hours per week. (Id. ¶¶ 21–22.)

Plaintiffs support these allegations with nine declarations signed by either current or former Rig Power field technicians. (Dkt. # 16-1, Ex. A-I.) In each declaration, the declarants attest that they are currently or were at one time a field technician for Rig Power. ("Garland Decl.," Dkt. # 16-1, Ex. A ¶ 2; "Hernandez Decl.," Dkt. # 16-1, Ex. B ¶ 2; "Miller Decl.," Dkt. # 16-1, Ex. C ¶ 2; "Martinez Decl.," Dkt. # 16-1, Ex. D ¶ 2; "Barrera Decl.," Dkt. # 16-1, Ex. E ¶ 2; "Barrientos Decl.," Dkt. # 16-1, Ex. F ¶ 2; "Lovell Decl.," Dkt. # 16-1, Ex. G ¶ 2; "Varela Decl.," Dkt. # 16-1, Ex. H ¶ 2; "Hewitt Decl.," Dkt. # 16-1, Ex. I ¶ 2.) Each of the affiants describes field technician work as "manual labor related to the transportation, operation and maintenance of equipment used in the oilfields." (E.g., Morgan Decl. ¶ 2.) More specifically, field technician duties included transporting Rig Power equipment on Ford F-250s, making service calls to and from a job site, purchasing items needed at the job site, retrieving items from Rig Power's relevant office, or purchasing fuel stored in the tanks of the bed of the F-250s. (E.g., Martinez Decl. ¶ 2; Morgan Decl. ¶ 2.)

**\*2** All nine affiants attest that Rig Power paid them a salary. (Id. ¶ 5; E.g., Hernandez Decl. ¶ 2.) Further, all nine declarants indicate that Rig Power did not pay them overtime compensation, but instead paid a "daily

bonus." (E.g., Miller Decl. ¶ 3.) Three declarants state that Rig Power paid a "daily bonus" for each day worked in excess of eight hours (Dkt. # 16-1, Exs. A, D, E) and four declarants state that Rig Power paid the "daily bonus" for hours worked in excess of 12 hours. (Dkt. # 16-1, Exs. F, G, H, I.) One declarant stated Rig Power paid him a "daily bonus," but could not recall if he received the payment for working in excess of eight or 12 hours. (Hernandez Decl., ¶ 2.) The ninth declarant simply stated that he received a "daily bonus" for working excess of 40 hours a week. (Miller Decl. ¶ 3.)

The purported class members also show that they worked as field technicians at a variety of Rig Power field offices: San Angelo, Texas (Morgan Decl. ¶ 6), Midland, Texas (Hernandez Decl. ¶ 3), Wysox, Pennslyvania (Miller Decl. ¶ 4), and Seguin, Texas (Barrientos Decl. ¶ 3.)

On May 22, 2015, Plaintiffs filed a Complaint in this Court on behalf of themselves and all others similarly situated alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq ("FLSA"). (Dkt. # 1.) Plaintiffs seek unpaid overtime wages, liquidated damages, costs, and attorneys' fees. (Id. at 9.)

Plaintiffs filed the Motion for Conditional Certification currently before the Court on August 28, 2015. ("Pls. Mot.," Dkt. # 16.) Defendants filed a Motion for Extension of Time to file a response to the Motion to Conditionally Certify a Class (Dkt. # 17) and the Court granted that motion on September 14, 2015. Subsequent to the Court issuing an order denying a motion to dismiss, Defendants filed a Response to the current motion on November 2, 2015. ("Defs. Resp.," Dkt. # 23.) The following day Plaintiffs filed their Reply. ("Reply," Dkt. # 24.)

## LEGAL STANDARD

The FLSA requires employers to compensate an employee one and one-half times the regular rate for each hour worked in excess of forty hours a week. 29 U.S.C. § 2107(a) (1). To enforce Section 207, the FLSA permits a district court to order a lawsuit to proceed as a collective action on behalf of others similarly situated. 29 U.S.C. § 216(b). The statute provides:

> An action ... may be maintained ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id. Accordingly, the collective action mechanism under Section 216(b) is quite different from a traditional class action filed under Federal Rule of Civil Procedure 23(c). Compare 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed") with Fed. R. Civ. P. 23(c)(2)(B) (requiring that the notice sent to all class members include a statement "that the court will exclude from the class any member who requests exclusion"). Thus, whereas a Rule 23 class action requires a prospective plaintiff to "opt-out" to avoid being bound by the judgment, the FLSA requires prospective plaintiffs to "opt-in" to benefit from a judgment. See Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915-16 (5th Cir. 2008).

The Fifth Circuit has not adopted a specific test to determine when a district court should certify a class or grant notice under Section 216(b). See Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 518-19 (5th Cir. 2010) ("We have not ruled on how district courts should determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single § 216(b)"). Yet, one method commonly used to certify a class under the FLSA is a two-stage inquiry announced in Lusardi v. Xerox, 118 F.R.D. 351, 359 (D.N.J. 1987). Most district courts in the Fifth Circuit, including this Court, have generally adopted the Lusardi approach. See Lay v. Gold's Gym Intern., Inc., No. 5:12-CV-754, 2013 WL 5595956, at * 3 (W.D. Tex. Oct. 4, 2013); Heeg v. Adams Harris, Inc., 907 F.Supp.2d 856, 860-61 (S.D. Tex. 2012); Pedigo v. 3003 S. Lamar, LLP, 666 F.Supp.2d 693, 697 (W.D. Tex. 2009).

