UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRANDON CAVIN

VERSUS

WESTPORT LINEN SERVICES, LLC

CIVIL ACTION

NO. 16-705-JWD-EWD

### RULING ON MOTION TO QUASH AND/OR IN THE ALTERNATIVE, MODIFY SUBPOENAS AND/OR MOTION FOR PROTECTIVE ORDER WITH REQUEST FOR EXPEDITED CONSIDERATION

Before the court is a Motion to Quash and/or in the Alternative, Modify Subpoenas and/or Motion for Protective Order with Request for Expedited Consideration (the "Motion to Quash")[1] filed by defendant, Westport Linen Services, LLC ("Westport" or "Defendant"). The Motion to Quash is opposed by plaintiff, Brandon Cavin ("Plaintiff").[2] For the reasons set forth herein, the Motion to Quash is **GRANTED IN PART**.

**I.     Background**

On October 20, 2016, Plaintiff brought suit against Westport alleging violations of the Fair Labor Standards Act ("FLSA").[3] Plaintiff filed suit "on behalf of himself and other individuals who, since October 2013 previously worked or currently work for [Westport] as hourly workers essential to Defendant's commercial linen laundering service…."[4] Plaintiff alleges that Westport "is in the business of providing commercial linen laundering and cleaning services to large

---

[1] R. Doc. 11.

[2] R. Doc. 15. Additionally, on January 13, 2017, Westport filed a Certificate under Rule 26(c)(1) of the Federal Rules of Civil Procedure outlining the parties' efforts to resolve this discovery issue without court intervention. R. Doc. 13. In the Certificate, Westport states that Westport was willing to agree to production of information relative to the mechanics. R. Doc. 13, p. 3. Per the Certificate, Plaintiffs position was that information relative to all hourly employees should be produced. R. Doc. 13, p. 3.

[3] R. Doc. 1.

[4] R. Doc. 1, ¶ 1. On November 29, 2016, Jeremy Cavin filed a FLSA Consent Form stating that he wished to be included as a party to the claims. R. Doc. 5 & 5-1.

1

institutional organizations (such as hospitals) throughout the Southeast. Defendant has three plants in the State of Louisiana, one in Orleans Parish, one in Acadia Parish, and one in East Baton Rouge Parish."[5] Plaintiff alleges that he was hired in November 2015 "to operate and maintain Defendant's commercial laundry machine," that he was paid by the hour, and that he worked for Westport until he was terminated in August 2016.[6] Plaintiff alleges that Westport "routinely deducted an hour from each hourly employee's daily hours worked for a 'lunch break' without regard for whether its employees did, in fact, take a lunch break, and indeed, Defendant's hourly employees often did not take any lunch break and/or were not fully relieved from their duties while they took such a 'break.'"[7] Plaintiff further alleges that Westport "routinely edited Plaintiff's and other hourly employees' time to reflect the hours they were scheduled to work, without regard for whether the Plaintiff and other hourly employees actually began their shifts early or stayed late (at Defendant's request)."[8] Plaintiff contends that due to these procedures, he and other hourly employees often worked in excess of 40 hours per week, but were not paid at the federally-mandated overtime rate for such work in violation of the FLSA.[9] Plaintiff further contends that he complained on multiple occasions about not being paid for all the time he worked, and that Westport "terminated Plaintiff due to his refusal to stop complaining about Defendant's unlawful payment practices."[10]

---

[5] R. Doc. 1, ¶ 15.

[6] R. Doc. 1, ¶ 16.

[7] R. Doc. 1, ¶ 20.

[8] R. Doc. 1, ¶ 21.

[9] R. Doc. 1, ¶ 22. *See also*, R. Doc. 1, ¶¶ 28-39 (Count I: Failure to Pay Overtime in Violation of the FLSA).

[10] R. Doc. 1, ¶ 41. *See also*, R. Doc. 1, ¶¶ 40-42 (Count II: FLSA Retaliation).