**\*3** The two stages of the Lusardi method are the "notice stage" and the "decertification stage." Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213 (5th Cir. 1995) (overruled on other grounds by Desert Palace, Inc.

v. Costa, 539 U.S. 90 (2003)). At the notice stage, the district court determines, based only on the pleadings and any affidavits, whether notice of the lawsuit should be given to putative class members. Mooney, 54 F.3d at 1213-14. This determination is made using a "fairly lenient standard" because the court has only minimal evidence before it. Id. However, the plaintiff bears the burden of making the preliminary factual showing that a similarly situated group of potential plaintiffs exists. The potential class members must be similarly situated in terms of job requirements and in terms of payment provisions. Pedigo, 666 F. Supp. 2d at 698 (citing Ryan v. Staff Care, Inc., 497 F. Supp. 2d 820, 824-25 (N.D. Tex. 2007)). However, the court does not need to find uniformity in every single aspect of employment to determine that a prospective class of employees is similarly situated. Pedigo, 666 F. Supp. 2d at 698. One way to show that prospective class members are similarly situated is with substantial allegations that they "were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214, n. 8. Upon finding that the employees are similarly situated, the district may conditionally certify the class and the action proceeds as a class action into discovery. Mooney, 54 F.3d at 1214.

The second stage of Lusardi occurs at the conclusion of discovery. At this stage, the defendant may move to "decertify" the conditionally certified class. Mooney, 54 F.3d at 1214. The Court again determines whether the claimants are similarly situated, but with the benefit of more facts in the record. Id. If the facts support a finding that the plaintiffs are similarly situated, then the matter proceeds to trial. Id. If not, the dis-similar parties are dismissed without prejudice. Id.

## DISCUSSION

The Plaintiffs seek to conditionally certify a collective action consisting of employees designated as field technicians. (Pls. Mot. at 5.) Accordingly, the Court need only address the first stage of the Lusardi test.

The Court finds that Plaintiffs have made a *prima facie* showing on their motion for conditional certification and have carried their burden beyond the lenient standard required at the first Lusardi stage. Having reviewed the pleadings and supporting declarations, the Court finds that the Plaintiffs substantially allege that the putative

class members "were together the victims of a single decision, policy, or plan" and are similarly situated. Mooney. 54 F.3d at 1214.

## I. Conditional Certification

### A. Single Decision or Policy

Plaintiffs have provided "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Songer v. Dillon Resources, Inc., 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (internal citations omitted). The Plaintiffs present nine declarations from former and current Rig Power field technicians who worked at four separate regional offices. (Dkt. # 16-1, Exs. A-I.) Each declarant states that Rig Power paid him a "daily bonus" for working in excess of eight or twelve hours. (Id.) If the allegation of an unlawful compensation scheme existed at only a single regional office, the Court might find such an allegation insufficiently substantial to allege a corporate policy of wrongdoing necessary to overcome the lenient standard at this stage. However, here, nine declarants from four regional offices, stretching from Texas to Pennsylvania, describe with specificity and personal knowledge a compensation plan common to all four regional offices. The Court finds that similarity of compensation schemes, as supported by nine declarations, across the country is a substantial allegation that field technicians were victims of a Rig Power decision or policy that potentially affects a nationwide putative class.

The Defendants argue that Plaintiffs' failure to attach any written Rig Power policy means that they have failed to carry their burden of proving class members were victims of a single policy or decision. (Defs. Resp. at 7.) While submitting a written policy is one method of establishing that a putative class was a victim, it is not necessary. Cf. Gold's Gym, 2013 WL5595956, at * 4 (noting that a common or uniform practice is sufficient for conditional certification even where a written policy prohibits the common practice). Nine declarations from field technicians at four regional offices indicate to the Court that it was Rig Powers' "common and uniform practice" to compensate its employees with a "daily bonus" instead of through the FLSA's overtime compensation requirements.

**\*4** Defendants also argue that the declarations contain conclusory allegations unsupported by factual assertions.

Morgan v. Rig Power, Inc., Slip Copy (2015)
2015 WL 12532545, 2015 Wage & Hour Cas.2d (BNA) 408,540

(Defs. Mot. at 6-7; citing Songer, 569 F. Supp. 2d at 707.) In Songer, the court denied conditional certification because the plaintiffs submitted five affidavits that made conclusory allegations without factual assertions such as "[a]ll drivers ... are working overtime" and "at no time has the company ever [paid overtime]." Id. Here, the Plaintiffs' declarations are not conclusory; unlike the affidavits in Songer, the declarants do not make assertions based in generalities. Instead, the Plaintiffs' declarants state facts based on personal knowledge. For example, Luis Barrientos declared:

> While working as a field technician for Rig Power, I was paid a salary, and I was required to report at the end of each pay period how many days I had worked more than twelve hours. For each such day, Rig Power paid me what it called a "daily bonus," which I understood to be a set amount for each day I worked more than twelve hours in a given day.

(Barrientos Decl. ¶ 2.)

Accordingly, the Court finds that Plaintiffs have made sufficiently substantial allegations that field technicians employed by Rig Power were victims of a single decision or policy—namely a policy to pay employees a "daily bonus" in lieu of proper overtime compensation—to warrant conditional certification.