On December 30, 2016, Plaintiff filed a Motion to Conditionally Certify FLSA Collective Action and to Facilitate Notice under 29 U.S.C. § 216(b) (the "Motion to Conditionally Certify").[11] Therein, Plaintiff moves for an order conditionally certifying the following class:

> All persons employed by Defendant as an hourly employee operating and maintaining the large commercial laundry machines since October 2013 who worked more than 40 hours per week in any work week, but who did not get paid all overtime they were owed due to Defendant's practices of shaving time off of their clocked-in and out hours and automatically deducting a meal break from each shift they worked in violation of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq*.

On January 6, 2017, Westport filed the instant Motion to Quash.[12] Per the Motion to Quash, Westport seeks to quash or modify two subpoenas (the "Subpoenas") issued to third party payroll services companies, ADP, LLC ("ADP") and Paylocity Corporation ("Paylocity").[13] The Subpoenas seek the following documents:

> 1. All documents, data or other information provided to you by Westport Linen Services, LLC or their agents or predecessors regarding hours worked by employees from October 2013 through the present.
>
> 2. All documents, data or other information including, but not limited to data entered by employees, raw data provided to you, edited data provided to you, requests to alter hours and/or any other contemporaneous original or edited records regarding the amount of time Westport Linen Services, LLC's or their agents or predecessors employees worked from October 2013 to the present.

---

[11] R. Doc. 10. The court set February 1, 2017 as the deadline for Plaintiff to move for conditional certification. R. Doc. 8.

[12] R. Doc. 11. Westport sought expedited consideration of the Motion to Quash "[b]ecause the current deadline for ADP and Paylocity to respond to the Subpoenas is January 10, 2017…." R. Doc. 11, p. 2.

[13] Westport contends that it has standing to move the quash or modify the Subpoenas because the Subpoenas require disclosure of confidential information concerning Westport's employees. *See*, R. Doc. 11-1, p. 3 (Explaining that a response to request number 6 would "necessarily involve turning over the information that Westport provided to ADP and Paylocity, which includes Social Security numbers, W-2 forms, I-9 forms, additional withholding statements, and contact information of Westport's employees. Disclosure of this information would subject Westport to liability. Additionally the compilation of this data is a confidential business record of Westport."). Plaintiff does not question Westport's standing.

3

> 3. All documents, data or other information regarding the amount Westport Linen Services, LLC's or their agents or predecessors paid to employees from October 2013 through the present for work performed for them [sic] their agents.
>
> 4. All documents, data or other information regarding how the amount paid to employees from Westport Linen Services, LLC or their agents or predecessors was calculated, including any edits or references to edits of the amount that should be paid to their employees from October 2013 to the present.
>
> 5. All contracts between you and Westport Linen Services, LLC or their agents or predecessors for the time period from October 2013 through the present.[14]
>
> 6. Any initial documents, information or data provided to you by Westport Linen Services, LLC or their agents or predecessors to begin service or continue service with you.

Westport argues that "[u]nless or until this Court conditionally certifies the proposed class, the only claims at issue are B. Cavin and J. Cavin's individual claims for alleged unpaid overtime and B. Cavin's claim for retaliation."[15] Westport points out that the Subpoenas "fail to limit the types of employees for whom records are sought. Rather, they broadly seek wage and compensation information for all 'employees' regardless of their position within Westport."[16] Specifically, Westport argues that request numbers 1-4 are overbroad and seek irrelevant information because "no distinguishing characteristic or modifier is used to describe the term 'employees.' Therefore, ADP and Paylocity responses will include divulging information relative to all Westport employees, whether hourly or salaried, and whether the employee is covered by the overtime provisions of the FLSA or not. Moreover, Westport operated three plant locations and employs individuals of differing skill levels for the various positions at each plant. Unless or until B. Cavin

---

[14] Westport does not object to request number 5. R. Doc. 11-1, p. 8 n. 8.

[15] R. Doc. 11-1, p. 6.

[16] R. Doc. 11-1, p. 8.