### B. Similar Jobs and Terms of Pay

The Plaintiffs substantially allege that the prospective class members have the same job requirements and terms of pay. The Court finds that each of these declarations substantially describes the roles and responsibilities of Rig Power field technicians in a way that indicates personal knowledge. (See Dkt. # 16-1, Exs. A-I.) The declarations describe the work of a field technician as manual labor in relation to the transportation, operation, and maintenance of Rig Power equipment. (Id.) All declarations also substantially define the terms of payment for field technicians. Each declarant states that Rig Power paid him a salary. (E.g., Varela Decl., ¶ 2.) Further, each declarant states that as a field technician, Rig Power paid a "daily bonus" for hours worked in excess of eight or twelve hours. (E.g., Barrera Decl. ¶

2; Hewitt Decl. ¶ 2.) Accordingly, the Court finds that Plaintiffs have carried their burden of making substantial allegations that field technicians at Rig Power are similarly situated in terms of job requirements and terms of compensation.

### C. Allegations that Others are Similarly Situated

Plaintiffs substantially allege that other field technicians are similarly situated. All nine declarants assert, relying on their employment experience at Rig Power, that other field technicians received overtime compensation through the "daily bonus" scheme. (E.g., Morgan Decl. ¶ 6.) Further, the declarants state that other field technicians had similar job duties and routinely worked over forty hours a week. (Dkt. 16-1, Exs. A-I.) The Court finds that these declarations substantially support an allegation that a putative class of similarly situated field technicians exists.

Accordingly, the Court finds that the Plaintiffs have met their lenient burden of substantially alleging that a similarly situated class exists to warrant a conditional certification. The Court conditionally certifies a class defined as "All field technicians employed by Rig Power within three years of the date of this order."

### II. Requested Contact Information

Plaintiffs request that Defendants produce names, last known addresses, last known residential and cell phone numbers, email addresses, last four digits of employee Social Security Number, and dates worked for the conditional class. (Pls. Mot. at 8.) Defendants object to the production of email addresses. (Defs. Resp. at 2.) Plaintiffs contend that email addresses are necessary due to the transient nature of oilfield workers. (Reply at 4.)

*5 The Court finds that the extensive nature of the disclosures requested by Plaintiffs is inappropriate at this stage of the matter. The production of Social Security numbers at this early stage invades too closely the privacy and security of the prospective class members. See Garcia v. TWC Admin., LLC, No. 14-CV-985, 2015 WL 1737932, at * 4 (W.D. Tex. Apr. 16, 2015); Humphries v. Stream Int'l, Inc., No. 3:03-CV-1682-D, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Feb 13, 2004) (declining to require production of social security numbers and telephone numbers because the privacy interests outweigh the need for the disclosure). The

Morgan v. Rig Power, Inc., Slip Copy (2015)

2015 WL 12532545, 2015 Wage & Hour Cas.2d (BNA) 408,540

production of email addresses is also unnecessary at this early stage of litigation. See TWC Admin., 2015 WL 1737932 at *4. However, due to the fact that oil workers frequently move, Plaintiffs may request the production of additional information to assist them in reaching those class members whose mailed notices come back undeliverable. See Heeg, 907 F. Supp. 2d at 865-66 (noting that plaintiffs' counsel could request additional information for putative class members whose notices were returned undeliverable). Accordingly, the Court orders that Defendants produce the names, last known addresses, and dates of employment of all field technicians who Rig Power employed within three years of this order.

### III. Notices

Having concluded that conditional certification of a class is appropriate, the next consideration is whether Plaintiffs' proposed notice is proper. Defendants object to Plaintiffs' proposed notice on the following bases: (1) Plaintiffs requested time period of employment to which the prospective class covers; (2) Plaintiffs proposed notice does not adequately explain that Defendants dispute the allegations; and (3) Plaintiffs' proposed notice requests prospective class members to mail the consent form back to Plaintiffs' counsel (Defs. Resp. at 1-4.) The Plaintiffs agree with Defendants' first two objections.

### A. Time Period

Even though the parties agree on the relevant time period for the conditionally certified class, the Court wants to be clear. The statute of limitations for a cause of action arising out of the willful violation of the FLSA is three years. 29 U.S.C. § 255(a). This Court has already ruled not to toll the limitations period. (Dkt. # 20.) The limitations period is not tolled as to individual claimants until the claimant files a written opt-in consent form with the court. 29 U.S.C. § 256 (b). Therefore, the limitations period in this case will confine the class certification to field technicians who worked at Rig Power within three years of the date of this order.

### B. Defendants' Requested Notice Language

Defendants request that the Notice include the following language:

> The Defendant disputes the Plaintiffs' contentions and asserts

that all field technicians were properly and fairly paid in accordance with the Motor Carrier Act and/or FLSA or other applicable law and that the allegations in the lawsuit are without merit.

(Defs. Resp. at 3.) Plaintiffs do not object to the insertions of this language. Accordingly, the Court finds that the Notice should include this language.

### C. Disputed Language on the Consent Form and Filing

Plaintiffs request that "any potential plaintiff who wishes to join this action must return a consent form to Plaintiff's counsel (who shall file the notice with the Court) within seventy five (75) days from the date of an order granting this motion." (Pls. Mot. at 8-9.) Defendants object and propose a revision that "notices should be sent to the Court and/or that they may contact an attorney of their own choosing to discuss the case and not direct members to contact the Plaintiffs' counsel." (Defs. Resp.) Plaintiffs do not oppose the language informing putative class members that they "may select a lawyer of [their] own choosing to represent you in this matter, or you may contact the lawyers for the current plaintiffs in this case." (Reply at 4-5.)