4

is able to carry the burden of proving some factual nexus which binds him and the potential class members, these requests are beyond the scope of the individual claims."[17]

With respect to request number 6, Westport asserts that responding to the request would "include turning over Social Security numbers, W-2 forms, I-9 forms, other withholding statements, and contact information of all Westport employees."[18] Because the court has not ruled on conditional certification, and in light of the private nature of this information, Westport asserts that the request should be quashed.[19] Alternatively, Westport contends that "[i]f this Court chooses not to quash the Subpoenas as requested above, it should, in the alternative, significantly limit the scope to exclude the Social Security Numbers and telephone numbers of the employees and former employees in question."[20]

On March 3, 2017, the court held oral argument on the Motion to Quash. During the hearing, counsel for Westport confirmed Westport's position that the Subpoenas are overbroad because they seek information regarding all "employees" regardless of those employees' positions in Westport, but that Westport was willing to limit the Subpoenas to information regarding mechanics employed by Westport and that ADP and Paylocity had the capability to segregate out these employees in response to the Subpoenas. Counsel for Plaintiff explained that Plaintiff was not opposed to narrowing the scope of the Subpoenas, but that even if narrowed, Plaintiff sought information regarding both mechanics and employees on the "production side" (*i.e.*, the operators) of Westport because both sets of employees are included in Plaintiff's proposed class definition. Counsel for Plaintiff additionally argued that even if the Subpoenas were limited to mechanics,

---

[17] R. Doc. 11-1, p. 8.

[18] R. Doc. 11-1, p. 8.

[19] R. Doc. 11-1, p. 8.

[20] R. Doc. 11-1, p. 9.

5

Plaintiff still sought information for individuals employed by Westport as mechanics at all three of Westport's locations in order to evaluate the existence of a company-wide policy. Counsel for Westport explained that there are six (6) maintenance technicians employed by Westport in Baton Rouge, two (2) maintenance technicians employed by Westport in New Orleans, and one (1) maintenance technician employed by Westport in Crowley. Finally, counsel for Plaintiff agreed that personal information such as employees' social security numbers and telephone numbers could be redacted in any documents produced in response to the Subpoenas.

## II.  Law and Analysis

### a.  Procedure for Collective Actions Under the FLSA

In order to certify a collective action under the Fair Labor Standards Act § 261(b), two requirements must be met. *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 507 (M.D. La. 2005). First, the named representative and the putative members of the prospective FLSA class must be similarly situated. *Donohue v. Francis Services, Inc.*, 2004 WL 1161366 (E.D. La. May 24, 2004) (citing, *Whitworth v. Chiles Offshore Corp.,* 1992 WL 235907, *1 (E.D. La. Sept. 2, 1992)). Second, the pending action must have a general effect. *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 507 (M.D. La. 2005). In order to determine whether the named representative and the putative members of the class are "similarly situated," courts typically follow one of two approaches: the *Lusardi* method or the *Shushan* approach. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

The Fifth Circuit has not explicitly adopted one test over the other,[21] but district courts in this Circuit commonly employ the approach of *Lusardi*.  *See*, *Case v. Danos and Curole Marine Contractors, L.L.C.*, 2015 WL 1978653 (E.D. La. May, 4 2015); *Smith v. Offshore Specialty Fabricators Inc.,* 2009 WL 2046159, at *2 (E.D. La. July 13, 2009); *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873 (E.D. La. Sep. 23, 2008); *Basco v. Wal-Mart Stores, Inc.,* 2004 WL 1497709 (E.D. La. July 2, 2004); *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 509 (M.D. La. 2005); *Green v. Plantation of Louisiana, LLC*, 2010 WL 5256354, at *4-5 (W.D. La. Nov. 24, 2010).  In their briefing, both parties apply the *Lusardi* approach.[22]