The Court agrees that the notice must inform potential class members that they may contact any attorney of their choosing to discuss the case or may contact the current Plaintiffs' counsel. See Tolentino v. C&J Spec-Rent Servs. Inc., 716 F.Supp.2d 642, 655 (S.D. Tex. 2010) ("[T]he notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case.") Additionally, class members wishing to opt-in must return their Consent forms directly to the Court by filing them with the Clerk of Court. See id. Obviously, any class members retaining counsel may have their attorney file the Consent form, but the Notice may not *require* class members send opt-in forms to the counsel on record first.

**\*6** Accordingly, since both parties fundamentally agree on the language of the Notice, the Court orders that the parties meet and confer and file a proposed Notice and Consent form to the Court within seven (7) days of this Order. The Notice and Consent form must comply with the directives in this Order.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Plaintiffs' Motion for Conditional Certification and Notice to Potential Opt-In Plaintiffs.

**IT IS ORDERED** that Plaintiffs' Motion for Conditional Certification (Dkt. # 16) is **GRANTED**. The conditional class is defined as follows: "Field Technicians who have worked for Rig Power within three years of the date of this Order."

**IT IS FURTHER ORDERED** that the parties shall meet and confer regarding the Notice to the Class and Consent form, and shall file with the court a proposed Agreed Notice to the Class and Consent form for the Court's approval **within seven (7) days** of this Order. The language in the Notice and Consent form must comply with this Court's findings in this Order.

**IT IS FURTHER ORDERED** that the Defendants produce, in a useable electronic format, the names, last known addresses, and dates of employment of all putative class members **within fourteen (14) days** of this order. Plaintiffs are free to move this Court to issue an order for more contact information if necessary.

DATED: December, 10, 2015.

**All Citations**

Slip Copy, 2015 WL 12532545, 2015 Wage & Hour Cas.2d (BNA) 408,540

---

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Garcia v. TWC Admin., LLC, Not Reported in F.Supp.3d (2015)
2015 WL 1737932, 2015 Wage & Hour Cas.2d (BNA) 181,597

2015 WL 1737932
United States District Court,
W.D. Texas,
San Antonio Division.

Abbie GARCIA, Brandon Pontious, and
Orin Hughes, individually and on behalf
of all others similarly situated, Plaintiffs,
v.
TWC ADMINISTRATION, LLC, d/
b/a Time Warner Cable, Defendant.

No. SA:14–CV–985–DAE.
|
Signed April 16, 2015.

**Attorneys and Law Firms**

Dorian Vandenberg–Rodes, Ricardo Jose Prieto, Martin A. Shellist, Shellist Lazarz Slobin LLP, Houston, TX, for Plaintiffs.

Christine Elaine Reinhard, Schmoyer Reinhard LLP, San Antonio, TX, Joseph W. Ozmer, II, Nathan D. Chapman, Wargo & French LLP, Atlanta, GA, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND AUTHORIZATION FOR NOTICE*

DAVID ALAN EZRA, Senior District Judge.

**\*1** Before the Court is a Motion for Conditional Certification of a Collective Action and Authorization for Notice filed by Plaintiffs Abbie Garcia, Brandon Pontious, and Orin Hughes, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"). (Dkt.# 9.) On April 15, 2015, the Court heard oral argument on the Motion. Dorian Vandenberg–Rodes, Esq., and Ricardo Jose Prieto, Esq., appeared at the hearing on behalf of Plaintiffs; Nathan D. Chapman, Esq., and Christine Elaine Reinhard, Esq., appeared at the hearing on behalf of Defendant Time Warner Cable ("TWC"). After reviewing the Motion and the supporting and opposing memoranda, and considering the parties' arguments at the hearing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Conditional Certification of a Collective Action and Authorization for Notice. (Dkt.# 4.)

## BACKGROUND

The instant litigation arises out of Plaintiffs' employment by TWC as inbound sales agents in San Antonio, Texas. ("Garcia Decl.," Dkt. # 9, Ex. A ¶ 2; "Pontious Decl.," Dkt. # 9, Ex. B ¶ 2; "Hughes Decl.," Dkt. # 9, Ex. C ¶ 2.) Inbound sales agents are primarily responsible for selling and/or "up-selling" cable service to customers who call TWC's call center. (Garcia Decl. ¶ 3; Pontious Decl. ¶ 3; Hughes Decl. ¶ 3.) Each of the named Plaintiffs worked eight hours per day with a one-hour unpaid lunch period, and was paid $10 per hour plus commissions based on the number of sales made. Specifically, they received a percentage of the sales they made, which varied based on factors such as how closely they adhered to their eight-hour schedules, "up-sales" generated, and new customer sales generated. (Garcia Decl. ¶¶ 4, 6; Pontious Decl. ¶¶ 4, 6; Hughes Decl. ¶¶ 4, 6.)

Plaintiffs allege that in addition to taking customer calls, they were required to perform "non-sales work" such as documenting orders and customer accounts, following up with customers and addressing issues related to orders, ensuring that accounts were properly credited, and staying abreast of current TWC products, services, promotions, and policies. (Garcia Decl. ¶ 5; Pontious Decl. ¶ 5; Hughes Decl. ¶ 5.) They further allege that because they were effectively required to spend the entirety of their shifts on the phone, they spent a significant amount of time each day working "off the clock" and without pay so that they could complete the required "non-sales work." (Garcia Decl. ¶¶ 6–7; Pontious Decl. ¶¶ 6–7; Hughes Decl. ¶¶ 6–7.) Garcia states that she worked an average of six unpaid hours per week (Garcia Decl. ¶ 8), while Pontious and Hughes state that she worked an average of seven unpaid hours per week (Pontious Decl. ¶ 8; Hughes Decl. ¶ 8). Plaintiffs allege that their supervisors were aware that they were working off the clock, but that they were repeatedly instructed to stay on the phone the entire time they were on the clock and that their "non-sales work" had to be performed off the clock. (Garcia Decl. ¶ 9; Pontious Decl. ¶ 9; Hughes Decl. ¶ 9.)