According to the court in *Lusardi*, to determine whether potential plaintiffs are "similarly situated," the trial court must proceed through a two-stage process.  *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465-66 (D.N.J. 1988).  First, in the "notice stage," also known as the "conditional certification stage," the district court makes a decision—usually based on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.  *Mooney v. Aramco Servs. Co*., 54 F.3d 1207, 1213-14 (5th Cir. 1995).  Because the court has minimal evidence at this stage, this determination is made using a fairly lenient standard.  *Mooney*, 54 F.3d at 1214.  Once the court conditionally certifies the class, class counsel may provide notice to members of the putative class, who will then have the opportunity to opt in to the suit.  *Case v. Danos and Curole Marine Contractors, L.L.C.,* 2015 WL 1978653, at *4 (E.D. La. May 4, 2015).  The case then proceeds through discovery as a representative action.  *Id*. (citing *Mooney*, 54 F.3d at 1214).  "The second stage occurs when and if the defendant files a motion for

---

[21] *Acevedo v. Allsup's Convenience Stores, Inc*., 600 F.3d 516, 519 n. 1 (5th Cir. 2010) (asserting that "we have not adopted any of the varying approaches for determining whether employees' claims are sufficiently similar to support maintenance of a representative action.")

[22] R.Doc. 10-1, p. 8, R.Doc. 11-1, p. 5.

7

decertification, 'after discovery is largely complete and more information on the case is available.'" *Id*. (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010)). The court then "makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action." *Id*.[23]

Plaintiff bears the burden of establishing that he is similarly situated to the proposed class of other employees. *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 507 (M.D. La. 2005) (citing *Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. March 1, 2004), citing *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D.Ala.2002)); *see also, Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007) ("At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation."). Yet, at this first stage, the burden of establishing that the claims are "similarly situated" is low. *See*, *Kuperman v. ICF Intern., et. al*., 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008) (explaining that to be "similarly situated," the plaintiff's claims and positions must be similar to those of the potential opt-in plaintiffs, but they need not be identical); *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 508 (M.D. La. 2005) (describing similarly situated claims as those in which "some factual nexus" binds the named plaintiffs and other employees together as victims of a particular alleged

---

[23] In the second stage, known as the "merits stage" or the "decertification stage," the court must review the additional evidence discovered and make a final determination as to whether the claimants are "similarly situated." *Lusardi v. Xerox Corp.,* 122 F.R.D. 463, 465-66 (D.N.J.1988). The standard for this determination is higher because the court has more information on which to base its decision. *Mooney*, 54 F.3d at 1214. In evaluating the merits of the claim(s), the court may apply a three-factor test, considering: (1) the extent to which the employment settings of employees are similar or disparate; (2) the extent to which any defenses that an employer might have to overtime or misclassification claims are common or individualized; and (3) general fairness and procedural considerations. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987); *see also*, *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1215-16 (5th Cir. 1995) (affirming the district court's decertification decision based on the use of the three-part test, but not specifically endorsing it); *Johnson v. Big Lots Stores, Inc.,* 561 F. Supp. 2d 567, 574 (E.D. La. 2008) (explaining that these three factors are not mutually exclusive, and there is considerable overlap among them).

policy or practice).  On December 30, 2016, Plaintiff filed the Motion to Conditionally Certify.[24] The Motion to Conditionally Certify is opposed[25] and is pending before Judge deGravelles.

### b. Relevancy of Information Regarding Proposed Class Members Prior to Conditional Certification

Westport argues that the Subpoenas are overbroad and request irrelevant information and that the production of information regarding employees other than the Plaintiff and the Opt-In Plaintiff would be an unnecessary and improper invasion of legitimate privacy interests.[26]  With respect to the relevancy of the information sought, Westport argues that the Subpoenas "fail to limit the type of employees for whom records are sought," and explains that, as written, responses to the Subpoenas "will include divulging information relative to <u>all</u> Westport employees, whether hourly or salaried, and whether the employee is covered by the overtime provisions of the FLSA or not.  Moreover, Westport operates three plant locations and employs individuals of differing skill levels for the various positions at each plant.  Unless or until B. Cavin is able to carry the burden of proving some factual nexus which binds him and the potential class members, these request are beyond the scope of the individual claims."[27]

"[C]ertain courts have determined that discovery of information about putative opt-in class members is not appropriate before a collective action is authorized.  But, an equal number of courts have reached the opposite conclusion." *Sedtal v. Genuine Part Company d/b/a NAPA Auto Parts*, 2009 WL 2216593, *6 (E.D. Tex. July 23, 2009) (collecting cases, internal citations omitted).  In *Sedtal*, the court ultimately allowed discovery of information regarding putative class members

---

[24] R. Doc. 10.