**\*2** On November 6, 2014, Plaintiffs initiated this lawsuit by filing a collective action complaint. (Dkt.# 1.) The

Garcia v. TWC Admin., LLC, Not Reported in F.Supp.3d (2015)

2015 WL 1737932, 2015 Wage & Hour Cas.2d (BNA) 181,597

complaint alleges (1) that TWC's practice of failing to pay Plaintiffs the time-and-a-half rate for hours in excess of forty per work week violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and (2) that TWC's practice of failing to pay Plaintiffs at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206. (*Id.* ¶¶ 74–79.) On December 10, 2014, Plaintiffs filed the instant Motion for Conditional Certification of a Collective Action and Authorization for Notice. (Dkt.# 9.) On January 9, 2015, TWC filed a Response in Opposition. (Dkt.# 16.) On January 15, 2015, Plaintiffs filed a Reply. (Dkt.# 19.)

*LEGAL STANDARD*

An employee can bring an action for violating the minimum wage and overtime provisions of the FLSA, either individually or as a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Because the FLSA requires employee-class members to affirmatively opt in, the plaintiff can seek "conditional class certification" from the court, which permits the plaintiff to "send[ ][a] court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczk,* ——U.S. ——, ——, 133 S.Ct. 1523, 1527, 185 L.Ed.2d 636 (2013) (citations omitted).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class or grant a notice in a § 216(b) action, the majority of courts within the Fifth Circuit have adopted the approach set forth in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987). *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995) (noting acceptable approaches include either the *Lusardi* approach or the "spurious class action" approach set forth in *Shushan v. Univ. of Colo.,* 132 F.R.D. 263 (D.Colo.1990)), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Vanzzini v. Action Meat Distribs., Inc.,* 995 F.Supp.2d 703, 719 (S.D.Tex.2014) (following *Lusardi* ); *Mateos v. Select Energy Servs., LLC,* 997 F.Supp.2d 640, 643 (W.D.Tex.2013) (same); *Tice v. AOC Senior Home Health Corp.,* 826 F.Supp.2d 990, 994 (E.D.Tex.2011) (same); *Marshall v. Eyemasters of Tex., Ltd.,* 272 F.R.D. 447, 449 (N.D.Tex.2011) (same).

The *Lusardi* approach is a two-stage inquiry involving a "notice stage" and a merits or decertification stage. *Mooney,* 54 F.3d at 1213–14. At the notice stage, a "court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 519 (5th Cir.2010). If the court determines that the proposed class members are similarly situated and conditional certification is warranted, the plaintiff has the opportunity to send notice to potential class members, who are then permitted to opt in to the suit. *Id.* Once plaintiffs have opted in and discovery is largely complete, the defendant can file a decertification motion, asking the court to re-assesses whether the claimants are similarly situated. *Mooney,* 54 F.3d at 1214. At that point, the court can fully evaluate the merits of class certification and can choose to decertify the class. *Id.*

*DISCUSSION*

**\*3** Plaintiffs ask the Court to conditionally certify this case as a collective action under 29 U.S.C. § 216(b); order TWC to produce a list of all inbound sales agents employed during the last three years at its San Antonio, Texas location; and issue notice subject to the procedure and methods laid out in their Motion. (Dkt. # 1 at 4.) TWC has elected not to challenge Plaintiffs' assertion that they have met the "lenient" standard for conditional certification under the FLSA. (Dkt. # 16 at 1.) However, TWC objects to Plaintiffs' request for a "gag order" on TWC; to the contact information requested by Plaintiffs; and to Plaintiffs' proposals regarding the manner, timing, and content of notice to putative class members. (*Id.*) The Court addresses each of TWC's objections in turn.

*I. Request for "Gag Order"*

TWC first objects to Plaintiffs' request for a "gag order," included in the proposed order granting Plaintiffs' Motion (Dkt.# 9–9). The proposed order includes the following language:

> Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former inbound sales agent about any matters which touch or concern the settlement of any outstanding

wage claims or other matters related to this suit during the opt-in period. Defendant shall so instruct all of its supervisors. This order shall not restrict Defendant from discussing with any current inbound sales agent matters that arise in the normal course of business.