[25] R. Doc. 14.

[26] R. Doc. 11-1, p. 2.

[27] R. Doc. 11-1, p. 8.  *See also*, R. Doc. 11-1, p. 6 ("Unless or until this Court conditionally certifies the proposed class, the only claims at issue are B. Cavin and J. Cavin's individual claims for alleged unpaid overtime and B. Cavin's claim for retaliation.").

prior to conditional certification based on "the remedial purpose of the FLSA and the Court's broad discretion under Rule 26…." *Id.* at * 6. The court reasoned that "[a]llowing Plaintiffs to discover this information at this time may help them demonstrate that a sufficient number of similarly situated plaintiffs exist to conditionally certify the action. Conversely, it may underscore inadequacies in the group of potential plaintiffs. Either way, ordering discovery at this early stage will provide more certainty about the merits of the proposed class at the time certification is considered." *Id.* at * 7 (internal citations omitted). *See also*, *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 553-554 (N.D. Ill. 2008) ("Defendants argue Plaintiffs' motion is untimely because they have yet to file for provisional class certification. Yet 'provisional certification is not necessarily a prerequisite for conducting limited discovery' for defining the proposed class."). *Compare*, *Crawford v. Dothan City Bd. of Educ.*, 214 F.R.D. 694, 695 (M.D. Ala. 2003) (finding discovery regarding identity of certain employees of defendant was premature because no collective action had been conditionally certified); *Stephens v. Erosion Containment Mgmt., Inc.*, 2008 WL 2157095, at *1 (M.D. Fla. May 21, 2008) (finding discovery of names of individuals for the purpose of notifying potential individuals to opt-in was premature).

Plaintiff argues that the information sought via the Subpoenas is "particularly relevant in this matter since one or both of these companies may be in possession of the unedited record of the hours worked by Plaintiff and the proposed FLSA Collective Action Plaintiffs."[28] Plaintiff additionally argues that "[a]llowing this type of discovery, even where not directly relevant to the named plaintiffs' individual claims, aids the parties in determining whether there exists sufficient similarities to continue with certification; identifies a need for sub-categories of collective action

---

[28] R. Doc. 15, p. 2.

plaintiffs; and 'provide[s] more certainty about the merits of the proposed class.'"[29] The undersigned finds that information about employees within the scope of Plaintiff's proposed class definition (*i.e.*, employees on both the "production" side and the maintenance side of Westport's operations) is potentially relevant. However, at this stage of the proceeding, and especially in light of the procedural posture of this case and the fact that the District Judge has not ruled on Plaintiff's Motion to Conditionally Certify, the undersigned finds that narrowing the scope of the Subpoenas to encompass only Westport's maintenance employees at all three locations will meet Plaintiff's need to evaluate whether a company-wide policy is at issue while at the same time addressing Westport's concerns regarding overbreadth.[30] In light of the limited number of maintenance employees at the three Westport locations, the undersigned further finds that requiring production of such information will not be unduly burdensome. Accordingly, the court GRANTS IN PART Westport's Motion to Quash with respect to Subpoena requests one through four and MODIFIES requests one through four of the Subpoenas to be limited to Westport's maintenance employees at the Baton Rouge, New Orleans, and Crowley locations from October 2013 through the present.

    c. **Privacy Concerns**

Westport's Motion to Quash also raises privacy concerns. In particular, Westport asserts that responses to request number 6 "will necessarily involve turning over the information that Westport provided to ADP and Paylocity, which includes Social Security numbers, W-2 forms, I-

---

[29] R. Doc. 15, p. 5. (citing *Sedtal v. Genuine Parts Co. d/b/a NAP Auto Parts*, 2009 WL 2216593, at * 6 (E.D. Tex. July 23, 2009).