(Dkt. # 9–9 at 3.) TWC argues that this language prohibits TWC and its counsel from communicating with putative class members regarding this litigation during the opt-in period, and contends that such a restraint on contact is unjustified in this case. (Dkt. # 16 at 2, 7.) Plaintiffs state that they only request that TWC be prohibited from speaking with class members regarding this lawsuit, settlement, or any other matters which touch or concern this case. (Dkt. # 19 at 2.) Plaintiffs argue that such a prohibition is necessary to avoid misinformation, to allow notice to come from a single source, and to avoid the potential for chilling participation or retaliation. (*Id.*)

Because class actions present special opportunities for abuse, courts have broad authority to govern the conduct of both counsel and parties in FLSA collective actions. *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003) (citing *Hoffman–La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). This authority includes the power to restrict communication between a party and absent class members; however, the court's discretion in this area is "not unlimited." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Supreme Court has explained that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. Furthermore, district courts may not restrict communication "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* at 102 (quoting *Coles v. Marsh,* 560 F.2d 186, 189 (3d Cir.1977). [1] Since *Gulf Oil,* courts have developed a two-step standard for determining when a party's communication to putative class members may be restricted. The party moving to limit communication must make two showings: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at

issue is abusive and threatens the proper functioning of the litigation." *Bass v. Pjcomm Acquisition Corp.,* No. 09–cv–01614–REB–MEH, 2011 WL 902022, at *3 (D.Colo. Mar.14, 2011); *Ojeda–Sanchez v. Bland Farms,* 600 F.Supp.2d 1373, 1378 (S.D.Ga.2009); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.,* 214 F.R.D. 696, 697–98 (S.D.Ala.2003).

[1]     Although *Gulf Oil* dealt with the Rule 23 class action context, the same concerns and considerations apply to § 216(b) FLSA cases. *Hoffman- La Roche,* 493 U.S. at 171.

**\*4** Here, Plaintiffs have not met their burden of showing that an abusive form of communication has occurred or is threatened to occur such that limiting communication is warranted. Plaintiffs simply speculate that the prohibitive language is necessary to avoid potential confusion and a possible chilling effect on putative class members. (Dkt. # 19 at 2.) "The 'mere possibility of abuses' does not justify routine adoption of a communications ban." *Vogt v. Tex. Instruments Inc.,* No. 3:05–CV–2244–L, 2006 WL 4660133, at *3 (N.D.Tex. Aug. 8, 2006) (citing *Gulf Oil,* 452 U.S. at 102). "While actual harm need not be proved to justify an order limiting class contacts, the movant must at least present evidence that a potential likelihood for serious abuse exists." *Id.* (citation omitted). Plaintiffs' speculation, which is general in nature and not tied in any manner to this particular case or this particular defendant, is insufficient to allow the Court to make the specific findings required to support a limitation on communication. The Court thus finds that Plaintiffs' proposed limiting language is inappropriate at this time.

## II. *Requested Contact Information*
Next, TWC objects to the breadth of contact information for putative class members requested by Plaintiffs. Plaintiffs request that TWC be ordered to produce the names, all known addresses, all phone numbers, dates of birth, all known email addresses (both work and personal), Social Security numbers, and dates of employment for all potential class members employed from three years prior to the filing of this lawsuit to the present. (Dkt. # 9 at 10–11.) TWC argues that Plaintiffs' request for Social Security numbers, dates of birth, phone numbers, and email addresses should be denied because of privacy concerns, including the potential for identity theft. (Dkt. # 16 at 10.) TWC contends that notice by

regular mail to putative class members' last known address is sufficient in this case. (*Id.*)

The Court finds that the extensive disclosures requested by Plaintiffs are inappropriate at this stage of the case. "The benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.' " *Behnken v. Luminant Min. Co., LLC,* 997 F.Supp.2d 511, 523 (N.D.Tex.2014) (quoting *Hoffman–La Roche,* 498 U.S. at 170). Thus, the Court's aim is to ensure that putative class members actually receive notice in a timely manner. While there is not a great deal of uniformity with respect to the types of information courts generally order defendants to produce, many have taken the view that putative class members' names and addresses are sufficient to ensure that notice is received.[2] *E.g., Altiep v. Food Safety Net Servs., Ltd.,* No. 3:14–CV–00642–K, 2014 WL 4081213, at *6 (N.D.Tex. Aug.18, 2014) (denying plaintiffs' request for telephone numbers and email addresses because "Plaintiffs have shown no reason that sending a letter to a potential plaintiff's last known address would provide inadequate notice"); *Aguayo v. Bassam Odeh, Inc.,* No. 3:13–CV–2951–B, 2014 WL 737314, at *6 (N.D.Tex. Feb.26, 2014) (limiting production to putative class members' names, last known addresses, and dates of employment); *Page v. Nova Healthcare Mgmt., LLP,* No. H–12–2093, 2013 WL 4782749, at *7 (S.D.Tex. Sept.6, 2013) (denying plaintiffs' request for telephone numbers "because of the highly private and sensitive nature of this information" and limiting production to potential plaintiffs' names and last known mailing addresses).

[2]  With respect to Social Security numbers in particular, privacy and security concerns outweigh the interest in ensuring that notice is received at this stage. *See White v. Integrated Elec. Techs., Inc.,* No. 12–359, 2013 WL 2903070, at *10 (E.D.La. June 13, 2013) (denying plaintiffs' request for production of the last four digits of Social Security numbers because plaintiffs were adequately equipped to notify all potential class members and privacy concerns outweighed the benefits of disclosure); *Humphries v. Stream Int'l, Inc.,* No. 3:03–CV–1682–D, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Feb 13, 2004) (declining to require defendants to produce telephone numbers, dates of birth, and social security numbers because "[a]ny need for the compelled disclosure of such data

is outweighed by the privacy interests of these current and former workers").

**\*5**  For those putative class members whose notices are returned as undeliverable, Plaintiffs may request the production of additional information to assist them in reaching those individuals. *See Aguayo,* 2014 WL 737314, at *6 (ordering defendants to produce additional information for individuals whose mail was returned as undeliverable); *Heeg v. Adams Harris, Inc.,* 907 F.Supp.2d 856, 865–66 (S.D.Tex.2012) (noting that plaintiffs' counsel could request additional information for putative class members whose notices were returned as undeliverable).