[30] The undersigned notes that Plaintiff filed his Motion to Conditionally Certify well before the February 1, 2017 deadline to do so. *See*, R. Docs. 8 & 10. Plaintiff does not argue in his Reply Brief in Support of the Motion to Conditionally Certify that additional discovery is necessary to support his Motion to Conditionally Certify, nor does Plaintiff even reference the Subpoenas issued to ADP and Paylocity or the information expected to be obtained therefrom in support of his position that the class should be conditionally certified. *See*, R. Doc. 18, p. 4 ("Plaintiff has submitted ample evidence for certification.").

9 forms, additional withholding statements, and contact information of Westport's employees."[31] In the event the court chooses not to quash or modify the Subpoenas (to be limited only to information regarding B. Cavin and J. Cavin), Westport alternatively argues that the court should limit the scope of the Subpoenas to exclude the social security numbers and telephone numbers of the current and former employees in question.[32] In opposition to the Motion to Quash, Plaintiff asserts that "[t]o the extent that any information produced is confidential, that information may be protected via issuance of an appropriate Protective Order."[33] Plaintiff further asserts that "unless ADP and Paylocity are to bear the burden and expense of redacting these records, it is unclear how ***any*** payroll company information could be provided to Plaintiff from any independent third parties that would not contain certain personal information."[34]

During the March 3, 2017 hearing, counsel for Plaintiff agreed that Plaintiff did not need to obtain putative class members' private information at this stage of the proceeding. Accordingly, the court GRANTS IN PART Westport's Motion to Quash with respect to Subpoena request number six and MODIFIES request number six of the Subpoenas to allow production of employees' names and addresses but ORDERS redaction of any additional identifying information, including social security numbers, telephone numbers, and email addresses. To the extent responses to the other requests set forth in the Subpoenas would otherwise require

---

[31] R. Doc. 11-1, p. 3.

[32] R. Doc. 11-1, p. 9. *See also*, R. Doc. 11-1, p. 11 ("the subpoenas in question should, at the least, be limited in their scope so that neither ADP, LLC nor Paylocity Corporation would be required to produce any documents containing the telephone numbers or any part of the Social Security Numbers of Westport's current or former employees.").

[33] R. Doc. 15, p. 3. *See also*, R. Doc. 15, p. 7 ("Plaintiff offered to enter into a protective order for the information produced that should allow Defendant to restrict the use and publication of information related to persons who are not putative class members."); R. Doc. 15, p. 8 ("Plaintiff also believes that a Protective Order is sufficient to protect any confidential information of third parties that is subject to the subpoena, including information such as telephone numbers (which Plaintiffs have asked to be produced as part of the notification process) and social security numbers (which they have not).").

[34] R. Doc. 15, p. 7.

12

production of this additional identifying information, the court ORDERS redaction of this information as well.

### III. Conclusion

For the reasons set forth herein, Motion to Quash and/or in the Alternative, Modify Subpoenas and/or Motion for Protective Order with Request for Expedited Consideration[35] filed by defendant, Westport Linen Services, LLC is **GRANTED IN PART**.

**IT IS ORDERED** that Subpoena requests one through four are **MODIFIED** to be limited to Westport's maintenance employees at the Baton Rouge, New Orleans, and Crowley locations from October 2013 through the present.

**IT IS FURTHER ORDERED** that Subpoena request number six is **MODIFIED** as follows: production of documents responsive to request number six of the Subpoenas may include employees' names and addresses but any additional identifying information, including social security numbers, telephone numbers, and email addresses must be **REDACTED**. To the extent responses to the other requests set forth in the Subpoenas would otherwise require production of this additional identifying information, including social security numbers, telephone numbers, and email addresses the court **ORDERS** redaction of this information as well.

Signed in Baton Rouge, Louisiana, on March 3, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] R. Doc. 11.