### III. *Proposed Notice to Putative Class Members*
Finally, TWC raises various objections to the content of Plaintiffs' proposed notice and opt-in forms. Plaintiffs propose to send notice to putative class members via regular mail, email, and posting at TWC's place of business, and they provide the Court with a proposed notice and opt-in form which they propose to send to potential class members. (Dkt. # 9 at 10; Exs. F–G.) TWC raises objections both to Plaintiffs' proposed methods of sending notice and to the content of the notice and opt-in forms themselves. (Dkt. # 16 at 9–17.) The Court addresses each of TWC's objections in turn.

#### A. *Method of Sending Notice*
Plaintiffs propose to send notice and consent forms by first class mail and electronic mail to all potential opt-ins employed at any time during the three-year period before this lawsuit was filed to the present. (Dkt. # 9 at 11–12.) Plaintiffs also request that notice be prominently posted at TWC's place of business and that a copy of the proposed notice be included with each putative class member's paycheck. (*Id.* at 15.) Finally, Plaintiffs request that a second notice be sent out thirty days before the opt-in deadline passes, but only to those individuals who have not opted in to the lawsuit. (*Id.*)

TWC raises three objections to Plaintiffs' proposed method of sending notice. First, TWC argues that Plaintiffs' request to send notice via email should be denied as misleading, disruptive, and unnecessary. (Dkt. # 16 at 11.) Second, TWC argues that Plaintiffs' request to use a "click-through" consent form in the email notice should be denied because it is susceptible to fraud and discourages thoughtful, informed participation. (*Id.* at 12.) Last, TWC argues that Plaintiffs' request for posting,

reminder notices, and paycheck enclosures should be denied. (*Id.* at 13.) Because the Court is not ordering production of putative class members' email addresses at this time, the Court does not address TWC's first two objections.

TWC argues that posting notice in the workplace, enclosing notice in employee paychecks, and reminder postcards are inappropriate absent a specific showing that traditional notice is insufficient to provide timely, accurate notice. (*Id.*) Posting notice in a workplace is often used to inform employees of their rights in labor disputes, *Hoffman Plastic Compounds, Inc. v. NLRB,* 525 U.S. 137, 152 (2002), and has been approved as an appropriate form of notice in FLSA cases. *E.g, Pacheco v. Aldeen,* No. 5:14–CV–121–DAE, 2015 WL 1509570, at *9 (W.D.Tex. Mar.31, 2015); *Barajas v. Acosta,* No. H–11–3862, 2012 WL 1952261, at *4 (S.D.Tex. May 30, 2012). Furthermore, the Court finds that posting notice in TWC's workplace is not unduly burdensome. The call center is not open to the public, so there is no danger of reputational harm or other adverse impact on TWC's business. The Court also finds that posting notice in the workplace is a simple and effective way of ensuring that notice reaches all of the putative class members currently employed by TWC, and therefore approves notice by posting.[3] However, the Court finds that sending notice forms along with employee paychecks is both redundant and unnecessary, and thus declines Plaintiffs' request to enclose notice in employees' paychecks.

[3]    The Court notes that at the hearing, counsel for TWC represented that TWC would agree to notice by posting in lieu of being ordered to produce putative class members' "sensitive, personal information" such as Social Security numbers, dates of birth, phone numbers, and email addresses.

**\*6** There is a split among district courts as to whether reminder notices to putative class members are proper in FLSA actions. *See Guzelgurgenli v. Prime Time Specials, Inc.,* 883 F.Supp.2d 340, 357–58 (E.D.N.Y.2012) (noting that some courts have denied requests for reminder notices on the grounds that reminders are unnecessary and could be interpreted as encouragement by the court to join the lawsuit, while others have recognized that a reminder is appropriate when sent by plaintiffs' counsel and not the court). The *Guzelgurgenli* court ultimately denied the plaintiffs' request because they did not identify any reason why a reminder notice was necessary under the particular

circumstances of the case. *Id.* at 358. Likewise, Plaintiffs here have not identified any particular reason why a reminder notice is necessary to ensure sufficient notice under the circumstances of this case. The Court thus concludes that a reminder notice is inappropriate in this instance. *See also In re Wells Fargo,* 2013 WL 2180014, at *3 (denying plaintiffs' request for a reminder notice as unnecessary and inappropriate).

### B. *Content of Notice*

TWC also objects to the content of Plaintiffs' proposed notice on several grounds. First, TWC argues that the notice incorrectly states the applicable limitations period and must specify the deadline for filing consent forms. (Dkt. # 16 at 14.) Second, TWC claims that the notice should advise putative class members of their discovery obligations. (*Id.* at 15.) Third, TWC asserts that the notice should inform putative class members that they may be responsible for costs and expenses. (*Id.*) Fourth, TWC argues that the notice should include contact information for both parties' counsel. (*Id.* at 16.) Finally, TWC argues that the notice should advise putative class members of their right to retain separate counsel. (*Id.*) The Court addresses each objection below.

#### 1. *Limitations Period and Consent Deadline*

Plaintiffs request that notice be sent to inbound sales agents employed by TWC from November 6, 2011 to the present. (Dkt. # 9, Ex. F at 1.) Thus, Plaintiffs appear to argue that the proper limitations period runs from three years prior to the date on which this action was commenced to the present. A cause of action arising out of a willful violation of the FLSA "may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The limitations period is not tolled as to individual claimants until the claimant files a written opt-in consent form with the court. 29 U.S.C. § 256(b); *Quintanilla v. A & R Demolition, Inc.,* No. Civ.A. H–04–1965, 2005 WL 2095104, at *16 (S.D.Tex. Aug.30, 2005). Therefore, the limitations period in this case should confine class certification to inbound sales agents who worked for TWC in the three years prior to the date on which the Court conditionally certifies the classes—in other words, three years prior to the date of this Order. *See Altiep,* 2014 WL 4081213, at *5; *Watson v. Travis Software Corp.,* No. H–07–4104, 2008 WL 5068806, at *8 (S.D.Tex. Nov.21, 2008); *Quintanilla,* 2005 WL 2095104, at *16. Furthermore, each potential plaintiff will be required to

opt in within three years of employment as an inbound sales agent. *Altiep,* 2014 WL 4081213, at *5. The notice must accurately reflect both of these dates.

### 2. *Discovery Obligations*

**\*7** Second, TWC argues that the notice should advise putative class members that they may be required to participate in discovery, and that they may be required to travel to San Antonio to fulfill this obligation. (Dkt. # 16 at 15.) Other courts have noted that such an advisory is routinely approved. *E.g., Behnken,* 997 F.Supp.2d at 524; *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F.Supp.2d 445, 450 (S.D.N.Y.2011). The notice must include an advisory regarding putative class members' potential discovery obligations.

### 3. *Responsibility for Costs and Expenses*

Third, TWC argues that the notice should advise potential plaintiffs that if they do not prevail, they may be responsible for costs and expenses. (Dkt. # 16 at 15.) As the *Behnken* court noted, "potential opt-in plaintiffs may be required to pay taxable court costs if the judgment is unfavorable to them." *Behnken,* 997 F.Supp.2d at 524. Without such an advisory, "the proposed notice form is not completely accurate as to the potential liabilities for those who join the lawsuit." *Id.* Furthermore, the advisory is necessary for potential plaintiffs to make an informed decision about whether to opt in to the lawsuit. *Id.* Plaintiffs' proposed notice includes the language, "If the inbound sales agents lose, you will receive nothing, but you will not have to pay anything either." (Dkt. # 9, Ex. F at 1.) This language is misleading and inaccurate and must be stricken from the notice. Furthermore, the notice must inform potential plaintiffs that they could be liable for their proportional share of taxable court costs if they do not prevail in this case.

### 4. *Defense Counsel's Contact Information*

Fourth, TWC argues that the notice should provide complete contact information for both parties' counsel. (Dkt. # 16 at 16.) Again, there is a split among district courts as to whether the inclusion of defense counsel's contact information is appropriate. Some have stated that "there is no basis in logic" for the request to include defense counsel's contact information, while others note that "FLSA opt-in notices often contain the names of all counsel." *Compare Behnken,* 997 F.Supp. at 525; *Gambo*

*v. Lucent Techs., Inc.,* No. 05 C 3701, 2005 WL 3542485, at *7 (N.D.Ill. May 10, 2010), *with Gonzalez v. Ridgewood Landscaping, Inc.,* No. H–09–2992, 2010 WL 1903602, at *8 (S.D.Tex. May 10, 2010).

Courts declining to order the inclusion of defense counsel's contact information generally cite ethical concerns about post-certification communication between defense counsel and class members. Generally, courts agree that "[o]nce a class has been certified, the rules governing communications [with class members] apply as though each class member is a client of the class counsel." *Harris v. Vector Mktg. Corp.,* 716 F.Supp.2d 835, 847 (N.D.Cal.2010) (citing Manual of Complex Litig. § 21.33 at 300 (4th ed.2004)). As the *Harris* court noted, "[i]ncluding contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion." *Id.* The Court finds this reasoning persuasive, and finds that inclusion of defense counsel's contact information is unwarranted. *See also McCloud v. McClinton Energy Grp., LLC,* No. 7:14–CV–120, 2015 WL 737024, at *10 (W.D.Tex. Feb.20, 2015).

### 5. *Right to Retain Separate Counsel*

**\*8** Last, TWC argues that the notice should include information regarding putative class members' right to retain counsel of their own choosing. (Dkt. # 16 at 16.) TWC asserts that without this advisory, the notice gives the inaccurate impression that the sole avenue for class members to pursue their claims is through Plaintiffs' counsel. (*Id.* at 17.) The Court agrees with TWC, and finds that the notice must advise putative class members of their right to retain separate counsel and pursue their rights independently from the class. *See, e.g., Lee v. Veolia ES Indus. Servs., Inc.,* No. 1:12–CV–136, 2013 WL 2298216, at *20 (E.D.Tex. May 23, 2013); *Gambo,* 2005 WL 3542485, at *7.

### *CONCLUSION*

For the reasons stated above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Conditional Certification of a Collective Action and Authorization for Notice. (Dkt.# 4.) TWC is **ORDERED** to produce, in a usable electronic format, the names, last known addresses, and dates of employment for

all putative class members within ten days of the date of this Order. For those individuals whose notices are returned as undeliverable, Plaintiffs may request additional information from TWC. The parties are further **ORDERED** to confer and prepare agreed-upon notice and consent forms consistent with this Order. The parties shall jointly submit such forms to the Court by **Friday, May 1, 2015.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1737932, 2015 Wage & Hour Cas.2d (BNA) 181,597

© 2017 Thomson Reuters. No claim to original U.S. Government Wo